UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MUTINTA MICHELO, KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) ) | No. 18-cv-1781 |
| Defendants. | ) ) | |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) | No. 18-cv-7692<br><br>**FILED VIA ECF** |
| Defendants. | ) ) | |

**DECLARATION OF ASHER HAWKINS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

ASHER HAWKINS, an attorney duly licensed to practice law in the State of New York and admitted to practice in this Court, declares under penalty of perjury:

1. I am an attorney at law with Frank LLP, the attorneys of record for Plaintiffs and the Class in the above-captioned consolidated actions. I submit this declaration in support of the Plaintiffs' Motion for Class Certification (the "Motion").

2. Attached hereto are true and correct copies of Exhibits A–P, which are identified and described in detail below.

**The Trusts' Formation And Securitization As Assignees**

3. Each Trust's[1] formation and securitization are described in filings with the U.S. Securities and Exchange Commission ("SEC"). Among other details, these filings assert that the Trusts were assigned student loans which had been privately lent by large, consumer-facing banks. The assignments were not from the banks directly. Instead, banks assigned "pools" of thousands of loans to The National Collegiate Funding LLC ("NCF"), which in turn assigned them to the Trusts. Each Trust then issued securities. For each securitization process, The First Marblehead Corporation ("FMC") was the "structuring advisor." The following SEC filings, viewable online, pertain to each Trust Defendant here:

   a) Prospectus Supplement, National Collegiate Student Loan Trust 2004-2, https://www.sec.gov/Archives/edgar/data/1305287/000112528204005265/b401322_424b5.txt. (dated: Oct. 26, 2004).

   b) Prospectus Supplement, National Collegiate Student Loan Trust 2006-4, https://www.sec.gov/Archives/edgar/data/1380108/000112528206007609/b415971_424b5.txt. (dated: Dec. 5, 2006).

   c) Prospectus Supplement, National Collegiate Student Loan Trust 2007-2, https://www.sec.gov/Archives/edgar/data/1223029/000089968107000462/ncslt20072-ps_061207.htm. (dated: June 12, 2007).

---

[1] Unless otherwise indicated, all capitalized terms used herein shall have the definitions set forth in Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 124 in Case No. 18-cv-1781; Dkt. No. 72 in Case No. 18-cv-7692).

    d) Prospectus Supplement, National Collegiate Student Loan Trust 2007-3, https://www.sec.gov/Archives/edgar/data/1223029/000110465907069961/a07-23573_18424b5.htm. (dated: Sept. 17, 2007).

4. Before filing the pleadings in this action, as well as the instant Motion, I searched the name of each Trust in the database of the New York State Department of State's Division of Corporations for active and non-active entities.[2] No Trust has ever registered with New York State.

5. Following the initiation of the instant litigation, a primary investor in National Collegiate's trusts, including the four Trust Defendants here, sued TSI-NCO and others, on behalf of the Trusts, in the Delaware Court of Chancery, alleging fraud. This investor had commissioned an audit which focused on the lists of loans or "schedules" that were supposed to contemporaneously record which loan, from which bank, to which consumer, was part of which Trust securitization, and in what amount. The audit concluded that schedules (if they ever existed) had gone missing or were not properly maintained, leaving the Trusts unable to prove chain of assignment if challenged in state court. (*See* Am. Compl., *Nat'l Collegiate Master Student Loan Trust I et al. v. U.S. Bank Nat'l Assoc. et al.*, No. 2018-0167 (Del. Ch. June 15, 2018)).

**TSI-NCO's Handling Of Trust Accounts And Management Of The Attorney Network**

6. In November 2012, TSI-NCO[3] became debt-collection servicer for Trust "accounts," i.e., purported student-loan debts believed to be owed to a particular Trust. Previously, Trust accounts were serviced by the Pennsylvania Higher Education Assistance Agency ("PHEAA") (also sometimes known as "American Education Services" ("AES" or "AES/PA")).

---

[2] That database may be found at the following URL (last accessed June 2, 2021): https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY

[3] "TSI-NCO" as used herein refers to Defendant Transworld Systems, Inc. ("TSI"), in its own right and as successor to NCO Financial Systems, Inc. ("NCO"), and EGS Financial Care Inc., formerly known as NCO.

Accounts transferred to TSI-NCO for servicing were subject to litigation-based collection efforts. Such efforts were performed at TSI-NCO's direction by local debt-collection law firms within its "Attorney Network"; Forster is one of the Network Firms. (Ex. A, Trusts 30(b)(6) Tr., 50:7–9, 75:6–79:2; Ex. B, TSI-NCO 30(b)(6) Tr., 241:16–244:20, 251:2–252:19).[4]

7. PHEAA's coded account-note entries concerning PHEAA's servicing of each Trust account, prior to transfer to TSI-NCO, were incorporated into TSI-NCO's computer system. (Ex. B, TSI-NCO 30(b)(6) Tr., 231:20–236:19). In a May 6, 2020 letter to this Court, counsel for TSI-NCO admitted that they do not possess a glossary defining the various PHEAA codes.[5]

8. TSI-NCO issued written instructions to Network Firms that governed Network Firms' handling of Trust accounts. The documents containing these instructions are entitled "Manual" or "Standard Operating Procedure" (or "SOP"). Among other uniform specifications, the Manuals and SOPs listed specific alphanumeric codes, referred to as "P-codes," which allowed TSI-NCO and the Network Firms to communicate information about specific accounts. TSI-NCO has an online communications portal called "eRecoverEase" ("eRE"), which communicated account-specific details via P-Code with the Network Firms to which National Collegiate accounts had been referred. Each Network Firm has its own computer system for account management, and eRE permits interface between those and TSI-NCO's account-management system, "CRS." (Ex. B, TSI-NCO 30(b)(6) Tr., 177:7–178:21).

9. Among the many uniform instructions TSI-NCO gave Network Firms via SOP was that Network Firms were required with limited exception to sue in the same state court all

---

[4] References herein to "Trusts 30(b)(6) Tr." are to the transcript of the Feb. 11, 2020 deposition of the Trusts' corporate designee, Bradley Luke; references to "TSI-NCO 30(b)(6) Tr." are to the transcript of the Feb. 13, 2020 deposition of TSI-NCO's corporate designee, also Mr. Luke.

[5] TSI-NCO's L.R. 37.2 Reply Ltr. to Ct., at 4 (Dkt. No. 148 in Case No. 18-cv-1781; Dkt. No. 91 in Case No. 18-cv-7692) (May 6, 2020).

individuals believed to be indebted on a loan owned by a Trust, not just the individual believed to be the "primary borrower" for the alleged loan. (Ex. C, TSI-NCO SOP, at Bates No. TSI 00936 ("[Each Network Firm] is expected to pursue the borrower and co-borrower on National Collegiate Trust accounts. In some instances, the borrower and co-borrower may not reside in the same state. [TSI-NCO] will provide a P-code upon placement of a new file to advise of which borrower to pursue based on state of residence.")).

10. An appendix to the SOP contains a list of all P-codes. For example, there is a P-code by which TSI-NCO instructs the Network Firm whether to sue both individuals believed to owe on a particular loan, or only one. There are P-codes for each subsequent stage of a state-court collection suit—for example, there are distinct P-Codes that a Network Firm must use to inform TSI-NCO that a lawsuit has been filed, a judgment obtained, and/or a garnishment executed. (Ex. D, TSI-NCO SOP Appendix, at Bates Nos. TSI 01427–1432).

11. TSI-NCO also issued Network Firms a written instruction that Network Firms would not be provided, and could not request, evidence supporting claims being made in state court actions on behalf of the Trusts. In the "Media Ordering Manual" issued to Network Firms along with the SOP, TSI-NCO forbade them from requesting or receiving copies of the actual documents (or "media") evidencing "[Loan] Terms," "Bill of Sale/Assignment," or "Chain of Title" for "National Collegiate Trust" accounts. (Ex. E, TSI-NCO Media Ordering Manual, at Bates Nos. TSI 002102–2103).

12. At Forster's Rule 30(b)(6) deposition, the firm's corporate designee confirmed that Forster, as a Network Firm, was required abide by this TSI-NCO policy restricting Network Firm

5

access to evidence, when Forster prosecuted state-court collection actions for the benefit of the Trusts. (Ex. F, Forster 30(b)(6) Tr., 70:15–73:7).[6]

**Defendants' Actions Against Named Plaintiffs**

13. Defendants filed the following state-court collection lawsuits against Named Plaintiffs:

| Plaintiff | Case Caption & Number (Jurisdiction & Date Initiated) |
|---|---|
| Bifulco | *National Collegiate Student Loan Trust 2004-2 v. Bifulco*, No. 2399-13/BU (City Ct. of Buffalo, Apr. 12, 2013) |
| Butry | *National Collegiate Student Loan Trust 2004-2 v. Butry*, No. 264-13/TO (City Ct. of Tonawanda, Nov. 15, 2013) |
| Frauenhofer | *National Collegiate Student Loan Trust 2006-4 v. Frauenhofer*, No. 4454-13/BU (City Ct. of Buffalo, June 19, 2013) |
| K. Seaman & Re Seaman | *National Collegiate Student Loan Trust 2007-3 v. Seaman*, No. 15713-14/QU (Civ. Ct. Queens Cnty., May 29, 2014) |
| Tabar | *National Collegiate Student Loan Trust 2007-3 v. Villasante*, No. 761-14/BX (Civ. Ct. Bronx Cnty., Jan. 14, 2014) |

14. Attached hereto as Exhibit G is a copy of the case file for the above-captioned state-court collection action against Plaintiff Bifulco. This exhibit has been produced earlier in the instant litigation at Bates Nos. Plaintiffs' 000349–365.

15. Attached hereto as Exhibit H is a copy of the case file for the above-captioned state-court collection action against Plaintiff Butry. This exhibit has been produced earlier in the instant litigation at Bates Nos. Plaintiffs' 000366–379.

16. Attached hereto as Exhibit I is a copy of the case file for the above-captioned state-court collection action against Plaintiff Frauenhofer. This exhibit has been produced earlier in the instant litigation at Bates Nos. Plaintiffs' 000380–393.

---

[6] References herein to "Forster 30(b)(6) Tr." are to the transcript of the Feb. 9, 2021 deposition of the Forster's corporate designee, Joel Leiderman, Esq.

17. Attached hereto as Exhibit J is a copy of the case file for the above-captioned state-court collection action against Plaintiffs K. Seaman and Re Seaman. This exhibit has been produced earlier in the instant litigation at Bates Nos. Plaintiffs' 000326–348.

18. Attached hereto as Exhibit K is a copy of the case file for the above-captioned state-court collection action against Plaintiff Tabar. This exhibit has been produced herein at Bates Nos. Plaintiffs' 000306–325.[7]

19. At deposition Forster's corporate designee testified that the pleadings in each of these state-court collection actions were automatically generated using templates with boilerplate text. (Ex. F, Forster 30(b)(6) Tr., 77:24–79:17).

20. Given this auto-generation using boilerplate templates, the pleadings that Forster filed in state court where a Trust was the plaintiff contained identical assertions of fact. For example, in each action identified above, the complaint stated: "PLAINTIFF [i.e., the Trust] IS AUTHORIZED TO PROCEED WITH THIS ACTION."[8]

21. TSI-NCO instructed Forster and the other Network Firms to keep a strict pace in prosecuting state-court collection suits on behalf of the Trusts, including those against Named Plaintiffs. Network Firms were told to file suit within 60 days of a Trust account's being referred to the Firm by TSI-NCO, and to obtain default judgment within 90 days. (Ex. D, TSI-NCO SOP

---

[7] The state-court documents in Exhibits G through K are copies of the case files obtained by Plaintiffs' counsel from the relevant state-court clerk of court.

[8] *See* Ex. G, at Bates No. Plaintiffs' 000350 (complaint against Plaintiff Bifulco); Ex. H, at Bates No. Plaintiffs' 000367 (complaint against Plaintiff Butry); Ex. I, at Bates No. Plaintiffs' 000381 (complaint against Plaintiff Frauenhofer); Ex. J, at Bates No. Plaintiffs' 000346 (complaint against Seaman Plaintiffs); Ex. K, at Bates No. Plaintiffs' 000323 (complaint against Plaintiff Tabar).

Appendix, at Bates Nos. TSI 01427–1428 (stating that "Acceptable # of Days" for "Suit Filed" is "30-60," and for obtaining "Judgment," "90" days)).[9]

**Affidavits Signed By TSI-NCO's "Affiant Team" For The Trusts' State-Court Actions**

22. To support the state-court collection suits on behalf of the Trusts, TSI-NCO had Network Firms submit affidavits that were signed by members of TSI-NCO's "Affiant Team" and that attested to possession and review of proof of indebtedness. Like the Network Firms' attorneys, the Affiant Team's members (the "Affiants") were issued written instructions governing their performance of duties for the benefit of the Trusts; these instructions were known as the "Procedure" or "Job Aid." (Ex. B, TSI-NCO 30(b)(6) Tr., 158:12–19).

23. The Procedure does not explain to Affiants the chain of title which would evidence when and how an alleged loan was assigned in the time since its origination. The Procedure does not require Affiants to review documents evidencing the chain of title, or identify where these may be found in TSI-NCO's records (if at all). The Procedure does not explain to Affiants the terms governing loans allegedly owned by Trusts. The Procedure does not require Affiants to review documents evidencing loan terms, or identify where these may be found in TSI-NCO's records (if at all). (Ex. L, TSI-NCO NCT Affidavit Verification Procedure, at Bates Nos. TSI 002010–2011).

24. TSI-NCO did not make available to Affiants any documents that might theoretically evidence the chain of title before signing an affidavit, until shortly before the Consumer Financial Protection Bureau announced its investigative findings against TSI-NCO and the Trusts; by this

---

[9] The only exception to meeting these deadlines occurred where the Network Firm obtained a settlement from the account's alleged debtors. TSI-NCO similarly set strict guidelines as to what amounts Trust accounts could settle for, depending on factors including whether the settlement was obtained pre- or post-litigation. (*Id.*, at Bates No. TSI 01369).

time Defendants were filing far fewer collection suits than they did from 2012 to 2016, their most active years. (Ex. B, TSI-NCO 30(b)(6) Tr., 229:2–21).

25. Affiants are instructed to sign an affidavit after the Network Firm handling litigation-based collection efforts for a given account sends a specific code via eRE that it is time to file an affidavit in state court. Affidavits are printed out electronically based on boilerplate templates, and provided as paper copies to Affiants in "batches" containing multiple individual affidavits. Each batch is accompanied by a "batch cover sheet" that identifies the accounts connected to each affidavit in the batch, and each cover sheet is saved electronically after the affidavits in the batch are signed. (Ex. B, TSI-NCO 30(b)(6) Tr., 181:8–194:4). Affiants have signed upwards of 45 affidavits per day, with their output tracked by management. (*Id.*, at 226:3–227:22).

26. The Affiant Team has consisted of roughly half-a-dozen members at any given time. Each Affiant is assigned a CRS login. (Ex. M, TSI-NCO List of Affiants, CFPB/TSI-NCO, at DOC_0034912 [native format in Microsoft Excel; submitted as exhibit to this declaration in PDF format]).[10] Affiants input a coded notation on CRS to indicate completed signing of the affidavit for a specific account. (Ex. L, TSI-NCO NCT Affidavit Verification Procedure, at Bates No. TSI 002011).

27. Affidavits signed by Affiants were submitted in support of each the state-court actions against Named Plaintiffs. Each affidavit contains the same boilerplate language. For example, each states that, based on the Affiant's "personal knowledge": "This lawsuit arose out of

---

[10] References herein to "CFPB/TSI-NCO, at __" are to the recent production in this litigation of the same documents that TSI-NCO had produced to the CFPB in connection with the agency's investigation culminating in the September 2017 consent order against Defendant and publication of investigative findings.

an unpaid loan or loans owed by defendant[ name(s) of individual(s) being sued] to Plaintiff [i.e., the Trust]."[11]

**Defendants' Electronic Account Notes Record The Events Concerning Each Collection Suit**

28. Defendants' computer systems exchange code-based communications concerning each state-court collection suit for the benefit of a Trust. By comparing these logs of communications or "account notes," it is possible to see communications going to and from TSI-NCO and the Network Firm. To illustrate this through example, we attach as exhibits the account notes from Forster, and those from TSI-NCO, concerning Plaintiff Bifulco; and highlight specific events as recorded by both sets of notes.

29. First, the Forster account notes show a communication from the Network Firm to TSI-NCO alerting that suit has been filed in state court. (Ex. N, Forster/Bifulco Account Notes, at Bates No. FG_00296 (entry of "04/17/13")). At the same time, the TSI-NCO computer system receives this communication and records that event in the TSI-NCO account notes. (Ex. O, TSI-NCO/Bifulco Account Notes, at Bates No. TSI 00048 (same)).

30. Within several days of initiation of suit, the TSI account notes show TSI-NCO reporting the account to the credit bureaus Experian, Trans Union, and Equifax. (Ex. O, TSI-NCO/Bifulco Account Notes, at Bates No. TSI 00041 (bottom of page following the text "CREDIT BUREAU HISTORY")). At roughly the same time, the Network Firm account notes record this

---

[11] *See* Ex. G, at Bates No. Plaintiffs' 000358 (affidavit against Plaintiff Bifulco) (Affiant: Colleen Morgan; date: 5/7/2013); Ex. H, at Bates No. Plaintiffs' 000370 (affidavit against Plaintiff Butry) (Affiant: Jonathan Boyd; date: 9/3/14); Ex. I, at Bates No. Plaintiffs' 000386 (affidavit against Plaintiff Frauenhofer) (Affiant: Chandra Alphabet; date: 10/17/13); Ex. J, at Bates No. Plaintiffs' 000328 (affidavit against Seaman Plaintiffs) (Affiant: James Cummins) (date: 3/20/15); Ex. K, at Bates No. Plaintiffs' 000311 (complaint against Plaintiff Tabar) (Affiant: Dudley Turner) (date:2/18/14).

credit-reporting. (Ex. N, Forster/Bifulco Account Notes, at Bates No. FG_00293 (text reading "Credit-Bur: YY" at upper right of page).

31. Next, the Network Firm alerts TSI-NCO of the disposition of the suit—e.g., judgment—and TSI-NCO receives this information and records it. (*Compare* Ex. N, Forster/Bifulco Account Notes, at Bates No. FG_00300 (entry of "03/28/14"); *with* Ex. O, TSI-NCO/Bifulco Account Notes, at Bates No. TSI 00059 (same)).[12]

32. Finally, the Network Firm alerts TSI-NCO as to how and when money is collected as a result of the suit—e.g., via garnishment. (*Compare* Ex. N, Forster/Bifulco Account Notes, at Bates No. FG_00301 (entry of "09/16/15" states "GARN 1ST STAGE"); *with* Ex. O, TSI-NCO/Bifulco Account Notes, at Bates No. TSI 00071 (same date; "GARNISHMENT")).

33. For specific events like those detailed above, account-note entries incorporate applicable event-specific P-codes by which eRE translates electronic communications from Network Firm to TSI-NCO. (*Compare, e.g.*, Ex. O, TSI-NCO/Bifulco Account Notes, at Bates No. TSI 00071 (the "09/16/15" entry of "GARNISHMENT" is accompanied by "P107" code; *with* Ex. D, TSI-NCO SOP Appendix, at Bates No. TSI 01429 (list of P-codes including "P107" as "Garnishment")).

34. Likewise, the account notes record when and in what amount moneys were collected on given dates. (Ex. O, TSI-NCO/Bifulco Account Notes, at Bates Nos. TSI 00033–39; *see* Ex. L, TSI-NCO NCT Affidavit Verification Procedure, at Bates No. TSI 002019 (listing payment codes that reduce a debt's principal and interest as 11, 12, 16, 21, 22, 24, 26, 43, 44). In addition, TSI-NCO's computer system is able to provide an account overview that shows, inter

---

[12] The dates in the account notes correspond to the date-stamps in the state-court case file. (*See* Ex. G, at Bates No. Plaintiffs' 000356–357 (default judgment against Plaintiff Bifulco).

alia, the payment status of the account, and the amount (if any) remaining to be collected, as of a given date. (Ex. P, June 29, 2020 Screenshot of TSI-NCO CRS Home Screen re Plaintiff Bifulco, at Bates No. TSI 002416 (showing account status as "GARNISHMENT" and remaining balance as "3671.02").[13]

**Class Discovery Based On Sampling Of Defendants' Files**

35. Pursuant to this Court's Order of Aug. 6, 2020 granting pre-certification sampling discovery,[14] the Parties conferred to agree on sampling methodology as to 5% of the New York Class, which methodology could eventually be replicated on a state-by-state basis. Ultimately the agreed methodology was that Defendants produce the state-court case file for each lawsuit benefitting a Trust Defendant, plus documents that (1) potentially evidence the alleged loan sued upon, and (2) show payments made.

36. Specifically, it was agreed that, for each account in the sample, Defendants would produce:

    a) Documents that allegedly show origination of a loan (referred to by Defendants as "Loan Origination Packet" containing "Borrower Credit Agreement," "Note Disclosure Statement," and "Terms to the Credit Agreement.")

    b) Documents that allegedly show chain-of-title of a loan ("Note Purchase Agreement," "Pool Supplement", "Redacted Schedule to the Pool Supplement," and "One-page Loan Roster Document").

    c) TSI-NCO's "Servicing History" and "Payment History" documents.

    d) TSI-NCO's "Batch Cover Sheet" reflecting affidavits signed by Affiants and filed in support of suit, and corresponding "Affiant Checklist."

    e) State court case file (including income execution orders for garnishment).[15]

---

[13] The amount of the default judgment that Defendants obtained against Plaintiff Bifulco in March 2014 was $12,864.95. (*See* Ex. G, at Bates No. Plaintiffs' 000356).

[14] That Order is at 2020 U.S. Dist. LEXIS 140889.

[15] As each of these document types exists for each alleged debtor to a Trust, regardless of state, the same methodology can be easily repeated on a state-by-state basis.

37. Defendants identified 3,914 accounts subject to state-court suits in New York where one of the four Trust Defendants was named plaintiff. This is not the exact number of the New York class, because (1) loans allegedly owned by a Trust generally involve two alleged debtors, a "primary borrower" and a "co-borrower," and (2) Defendants have a policy of suing alleged debtors in their home state, and in certain instances one of the two alleged "borrowers" was identified by Defendants as no longer residing in New York at the time suit was filed. (Ex. C, TSI-NCO SOP, at Bates No. TSI 00936).

38. Of the 198 New York-suit accounts (roughly 5% of the total) for which Defendants produced documents pursuant to the sampling methodology, Defendants' records identify 384 individuals whom Defendants describe as either "primary borrower" or "co-borrower," and 322 individuals named as defendants in the corresponding suits. Based on these figures, there are approximately 6,365 members of the New York class.

39. The current estimate of the National Class is 90,930. Per the Trusts' SEC filings, loans allegedly lent to New York residents comprise roughly 7% of the loans allegedly assigned to each Trust prior to securitization. Defendants' state-court actions against alleged debtors were not confined to New York. Their policy and procedure were to sue Class members in whichever state they were located, subject to non-substantive differences based on state rules—e.g., how much money a Network Firm can be reimbursed for a specific state-court filing cost. (Ex. B, TSI-NCO 30(b)(6) Tr., 258:15–261:11).

40. Based on our review of the sampling discovery here, the state-court pleadings against Named Plaintiffs are effectively identical to those against all other Class members. Further, approximately 50% of the cases in the sample resulted in a default judgment (as did all Named Plaintiffs' state-court suits). In approximately 27%, Class members settled after being

13

sued.  In approximately 21.5%, Defendants lost, discontinued, or abandoned the lawsuit, including in cases where the Class members appeared to defend themselves.  Finally, in only roughly 1.5% of cases did Defendants prevail in state court against a Class member who appeared to defend themself.

41.     During discovery the Trust Defendants produced a set of Microsoft Excel documents that they obtained from Cognition Financial ("Cognition"), FMC's successor, and that were claimed to be the "Schedules" listing loans assigned to the Trusts via pool supplement. However, these Excel documents' metadata (concerning date of creation and the like) do not match the assertions that Cognition's declarant made in attempting to authenticate these documents.

**Miscellaneous Facts And Exhibits In Further Support Of The Certification Motion**

42.     Attached hereto as Exhibit Q is a copy of Frank LLP's firm resume listing our qualifications to serve as Class counsel.

43.     Frank LLP represents the plaintiffs (including some Named Plaintiffs here) in a related action naming National Collegiate trusts not part of this consolidated litigation, and are coordinating discovery to the extent possible to avoid duplicative efforts.[16]  This coordinated discovery may be completed efficiently along with any further state-by-state class-sampling discovery, on a staged basis, in the instant consolidated action.  Supplemental Rule 23 and/or Rule 42 motion practice will ensure that all like class-action claims against the various National Collegiate trusts are properly consolidated before this Court for expedient resolution.

44.     We are aware of two later-filed federal putative class actions that have named Defendants herein and assert violations in connection with state-court actions.  However, their

---

[16] *See Butry et al. v. Nat'l Collegiate Student Loan Trust 2005-3 et al.*, No. 20-cv-5843 (S.D.N.Y.) (filed July 28, 2020) (accepted as related to the instant consolidated litigation, Aug. 11, 2020).

dates of initiation, and the effect of statutes of limitation not tolled, mean that neither implicates the Class period here.  Further, the parties there have not propounded discovery as here.  These two actions are:

    a) *Gosse et al. v. Transworld Systems, Inc., et al.*, No. 3:20-cv-01446-RDM-MCC (M.D. Pa.) (filed Aug. 14, 2020)

    b) Merrill et al. v. Transworld Systems, Inc. et al., No. 1:20-cv-00183-PLM-SJB (W.D. Mich.) (filed Mar. 2, 2020).

Dated:    New York, New York
            June 3, 2021

By:   */s/ Asher Hawkins*

Asher Hawkins (AH2333)
ahawkins@frankllp.com