**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MUTINTA MICHELO, KATHERINE SEAMAN, MARY RE
SEAMAN, AND SANDRA TABAR, individually and on  behalf
of all others similarly situated,

       Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2;
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3;
TRANSWORLD SYSTEMS, INC., in its own right  and as
successor to NCO FINANCIAL SYSTEMS, INC.; EGS
FINANCIAL CARE INC., formerly known as NCO FINANCIAL
SYSTEMS, INC.; and FORSTER & GARBUS LLP,

       Defendants.

No. 18-cv-01781-PGG

----------------------------------------------------------------------

CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI
FRAUENHOFER, individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2;
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4;
TRANSWORLD SYSTEMS, INC., in its own right and as
successor to NCO FINANCIAL SYSTEMS, INC.; EGS
FINANCIAL CARE INC., formerly known as NCO FINANCIAL
SYSTEMS, INC.; and FORSTER & GARBUS LLP,

       Defendants.

No. 18-cv-07692-PGG

---

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND.................................................................................2

    I.    Plaintiffs Apply For and Receive Student Loans............................................2

    II.   Plaintiffs' Loans Are Assigned to the Trust Defendants. ...............................3

    III.  Plaintiffs Default on Their Loans, and Servicing is Transferred to NCO and TSI..........4

    IV.  Collection Actions Are Filed Against Plaintiffs, and Result in Default Judgments.......4

    V.   Years Later, Plaintiffs File This Putative Class Action. ..................................6

    VI.  The Consent Order Involving TSI. ................................................................7

LEGAL STANDARD.............................................................................................8

ARGUMENT .......................................................................................................10

    I.    The Proposed Class Definition is Fundamentally Flawed. ..........................10

    II.   A National Class Is Not Available or Appropriate. ......................................13

        A.    New York General Business Law § 349 Does Not Apply to Conduct Outside New York. ..................................................................13

        B.    The Court Should Decline to Certify a Nationwide Class on Plaintiffs' FDCPA Claim. ...................................................................15

    III.  Plaintiffs Fail to Satisfy the Requirements of Rule 23(a). ...........................17

        A.    Plaintiffs Are Not Adequate Class Representatives.............................17

            1.    The Dismissal of Many Plaintiffs' Claims Creates Conflicts of Interest..................17

            2.    Plaintiffs' Claims Are Subject to Unique Defenses..................19

        B.    Plaintiffs' Claims Are Not Typical of the Claims of the Proposed Class.................24

        C.    Plaintiffs' Claims Are Not Susceptible to Common Proof. ......................25

            1.    The "Common" Issues Proposed By Plaintiffs Require Extensive Individualized Inquiry.................................................25

            2.    Plaintiffs Fail to Offer Any Common Method to Identify Injury or Calculate Damages.............................28

    IV.  Plaintiffs Fail to Satisfy the Additional Requirements of Rule 23(b)(2). .....................28

    V.   Plaintiffs Fail to Satisfy the Additional Requirements of Rule 23(b)(3). .....................32

        A.    Individual Issues Predominate Over Any Potential Generalized Proof....................32

        B.    A Class Action is Not the Superior Method of Adjudicating Plaintiffs' Claims.......33

        C.    A Class Action is Not Suitable Where Plaintiffs Claims Are Predicated Upon Equitable Tolling. ...............................................34

        D.    Plaintiffs' Proposed FDCPA Nationwide Class is Unmanageable..........................36

VI.    Plaintiffs' Alternative Request for Certification of a "Liability-Only" Class is
       Undeveloped, and Would Not Significantly Advance Resolution of Their Claims. .....38

CONCLUSION ..........................................................................................................................40

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alliance Network, LLC v. Sidley Austin LLP*,
  987 N.Y.S.2d 794 (Sup. Ct. New York County 2014) ...........................................14

*In re Aluminum Warehousing Antitrust Litig.*,
  336 F.R.D. 5 (S.D.N.Y. 2020) ..................................................................................33

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................... *passim*

*In re Arcade Pub., Inc.*,
  455 B.R. 373 (Bankr. S.D.N.Y. 2011)......................................................................23

*Ashmore v. CGI Grp., Inc.*,
  923 F.3d 260 (2d Cir. 2019)......................................................................................22

*Axiom Investment Advisors, LLC v. Deutsche Bank AG*,
  No. 15-9945, 2018 WL 4253152 (S.D.N.Y. Sept. 6, 2018) ......................................9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)........................................................................................20

*Baker v. Bank of Am., N.A.*,
  No. 16 CIV. 488 (AKH), 2016 WL 9409022 (S.D.N.Y. Oct. 31, 2016)................21

*Benner v. Bank of America, N.A.*,
  917 F. Supp. 2d 338 (E.D. Pa. 2013) .........................................................................7

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020)...............................................................................29, 31

*Black v. Buffalo Meat Serv., Inc.*,
  No. 15-CV-49S, 2021 WL 2043006 (W.D.N.Y. May 21, 2021)..............................22

*In re Blech Securities Litigation*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ...............................................................................10

*Brown v. Fed. Express Corp.*,
  249 F.R.D. 580 (C.D. Cal. 2008)..............................................................................33

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010)......................................................................................24

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ...................................................................................38

*Chiste v. Hotels*,
  756 F.Supp.2d 382 (S.D.N.Y. 2010).......................................................................13

*Clark v. Main St. Acquisition Corp.*,
  553 F. App'x 510 (6th Cir. 2014) ...........................................................................38

*In re Cmty. Bank of N. Virginia*,
  622 F.3d 275 (3d Cir. 2010)........................................................................20, 21, 35

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)....................................................................................9, 10, 32

*D.C., by and through Garter v. Cty. Of San Diego*,
  783 Fed. Appx. 766 (9th Cir. Nov. 5, 2019)...........................................................38

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).....................................................................................17

*Doscher v. Mannatt, Phelps & Phillips, LLP*,
  48 N.Y.S.3d 593 (1st Dep't 2017) ...........................................................................14

*Dungan v. Academy at Ivy Ridge*,
  344 Fed. Appx. 645 (2d Cir. Aug. 20, 2009) ..........................................................29

*Edwards v. Zenimax Media Inc.*,
  No. 12-00411, 2012 WL 4378219 (D. Colo. Sept. 25, 2012)..................................11

*In re Ephedra Prod. Liab. Litig.*,
  231 F.R.D. 167 (S.D.N.Y. 2005) .............................................................................12

*Faralli v. Hair Today, Gone Tomorrow*,
  No. 06-504, 2007 WL 120664 (N.D. Ohio Jan. 10, 2007) ......................................11

*First Marblehead Corp. v. Comm'r of Revenue*,
  470 Mass. 497, 23 N.E.3d 896 (Mass. 2015)............................................................3

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  304 F.R.D. 601 (D. Colo. 2015) ........................................................................11, 12

*Gill v. Dougherty*,
  136 N.Y.S.3d 383 (2d Dep't 2020)..........................................................................28

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) .........................................................................................13, 28

*Gosse v. National Collegiate Student Loan Trust 2007-3 et al.*,
   No. 20-cv-1446 (M.D. Pa.) ...........................................................................16

*Haworth v. Midland Credit Mgmt., Inc.*,
   No. 8:19-CV-46, 2019 WL 7161230 (D. Neb. Oct. 17, 2019) ................................37

*Hockenbury v. Hanover Ins. Co.*,
   No. 15-1003, 2016 WL 552967 (W.D. Okla. Feb. 10, 2016) ..........................11, 12

*Hoffman, et al. v. Transworld Systems Inc., et al.*
   No. 2:18-cv-01132 (W.D. Wa.) ....................................................................16

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2009).........................................................................10

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
   No. 11 CIV. 4209 KBF, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ...............20

*Janson v. Katharyn B. Davis, LLC*,
   806 F.3d 435 (8th Cir. 2015) .......................................................................37

*Joseph L. v. Connecticut Dep't of Child. & Fams.*,
   161 F. App'x 72 (2d Cir. 2005)....................................................................24

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ..................................................................30, 31

*Kaye Scholer LLP v. CNA Holdings, Inc.*,
   2010 U.S. Dist. LEXIS 43194 (S.D.N.Y. Apr. 28, 2010).....................................14

*Kowalski v. YellowPages.com, LLC*,
   No. 10-7318, 2012 WL 1097350 (S.D.N.Y. Mar. 31, 2012)...........................*passim*

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ................................................................20

*Larsen v. JBC Legal Grp., P.C.*,
   235 F.R.D. 191 (E.D.N.Y. 2006)...................................................................31

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)...........................................................19

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011).....................................................................17, 18

*Marinaccio v. Barnett Banks, Inc.*,
   76 F.R.d 104, 107 (S.D.N.Y. 1997) .............................................................32

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)...........................................................................................10, 24

*McKracken v. Best Buy Stores, L.P.*,
    248 F.R.D. 162 (S.D.N.Y. 2008) ................................................................................32

*Mendez v. Bank of Am. Home Loans Servicing, LP*,
    840 F. Supp. 2d 639 (E.D. N.Y. 2012) ........................................................................7

*Merrill et al. v. Transworld Systems Inc. et al.*,
    No. 1:20-cv-00183 (W.D. Mich.) ................................................................................16

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ......................................................................................11

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ................................................................................31

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
    419 F. Supp. 3d 668 (S.D.N.Y. 2019).........................................................................36

*In re Milk Prod. Antitrust Litig.*,
    195 F.3d 430 (8th Cir. 1999) ................................................................................17, 19

*Minter v. Wells Fargo Bank, N.A.*,
    No. CIV.A. WMN-07-3442, 2013 WL 1795564 (D. Md. Apr. 26, 2013) .......................34, 35

*Moore v. Apple Inc.*,
    309 F.R.D. 532 (N.D. Cal. 2015)...........................................................................11, 12

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)......................................................................................32

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)........................................................................................38

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ......................................................................................11

*Panwar v. Access Therapies, Inc.*,
    No. 1:12-CV-00619-TWP, 2015 WL 329013 (S.D. Ind. Jan. 22, 2015)................................11

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003)..........................................................................................29

*In re Parmalat Sec. Litig.*,
    No. 04 MD 1653 (LAK), 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008)................................20

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)..............................................................................9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ....................................................................10, 33

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  *934 F.3d 619 (D.C. Cir. 2019)*........................................................................ 12

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
  No. 11-6546, 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) .............................9, 24, 25

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)...............................................................................8

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ........................................................................38

*Savino v. Computer Credit, Inc.*,
  164 F.3d 81 (2d Cir. 1998).................................................................................23

*Schandler v. New York Life Ins. Co.*,
  No. 09 CIV. 10463 LMM, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011) ..........................21

*Schertenleib v. Traum*,
  589 F.2d 1156 (2d Cir. 1978).............................................................................14

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)...............................................................................9

*Summer v. Sec. Credit Servs., LLC*,
  335 Ga. App. 197, 779 S.E.2d 124 (2015).............................................................37

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015).................................................................................36

*Torres v. Toback, Bernstein & Reiss LLP*,
  No. 11-CV-1368 NGG VVP, 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) ........................16

*Transunion LLC v. Ramirez*,
  141 S.Ct. 2190-10 (2021)..................................................................................10

*Vill. on Canon v. Bankers Tr. Co.*,
  No. 95 CIV. 3706 (JGK), 1997 WL 47804 (S.D.N.Y. Feb. 5, 1997) ...............................22

*Vincent v. Money Store*,
  304 F.R.D. 446 (S.D.N.Y. 2015) ............................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ......................................................................................... *passim*

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ...................................................................................33

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ............................................. *passim*

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Fed. R. Civ. P. 41 .....................................................................................................................2

New York General Business Law § 349 ............................................................................ *passim*

New York Judiciary Law § 487 ........................................................................................ *passim*

**Other Authorities**

5 *Moore's Fed. Prac.* § 23.43(2)(b) (3d ed. 2000) ......................................................................31

*Manual for Complex Litigation* § 21.142 (4th ed. 2004) ............................................................30

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
   84 N.Y.U. L. Rev. 97 (2009) ....................................................................................30

## INTRODUCTION

Plaintiffs in this case applied for student loans, executed contracts promising to repay the loans, received funds, and used those funds to pursue their education.  They failed to repay the loans as promised, prompting collection actions to be filed against them.  No Plaintiff bothered to appear in their collection action, and default judgments were entered against Plaintiffs.  Many Plaintiffs still owe substantial sums.

Now, years later, Plaintiffs bring this separate lawsuit seeking damages against the owners (the Trust Defendants)[1] and servicers (NCO and TSI)[2] of their student loans, and the law firm that represented the owners and servicers in the collection proceedings (F&G).[3]  To be clear, Plaintiffs do not contend that the documents evidencing their debts do not exist, or were forged.  Instead, Plaintiffs speculate that maybe—just maybe—the right people did not look at the right documents at the right time.  Specifically, Plaintiffs claim that the individuals authorizing or signing the complaints and affidavits in the collection actions against them did not adequately review the proper documents beforehand.  Plaintiffs also contend that the complaints in the collection actions inaccurately stated that the Trust Defendants were Plaintiffs' original lenders.  Plaintiffs improperly rely almost exclusively on a Consent Order between TSI and the Consumer Financial Protection Bureau ("CFPB"), in which TSI expressly did not admit to any wrongdoing.  Plaintiffs have vanishingly little, if any, evidence to support their conclusory claims.

The circumstances surrounding each Plaintiff's loan and, therefore, each Plaintiff's legal claims, are highly individualized.  Some Plaintiffs are the borrowers on the loans, while others

---

[1] The Trust Defendants are National Collegiate Student Loan Trust 2004-2 ("NCSLT 2004-2"), National Collegiate Student Loan Trust  2006-4 ("NCSLT 2006-4"), National Collegiate Student Loan Trust 2007-2 ("NCSLT 2007-2"), and National Collegiate Student Loan Trust 2007-3 ("NCSLT 2007-3").

[2] "NCO" is NCO Financial Systems, Inc. n/k/a EGS Financial Care Inc.  "TSI" is Transworld Systems, Inc.

[3] "F&G" is Forster & Garbus LLP.

1

are co-signers.   Some Plaintiffs acknowledged the debts (and the Trust Defendants as their creditors) in bankruptcy filings, and others claim they do not know whether or not they took out these loans.   Some Plaintiffs contend that they suffered damages as a result of credit reporting, and others do not explain what their damages might be at all.   Some Plaintiffs had one or more of their claims dismissed at the pleading stage, and others did not.

Plaintiffs are asking the Court to certify several different classes and subclasses, the exact makeup and arrangement of which is not entirely clear from their papers.   Class certification is not appropriate, available, or warranted here for a great many reasons explained below.

## FACTUAL BACKGROUND

### I.     Plaintiffs Apply For and Receive Student Loans.

Plaintiffs, and their cosigners, each worked with The Education Resources Institute, Inc. ("TERI") to apply for student loans.   Declaration of Bradley Luke, attached here to as Exhibit 1, at ¶ 9.[4]   TERI processed the origination of each Plaintiffs' loan on the lending banks' behalf, ensured the loans were disbursed and issued the disbursement checks, and initially maintained the loan records and documents that were created during that process (the "Origination Records").   *Id*. As part of the loan origination process, each Plaintiff executed a credit agreement.   *Id.* at ¶¶ 27, 37, 47, 59, 74 & Exs. 1-O; 1-U; 1-BB; 1-II; 1-RR.[5]

Plaintiffs' loans applications were approved, and the funds were disbursed to Plaintiffs.   *Id.* at ¶¶ 28, 38, 48, 60, 76.   Plaintiffs used the loan proceeds to attend the schools they had planned to attend.   Declaration of James K. Schultz, attached hereto as Exhibit 2, ¶¶ 2, 4, 6–8.

---

[4] Plaintiff Michelo's claims were dismissed with prejudice pursuant to Rule 41(a)(1)(A)(ii) on May 10, 2021, and she is no longer a part of these cases.  (ECF 298).

[5] Detailed information about each Plaintiff's loan documentation and collection actions can be found in the Luke Declaration, and is not repeated here for the sake of brevity.

## II.     Plaintiffs' Loans Are Assigned to the Trust Defendants.

Plaintiffs' loans were assigned to the Trust Defendants prior to default and prior to any payments even being due.  Luke Decl. at ¶¶ 29, 39, 49, 61, 77 & Exs. 1-Q; 1-W; 1-DD; 1-KK; 1-UU.[6]  These assignments took place via a two-step process.  First, the bank that originated a Plaintiff's loan assigned ownership of the portfolio containing that loan to an intermediary "Depositor"—National Collegiate Funding, LLC ("NCF")—through a "Pool Supplement" agreement.  *Id.* at ¶¶ 14–15 & Exs. 1-A–1-F.  The Pool Supplement included an electronic schedule of loans that identified the loans subject to each Pool Supplement.  *Id.*  Then, on the same day it received the loans, NCF assigned all of the loans set forth in the electronic schedule to the Pool Supplement, and the Pool Supplement itself, to the purchasing trust (*i.e.*, one of the Trust Defendants) pursuant to individual "Deposit and Sale Agreements."  *Id.* at ¶¶ 14–15 & Exs. 1-G–1-J.  TERI sent the Origination Records to the pre-default loan servicer of Plaintiffs' loans, American Education Services ("AES"), which had been appointed a custodian of the loan documents under the terms of the securitization and serviced Plaintiffs' loans from the time of their disbursement to their charge-off.  *Id.* at ¶¶ 6, 10–12.

---

[6] The Trust Defendants were created in 2004, 2006 and 2007 when First Marblehead Corporation n/k/a Cognition Financial Corporation ("FMC") and its subsidiaries engaged in student loan securitization transactions, in which FMC arranged for national banks to sell certain student loans to various Delaware Statutory Trusts, either directly or through an intermediary. Luke Decl. at ¶ 5; *see also First Marblehead Corp. v. Comm'r of Revenue*, 470 Mass. 497, 498, 23 N.E.3d 896, cert. granted, judgment vacated sub nom. *The First Marblehead Corp. v. Massachusetts Com'r of Revenue*, 577 U.S. 918 (2015) (explaining the securitization process).  The Trust Defendants hold thousands of student loans that were purchased subsequent to the loans' origination, but prior to any default of a loan.  *Id.*

### III.    Plaintiffs Default on Their Loans, and Servicing is Transferred to NCO and TSI.

Plaintiffs defaulted on their loans pursuant to the terms of their Credit Agreements,[7] and the loans were charged-off.  Luke Decl. at ¶ 13.[8]  At charge-off, the servicing obligations for the loans were transferred from AES to First Marblehead Education Resources, Inc., and then to NCO (and then TSI).[9]  *Id*. at ¶¶ 11–13.  TSI (and formerly NCO) has real-time access to AES's records systems, along with its servicing records, for all Plaintiffs' loans contemporaneous with the assumption of Special Subservicing duties for each loan.  *Id*. at ¶¶ 13–20.

### IV.    Collection Actions Are Filed Against Plaintiffs, and Result in Default Judgments.

Following Plaintiffs' default on their loans, NCO (and later TSI) retained F&G, on behalf of the respective Trust Defendants, to enforce Plaintiffs' loans.  Luke Decl. at ¶¶ 21, 31, 42, 51, 65, 79.  F&G commenced collection lawsuits on behalf of the appropriate Trust Defendants against Plaintiffs in New York state courts.  *Id*. at ¶¶ 21, 32, 43, 52, 66, 81.  Each of the lawsuits accurately alleged that Plaintiffs were in default on a credit agreement, asserted causes of action for breach

---

[7] Plaintiffs' accounts were reported to credit agencies during the following periods of time: (a) the Seamans from loan origination until a tradeline removal request was made by NCO on July 20, 2014, (b) Tabar from loan origination until a tradeline removal request was made by TSI on February 8, 2015, (c) Frauenhofer from loan origination until a tradeline removal request was made by TSI on February 8, 2015, (d) Butry from loan origination until a tradeline removal request was made by NCO on August 11, 2013, and (e) Bifulco from loan origination until a tradeline removal request was made by TSI on February 8, 2015.  Luke Decl. at ¶¶ 35, 46, 57, 72, 87.  AES credit reported the accounts initially with an AES tradeline at or around origination until last updated at charge-off.  *Id*.  AES did not update its tradelines post charge-off.  *Id*.

[8] Prior to charge-off, AES provided notice to Plaintiffs of the delinquency of their accounts and offered opportunities to cure the default prior to charge-off,.  Luke Decl. at ¶ 20.  Specifically, AES sent letters to Plaintiffs identifying that their loans were owned by "National Collegiate Trust," (*Id*. at ¶¶ 30, 41, 50, 62, 78), and confirming Plaintiffs were in default (*Id*. at ¶¶ 41, 62, 80).  Certain Plaintiffs also entered into forbearance agreements, or submitted forbearance or deferment requests.  *Id*. at ¶¶ 40, 63–64.

[9] In November 2014, TSI assumed control over certain NCO business units to manage charged-off loans for the Trust Defendants.  Declaration of Ralph Lyons, attached hereto as Exhibit 3, at ¶ 10.  Since November 2012, NCO (and later TSI) has been a Special Subservicer on behalf of the Trusts and a custodian of records for defaulted and charged-off loans owned by the Trust Defendants. *Id*. at ¶ 9; *see also* Luke Decl. at ¶¶ 7–8.

of contract and account stated, and sought monetary relief. *Id.* All required loan documentation was in NCO's, and then TSI's, possession prior to filing suit against the plaintiffs. *Id.* at ¶¶ 13–21.

Plaintiffs were served with the collection actions against them, but failed to appear in state court or file any response to the complaints. *Id.* at ¶¶ 33, 44, 53, 67, 82–84. F&G requested NCO or TSI provide affidavits in support of applications for default judgment. *Id.* at ¶ 22. At the time the affiants signed the affidavits, they manually completed checklists on NCO or TSI forms, documenting each step they followed to familiarize themselves with information and documents pertaining to Plaintiffs' loans and to ensure their affidavits were truthful and accurate. *Id.* at ¶¶ 23–25. Those steps included accessing the appropriate systems to confirm the accuracy of the information for the applicable affidavit. *Id.* The affiants followed NCO or TSI's processes required to review such affidavits. Schultz Decl. at ¶ 14 & Ex. U at 45:21–50:4; Schultz Decl. at ¶ 15 & Ex. V at 42:4–48:2, 49:16–51:4, 82:9–14, 158:3–20; Schultz Decl. at ¶ 16 & Ex. W at 51:3–52:15, 71:10–73:21, 84:6–14; *see also* Schultz Decl. at ¶ 13 & Ex. T at 208:13–226:19. They further confirmed that there was nothing that they believed to be false or inaccurate in the affidavits. *Id.*

F&G filed the affidavits as part of applications for default judgment against each Plaintiff. Luke Decl. at ¶¶ 33, 44, 55, 69, 83. Default judgment was entered by the appropriate State courts against each of the Plaintiffs. *Id.* at ¶¶ 34, 45, 56, 70, 85. Plaintiffs currently owe the Trust Defendants at least the following amounts:

- Seaman Plaintiffs: $38,484.24
- Butry: $13,389.03
- Frauenhofer: $12,430.18

*Id.* at ¶¶ 36, 58, 73.[10]

**V.    Years Later, Plaintiffs File This Putative Class Action.**

Long after the collection actions ended, Plaintiffs filed this lawsuit alleging that the Trust Defendants, TSI, and F&G did not have possession of, or did not review, required documents at the time of the collection actions. *See, e.g.*, Compl. ¶¶ 274(a)–(b) & (f)–(h), 280(a)–(b) & (f)–(h), 284(a) & (d)–(e).[11]  Plaintiffs also contend that Defendants falsely asserted in the state court actions that a Trust Defendant was their original creditor (*See, e.g.*, Compl. ¶¶ 274(d)–(e), 280(d)–(e), 284(b)), and that the Trust Defendants should have registered with the New York Department of State before pursuing collection actions against Plaintiffs (*See, e.g.*, Compl. ¶¶ 274(c), 280(c), 284(b)).  Some Plaintiffs allege, in conclusory fashion, that they were harmed by negative credit reporting associated with their failure to repay their loans.  Compl. ¶¶ 192, 221.

Based on these allegations, Plaintiffs assert: (1) a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), against TSI and F&G; (2) a claim for violation of New York General Business Law § 349 ("GBL"), against all Defendants, and (3) a claim for violation of New York Judiciary Law § 487, against F&G.[12]  *See* Compl. ¶¶ 266–291.

---

[10] Plaintiff Bifulco's wages were lawfully garnished from December 2015 to January 2021 to repay her debt.  Luke Decl. at ¶¶ 45, 47.

[11] The Seamans' complaint was filed February 27, 2018. (Case No. 18-cv-01781, ECF 1).  On August 23, 2018, Bifulco, Butry, and Frauenhofer filed a separate suit. (Case No. 18-cv-07692, ECF 1).  On September 14, 2018, Tabar was included in an amended complaint filed with the Seamans.  (Case No. 18-cv-01781, ECF 60).  The two cases were consolidated on November 29, 2018.  (Case No. 18-cv-01781, ECF 73; Case No. 18-cv-07692, ECF 34).  A Consolidated Class Action Complaint ("Compl.") was filed on December 10, 2019.  (Case No. 18-cv-01781, ECF 124).

[12] On September 30, 2019, the District Court entered an order granting in part and denying in part the defendants' motion to dismiss (the "Order").  (ECF 107).  The District Court noted in the Order that the following claims were dismissed: "…(2) The Seaman Plaintiffs' FDCPA claims - to the extent they rely on the misrepresentation that Defendant National Collegiate Loan Trust 2007-3 is the 'original creditor' of the Seamans' loan - are dismissed as time-barred; (3) Plaintiff Katherine Seaman's GBL Section 349 claim is dismissed for failure to plead an actual injury; [and] (4) Plaintiff Butry's GBL Section 349 claim is dismissed for failure to plead an actual injury;..."  *Id.*

## VI.   The Consent Order Involving TSI.

Plaintiffs rely heavily on a September 15, 2017 consent order between TSI and the CFPB (the "Consent Order").   *See, e.g.*, Compl. ¶¶ 4-5, 13–15, 257–61; Mem. at 3–4.   Plaintiffs conveniently fail to mention that TSI did not admit to any findings of fact, conclusions of law, or any violation of the law.   Luke Decl. at ¶ 26 & Ex. 1-N.   The Consent Order does not preclude TSI from servicing the Trust Defendants' loan portfolio retroactively or prospectively, and does not preclude the Trust Defendants, NCO, TSI, or F&G from collecting or suing on loans subject to compliance with its terms.   *Id.*[13]   Based upon TSI's records, none of Plaintiffs' accounts were entitled to any of the benefits provided for by the Consent Order.   *Id.*

To the extent Plaintiffs rely on the existence of, or facts alleged in, the Consent Order, this Court should reject this effort.   TSI admitted no facts or liability in the Consent Order, and the CFPB's "findings" in the Consent Order were not vetted, let alone proven, at trial or through an administrative hearing process.   Courts have rejected attempts by plaintiffs to establish a defendant's wrongful conduct by relying on language found in previously executed consent judgments.   *See e.g., Benner v. Bank of America, N.A.*, 917 F. Supp. 2d 338, 366, n. 8 & 10 (E.D. Pa. 2013) (noting that a consent judgment and order defendant stipulated to with the Federal Trade Commission "were not an admission of wrongdoing"); *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 645, 658–59 (E.D. N.Y. 2012) (rejecting plaintiff's attempt to rely on language in a FTC consent order and judgment and concluding that no unlawful conduct can be reasonably inferred from a prior lawsuit in another judicial district that was resolved with

---

[13] In fact, neither the Trust Defendants nor F&G are even subject to or targets of the Consent Order.  *Id.*

a consent order and judgment which explicitly stated that "Defendants have not admitted any of the allegations of wrongdoing set forth in the Complaint, and entry of this Order is not an admission of any such allegations of wrongdoing or violation of law").

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) sets forth the threshold requirements for class certification.  Fed. R. Civ. P. 23(a); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Kowalski v. YellowPages.com, LLC*, No. 10-7318, 2012 WL 1097350, *11 (S.D.N.Y. Mar. 31, 2012).   Rule 23(a) requires plaintiffs to prove, by a preponderance of evidence, that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Amchem*, 521 U.S. at 613; *Robidoux*, 987 F.2d at 935.  If Plaintiffs are able to demonstrate that these criteria are met, "the court must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)."  *Kowalski*, 2012 WL 1097350 at *11. Plaintiffs in this case seek class certification under Rule 23(b)(2) and Rule 23(b)(3).

To obtain certification of a class under Rule 23(b)(2), plaintiffs must prove that the requirements of Rule 23(a) are met and, additionally, that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2);  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011).  Certification of a class under Rule 23(b)(2) is only available "when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart*, 564 U.S. at 360.  Rule 23(b)(2) class certification is not available "when each individual class member would be entitled to a *different*

8

injunction or declaratory judgment against the defendant," or where "each class member would be entitled to an individualized award of monetary damages." *Id*. at 360–61.

To obtain certification of a class under Rule 23(b)(3), plaintiffs must prove that the requirements of Rule 23(a) are met and, additionally, establish that common questions of law and fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Kowalski*, 2012 WL 1097350 at *11. This predominance requirement is "far more demanding" than the Rule 23(a) commonality prerequisite. *Amchem*, 521 U.S. at 623–24; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The Second Circuit has also recognized an implied requirement of ascertainability in Rule 23, which demands that "a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 260, 268–69 (2d Cir. 2017).

"'Rule 23 does not set forth a mere pleading standard.'" *Axiom Investment Advisors, LLC v. Deutsche Bank AG*, No. 15-9945, 2018 WL 4253152, at *4 (S.D.N.Y. Sept. 6, 2018) (quoting *Wal-Mart*, 564 U.S. at 350). Instead, the movant must "affirmatively demonstrate" and "prove" compliance with Rule 23. *Wal-Mart*, 564 U.S. at 350; *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11-6546, 2013 WL 93636, at *3 (S.D.N.Y. Jan. 9, 2013) (the burden is on plaintiff to "establish the Rule 23 requirements by a preponderance of the evidence"). A certifying court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citation and internal quotation marks omitted). After the Supreme Court's decision in *Comcast*, "[i]t is now indisputably the role of the district court to scrutinize the evidence before granting certification, even when doing so 'requires inquiry into the merits of the claim.'" *In re*

*Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("*Rail Freight I*") (quoting *Comcast*, 569 U.S. at 35); *see also Kowalski*, 2012 WL 1097350 at *11-12 (explaining that the determinations as to whether the requirements of class certification are met "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement").   "A party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2009).[14]

## ARGUMENT

**I.    The Proposed Class Definition is Fundamentally Flawed.**

Plaintiffs ask the Court to certify the following National Class:

"(a) all persons sued in state-court lawsuits related to the collection of consumer debt, (b) in which any Trust Defendant was identified as a plaintiff in the complaint, (c) from February 27, 2012 through February 27, 2018."

(Pltfs Mem. Of Law in Support of Mot for Class Certification at 10).   Such a class would necessarily include persons that were not damaged in any way, as well as persons sued in collection actions where the conduct alleged by Plaintiffs did not occur.[15]   This creates two fundamental problems, both of which preclude certification.

---

[14] Plaintiffs cite to *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) and *In re Blech Securities Litigation*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) to support their statement that "[a]ny doubt as to the propriety of certification should be resolved in favor of certifying the class because denial will almost certainly terminate the action and be detrimental to the class members."  (Mem. At 9).  *Marisol* says no such thing.  126 F.3d at 377 (finding that the district court, while "near the boundary of the class action device," did not abuse its discretion by "conceptualizing" the claims at issue at a "high level of abstraction").  And, *In re Blech* expressly limits its comments in this regard to "alleged securities fraud case[s]."  187 F.R.D. at 102.  *In re Blech* also pre-dates more recent authority cited above, which makes it clear that courts must be satisfied plaintiffs have proven each required element before certifying a class.

[15] For example, Plaintiffs' proposed class includes individuals against whom a debt collection lawsuit was commenced, but the lawsuit was discontinued prior to service of a complaint and/or any appearance in the action. Schultz Decl. at ¶ 3-Y–3-DD & Ex. 17–22.  Under the Supreme Court's recent ruling in *Transunion LLC v. Ramirez*, those individuals would not have standing to pursue claims.  141 S.Ct. 2190, 2204–10 (2021).

First, Plaintiffs' proposed class definition is impermissibly overbroad. A proposed class is overbroad, and cannot be certified, where it is defined to include people or entities that were not affected by, or actually injured by, the alleged misconduct. *See, e.g.*, *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 824 (7th Cir. 2012) (A class is overbroad, and should not be certified, if it includes "a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct."); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming district court's refusal to certify a proposed class that included millions of people who could not have been injured by defendant's failure to disclose ingredients in diet fountain drinks); *Hockenbury v. Hanover Ins. Co.*, No. 15-1003, 2016 WL 552967, at *3–4 (W.D. Okla. Feb. 10, 2016) (finding proposed class definition that all persons who submitted claims to insurer "overbroad and unworkable" because it included people who were not subject to alleged misconduct or were not injured); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 304 F.R.D. 601, 606–07 (D. Colo. 2015) (refusing to certify proposed class as overly broad where the class definition included all persons who rented certain products or services even if they were not subject to the alleged misrepresentations at issue or were not injured); *Moore v. Apple Inc.*, 309 F.R.D. 532, 542–43 (N.D. Cal. 2015) (refusing to certify proposed class that included uninjured persons as overbroad); *Panwar v. Access Therapies, Inc.*, No. 1:12-CV-00619-TWP, 2015 WL 329013, at *3 (S.D. Ind. Jan. 22, 2015) ("A proper class definition cannot be so untethered from the elements of the underlying cause of action that it wildly overstates the number of parties that could possibly demonstrate injury.") (quotations omitted); *Edwards v. Zenimax Media Inc.,* No. 12-00411, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012) (proposed class was overbroad where it included all buyers "regardless of whether he or she was ever injured"); *Faralli v. Hair Today, Gone Tomorrow*, No. 06-504, 2007 WL 120664, at *6 (N.D. Ohio Jan. 10, 2007) ("a court cannot certify

11

a class that includes individuals who have no claim"); *In re Ephedra Prod. Liab. Litig.*, 231 F.R.D. 167, 171 (S.D.N.Y. 2005) (declining to certify a settlement class that ranged from "users who suffered no injury at all to the survivors of those who suffered death. Such a class in not sufficiently cohesive to warrant adjudication by representation."). There can be no legitimate question whether the proposed class definition suffers from this fatal defect: it does, and certification should be denied.

Second, even if the proposed class was not so overly broad to preclude certification (which it is), the proposed class as defined essentially guarantees that individual issues will predominate. Plaintiffs cannot use the class action mechanism to presume misconduct or injury. *See*, *e.g.*, *Rail Freight III*, 934 F.3d 619, 625 (D.C. Cir. 2019); *Hockenbury*, 2016 WL 552967 at *3–4. Accordingly, where a proposed class is defined to include uninjured individuals or individuals not subject to the misconduct alleged, plaintiffs must propose some sort of "objective criteria by which such individuals could be identified and excluded from the class." *Friedman*, 304 F.R.D. at 607; *see also Hockenbury*, 2016 WL 552967 at *3–4. Plaintiffs do not propose any such objective criteria here. Regardless, as discussed in greater detail in Section III(C) below, the questions of whether any given putative class member was subject to the misrepresentations alleged by Plaintiffs or was injured and suffered damages will require individualized fact finding. Under these circumstances, the Court should deny certification of the proposed class. *Friedman*, 304 F.R.D. at 606–07; *see also Moore*, 309 F.R.D. at 542–43 (inclusion of individuals who did not suffer injury in proposed class definition is "not only problematic because it demonstrates the overbreadth of the proposed class, it is also indicative of the individualized inquiries that would be necessary to determine whether a class member has suffered any injury in the first place").

II.     **A National Class Is Not Available or Appropriate.**

A.     **New York General Business Law § 349 Does Not Apply to Conduct Outside New York.**

Plaintiffs ask the Court to certify a single "National Class" to pursue all three of their claims.  Plaintiffs' claim for violation of New York General Business Law § 349 ("GBL), however, is not available to address alleged conduct in any state outside of New York.  *See, e.g.*, GBL § 349(a) (limiting its application to conduct "in this state"); *Chiste v. Hotels,* 756 F.Supp.2d 382, 402 (S.D.N.Y. 2010) ("New York law is clear that G.B.L. § 349 does not apply to out-of-state plaintiffs who were allegedly deceived outside of New York."); *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (2002) ("to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York" and the GBL "was not intended to police the out-of-state transactions of New York companies").   All Plaintiffs were located in New York when the allegedly wrongful conduct occurred, and all of the collection actions at the center of Plaintiffs' claims were filed and prosecuted in New York.  Luke Decl. at ¶¶ 21, 32–34, 43–45, 52–57, 66–71.  As the GBL does not apply to conduct occurring outside of New York, and none of the alleged conduct underlying the claim occurred outside of New York, there is no legal or factual basis for permitting Plaintiffs to bring a GBL claim on behalf of a proposed class that includes non-New York residents subject to non-New York collection lawsuits.

B.     **A National Class Cannot Be Certified for the Judiciary Law § 487 Claim.**

Similar to the GBL claim, a national class is not appropriate and cannot be certified with respect to Plaintiffs' Judiciary Law claim, as Judiciary Law § 487 also does not apply to conduct outside of New York.

Judiciary Law § 487 is a penal statute which provides both criminal and civil penalties, including treble damages, for an attorney's deceit or collusion on a court or any party.  *See* N.Y.

Judiciary Law § 487 (McKinney).  Both New York courts and the Second Circuit have held that section 487 does not have "extraterritorial application," but applies only to "the conduct of litigation before the New York courts."  *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978); *see Kaye Scholer LLP v. CNA Holdings, Inc.*, 2010 U.S. Dist. LEXIS 43194, *4 (S.D.N.Y. Apr. 28, 2010) (holding Judiciary Law has a territorial limit and only applies within the bounds of New York state); *Doscher v. Mannatt, Phelps & Phillips, LLP*, 48 N.Y.S.3d 593, (Mem)–594 (1st Dep't 2017) (recognizing that Judiciary Law § 487 is to be narrowly construed and "does not apply to conduct outside New York's territorial borders"); *Alliance Network, LLC v. Sidley Austin LLP*, 987 N.Y.S.2d 794, 807 (Sup. Ct. New York County 2014) ("The reach of section 487 extends only to misconduct by attorneys in connection with proceedings before New York courts").

Since the Judiciary Law does not apply to conduct outside of New York's territorial border, a nationwide class cannot be certified for this claim either.

### C.    A Nationwide Class Cannot Be Certified Against The Trust Defendants or F&G.

The GBL claim is the only claim brought against the Trust Defendants.  Because the GBL claim is limited to New York, it would be inappropriate to certify any nationwide class as against the Trust Defendants.  In other words, even if Plaintiffs were able to meet all of the other elements of class certification (which they cannot), the broadest possible class the Court could potentially certify against the Trust Defendants for violation of the GBL would be a New York-only class.

Similarly, the territorial limitations applicable to Plaintiffs' GBL and Judiciary Law claims preclude certification of a nationwide class against F&G on those claims.  In addition, a national class cannot be certified on any claim (including FDCPA) against F&G as F&G's conduct was limited to New York.  Indeed, as Plaintiffs concede, F&G is a New York law firm which commences debt collection actions in New York State courts on behalf of NCSLT.  Compl. ¶ 35;

14

Mem. at 4; Schultz Decl. at ¶ 11 & Ex. 3-S at 24.  Since F&G did not commence debt collection

suits on behalf of the Trust Defendants outside of the State of New York, a nationwide class cannot

be certified against F&G on any claim alleged in Plaintiffs' Complaint.  Thus, the broadest possible

class the Court could certify against F&G is a New-York only class.[16]

## B.     The Court Should Decline to Certify a Nationwide Class on Plaintiffs' FDCPA Claim.

Initially, Plaintiffs' motion for class certification improperly seeks to expand the class on

a certification motion for what was originally proposed in the Complaint.  "While a district court

may carve out a narrower class from an overbroad class proposed in [a] Complaint…the plaintiffs

cite no case demonstrating the appropriateness of considerably expanding a class on a certification

motion from what was originally proposed in the Complaint."  *Vincent v. Money Store*, 304 F.R.D.

446, 453 (S.D.N.Y. 2015) (internal citations omitted).  Expanding the class definition on a class

certification motion is unfair to the defendants where the defendants are not placed on notice of

the nature and scope of the claims asserted against them and where additional discovery is

necessary for the broadened class.  *Id.*  Both concerns are present here.  The sampling discovery

in this case was limited to New York, and all plaintiffs are New York residents.  As such, this

Court should only be considering whether to certify a New York class as defined in plaintiffs'

complaint.

Plaintiffs' class certification motion seeks to create a Rule 23(b)(3) class "for each Trust

and each state" ostensibly for the purpose of avoiding the FDCPA statutory damages cap, and,

---

[16] In fact, a narrower class would be appropriate against F&G, as F&G was not the only law firm who commenced debt collection actions on behalf of the Trust Defendants in New York and F&G cannot be held liable for the conduct of other law firms.  *See* Schultz Decl. at ¶ 22 & Ex. 3-DD.

instead, seeking statutory damages for each separate sub-class for each state.[17]  Plaintiffs rely upon

*Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 NGG VVP, 2014 WL 1330957, at *2

(E.D.N.Y. Mar. 31, 2014) for the position that this Court can apply the FDCPA's cap on a subclass-

by-subclass basis, but that was not *Torres* holding.  Rather, there, the court was presented with two

subclasses and under a proposed settlement the parties proposed to pay each member of the sub-

classes statutory damages, but it did not consider whether plaintiffs could separately seek the

statutory cap for each subclass.  *Id*.  By allowing separate sub-classes to proceed, and if the

damages cap of $500,000 can be applied to each separate sub-class, it would nullify the damages

cap under 15 U.S.C. § 1692k.[18]  Additionally, plaintiffs do not explain how any of them would be

suitable class representatives for those sub-classes in different states across the country. A headless

sub-class cannot be certified when there is no putative class representative for 49 of the 50

requested sub-classes.

---

[17] Plaintiffs contradictorily seek to certify a "National Class" but also seek to certify 50 separate "sub-classes".  It cannot be one and the same.  Moreover, the FDCPA claim is not brought against the Trust Defendants, so dividing up subclasses based on the Trusts does not make sense.

[18] Beyond that, despite Plaintiffs' representations to the contrary, there are other active purported class actions based upon similar allegations as those alleged by plaintiffs herein pending in other states.  *See Gosse v. National Collegiate Student Loan Trust 2007-3 et al.*, No. 20-cv-1446 (M.D. Pa.), *Hoffman, et al. v. Transworld Systems Inc., et al.* No. 2:18-cv-01132 (W.D. Wa.), *Merrill et al. v. Transworld Systems Inc. et al.*, No. 1:20-cv-00183 (W.D. Mich.).  Indeed, Plaintiffs' counsel notified the parties to this case on September 28, 2020, by email, that they intended to intervene in *Gosse* to have it transferred for consolidation into *Michelo*, which never materialized.  In that email, Plaintiffs' counsel stated that "[a]llowing *Gosse* to proceed independent of *Michelo* carries too great a risk of inconsistent rulings, duplicative discovery, and other inefficiency and prejudice."  While defendants dispute that any of the cases are viable for class treatment, this fact alone confirms that superiority is lacking.

**III.     Plaintiffs Fail to Satisfy the Requirements of Rule 23(a).**

**A.     Plaintiffs Are Not Adequate Class Representatives.**

To satisfy Rule 23(a)(4), Plaintiffs must demonstrate that they have the same interests and suffered the same injuries as the putative class members. *See, e.g.*, *Amchem*, 521 U.S. at 625–26; *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). The inquiry is twofold: "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006). Plaintiffs also cannot be adequate class representatives if they are subject to unique defenses. *See, e.g.*, *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999).

**1.     The Dismissal of Many Plaintiffs' Claims Creates Conflicts of Interest.**

On October 11, 2019, the Court dismissed several claims brought by certain individual Plaintiffs. (ECF 109). Following these dismissals, each of the named Plaintiffs have live claims for differing combinations of some, but rarely all, causes of action:

| Plaintiff | FDCPA Claim | GBL Section 349 Claim | Section 487 Claim |
|---|---|---|---|
| Katherine Seaman | Dismissed | Dismissed | Live |
| Mary Re Seaman | Dismissed | Live | Live |
| Sandra Tabar | Live | Live | Live |
| Christina Bifulco | Live | Live | Live |
| Francis Butry | Live | Dismissed | Live |
| Cori Frauenhofer | Live | Live | Live |

Both the Supreme Court and the Second Circuit have explained, unequivocally, that named Plaintiffs cannot be adequate representatives of a class where some members of the class have different or additional claims and/or damages than the named Plaintiffs. *See Amchem*, 521 U.S. at 597–626; *In re Literary Works*, 654 F.3d at 250–255. In *Amchem*, the Supreme Court affirmed the Third Circuit's decision to vacate class certification where the single class proposed by plaintiffs included both individuals who had already manifested asbestos-related injuries and those

who had been exposed to asbestos but had not yet shown signs of injury.  521 U.S. at 607–08.  The Court found that "the interests of those within the single class" were "not aligned" because they would have competing preferences for how any funds were distributed.  *Id*. at 626–27.

Similarly, in *In re Literary Works*, the Second Circuit found that the District Court abused its discretion when it certified a class consisting of individuals with three different types of claims.  *In re Literary Works*, 654 F.3d at 242–55.  Some named plaintiffs held all three types of claims, while others held only one or two of the types of claims, resulting in "disparate interests" within the class.  *Id*.  The Second Circuit explained that, "[a]lthough all class members share an interest in maximizing the collective recovery, their interests diverge as to the distribution of that recovery because each category of claim is of different strength and therefore commands a different settlement value."  *Id*. at 254.

The presence of competing interests within a class requires subgroups representing class members with each type of claim.  *Amchem*, 521 U.S. at 627; *In re Literary Works*, 654 F.3d at 251–52.[19]  The lack of such subgroups was fatal to a finding of adequacy in *Amchem* and *In re Literary Works*.  *Amchem*, 521 U.S. at 627; *In re Literary Works*, 654 F.3d at 251–54.  There is no basis for a different decision here; Plaintiffs are not adequate class representatives because each of them has an interest in pursuing different combinations of the three causes of action brought in the Complaint, which creates insurmountable conflicts of interest.

---

[19] "Without subclasses, named plaintiffs with only [one category of] claims were obligated to advance the collective interests of the class, rather than those of the subset of class members whose claims mirrored their own. Only the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented."  *In re Literary Works*, 654 F.3d at 251–52.

###### 2.     Plaintiffs' Claims Are Subject to Unique Defenses.

> a.     *There is no evidence of misconduct related to Plaintiffs' collection suits.*

Plaintiffs are also inadequate class representatives because they are subject to unique defenses—namely, that they did indeed owe the amounts claimed in their collection actions. Plaintiffs seek to represent a class of individuals who were sued by Trust Defendants in state-court collection actions, in bringing claims based on alleged misstatements by Defendants during the collection actions, with the general theory being that the collection actions were wrongful and targeted individuals who did not in fact owe the debts.  The evidence here shows that each named Plaintiff absolutely owed the debts that were the subject of their collection actions to the applicable Trust Defendants.  While some Plaintiffs refuse to admit they took out and owe the loans at issue, the documentary evidence demonstrates that all Plaintiffs signed the loan documents, and received and used the loan proceeds.   Luke Decl. at ¶¶ 27–28, 37–38, 48–50, 60–61, 75–76.   And, if Plaintiffs continue to refuse to acknowledge the loans, they create an additional unique issue that will require mini-trials for each individual Plaintiff.  Plaintiffs' non-payment of their debts subjects them to unique defenses and arguments regarding injury, and renders them inadequate to represent a class of individuals that were allegedly victims of improper collection actions.  *See*, *e.g.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 458, 536 (S.D.N.Y. 2018) (named representative who did not hold trading positions that fell within the class definition did not meet the adequacy requirement); *In re Milk Prod. Antitrust Litig.*, 195 F.3d at 437 (affirming denial of class certification where sole remaining named plaintiff lacked standing to pursue claims).

b.    *All of Plaintiffs' Credit Reporting Claims Are Time-Barred.*

Plaintiffs' credit reporting claims are barred by the applicable limitation periods for the FDCPA and GBL, and, as such, plaintiffs cannot meet the typicality or adequacy requirements related to those claims.  Under Rule 23(a)(3), "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).  "The presence of unique defenses may, in certain situations, defeat class certification."  *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, No. 11 CIV. 4209 KBF, 2013 WL 5815472, at *19 (S.D.N.Y. Oct. 29, 2013).  A unique defense threatens to become the focus of the litigation when it goes to the heart of the plaintiff's case and when it requires considerable time and effort to rebut.  *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 180 (S.D.N.Y. 2008).  The unique defense rule is applied where a full defense is available against an individual plaintiff's action.  *In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK), 2008 WL 3895539, at *5 (S.D.N.Y. Aug. 21, 2008).  Under Rule 23(a)(4), a class member must not have interests that are antagonistic to one another.  *Vincent*, 304 F.R.D. at 456 (quoting *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992)).[20]

Here, initially, Michelo, Bifulco and Butry were the only plaintiffs to assert claims regarding alleged false credit reporting.  The District Court dismissed Butry's GBL claim and Michelo's claims were dismissed pursuant to a stipulation.  As such, the only plaintiffs asserting credit reporting claims are Bifulco (FDCPA/GBL) and Butry (FDCPA).

---

[20] *See also In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 294 (3d Cir. 2010), *as amended* (Oct. 20, 2010) ("[T]o the extent the claims of the named plaintiffs—as compared with the rest of the class—are subject to fatal statute-of-limitations defenses, that inquiry may be relevant to whether they can adequately represent absent class members whose claims do not suffer from timeliness problems.").

Plaintiff Butry's account was credit reported until a tradeline removal request was made by NCO on August 11, 2013.  Luke Decl. at ¶ 57.  Plaintiff Bifulco's account was credit reported through February 8, 2015.  *Id*. at ¶ 46.  The statute of limitations for FDCPA claims is 1 year, and the statute of limitations for GBL claims is 3 years.  *See*, *e.g.*, *Baker v. Bank of Am., N.A.*, No. 16 CIV. 488 (AKH), 2016 WL 9409022, at *3 (S.D.N.Y. Oct. 31, 2016), aff'd, 706 F. App'x 43 (2d Cir. 2017) (citing 15 U.S.C. § 1692k(d)) ("The federal Fair Debt Collection Practices Act has a one-year statute of limitations."); *Schandler v. New York Life Ins. Co.*, No. 09 CIV. 10463 LMM, 2011 WL 1642574, at *4 (S.D.N.Y. Apr. 26, 2011) (citing C.P.L.R. § 214(2) ("Private rights of action under section 349 are governed by a three-year statute of limitations.").  The complaint was not filed until February 27, 2018, more than 3 years after the last reporting of either the Bifulco or Butry account.  This fact alone defeats typicality and adequacy, and certification of the proposed Rule 23(b)(2) class.  *See Vincent*, 304 F.R.D. at 456 ("If a named plaintiff is time-barred from pursuing an action, the plaintiff would be an inadequate representative of the class because that plaintiff would not be a member of the class."); *see also In re Cmty. Bank of N. Virginia*, 622 F.3d at 293 (noting that statute of limitations may preclude a finding of typicality and adequacy).

> c.    *Several Plaintiffs Acknowledged Their Debts In Other Proceedings.*

Plaintiffs Mary Re Seaman and Christina Bifulco are subject to unique defenses that their claims are precluded based upon judicial estoppel, due to disclosures in their prior bankruptcy filings that constitute admissions that they owed a debt to the Trust Defendants and that they were aware that the Trust Defendants were their creditors well prior to the filing of the State Court Actions.  These defenses defeat Mary Re Seaman's and Christina Bifulco's adequacy to represent the purported class, and makes their claims atypical of the putative class.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding."

*Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 271–72 (2d Cir. 2019) *(quoting Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)).  Judicial estoppel functions to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).

"Judicial estoppel is properly invoked where: (1) a party's later position is clearly inconsistent with its earlier position, and (2) the party's former position has been adopted in some way by the court in an earlier proceeding." *Id.*  "Judicial estoppel is an equitable doctrine invoked at the court's discretion" and "[i]t is designed to prevent 'improper use of judicial machinery.'" *Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49S, 2021 WL 2043006, at *9 (W.D.N.Y. May 21, 2021) (citing *New Hampshire*, 532 U.S. at 750)).  "The purposes of this estoppel are to prevent internal inconsistency, to preclude litigants from playing "fast and loose" with the courts, and to avoid deliberate changing positions for exigencies of the moment." *Id.*  "The Court of Appeals has also found that the party against whom the estoppel is claimed must actually have obtained a judgment as a result of the inconsistent position." *Vill. on Canon v. Bankers Tr. Co.*, No. 95 CIV. 3706 (JGK), 1997 WL 47804, at *3 (S.D.N.Y. Feb. 5, 1997) (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis,* 903 F.2d 109, 114 (2d Cir. 1990).  "In a bankruptcy case, this requirement usually is fulfilled when the bankruptcy court confirms a plan pursuant to which creditors release their claims in return for the debtor's non-exempt assets and the debtor emerges from bankruptcy to start afresh." *Id.*

Here, Plaintiffs Mary Re Seaman and Christina Bifulco filed bankruptcy on May 28, 2010, and June 20, 2011, respectively.  Schultz Decl. at ¶¶ 3, 5 & Exs. 3-D, 3-H.  On Schedule F of her petition, Seaman listed a debt owed to "AES/NCT", identified the debt as a "student loan," and

did not identify the debt as disputed.[21]   *Id*. at ¶ 3 & Ex. 3-D.   On Schedule F of her bankruptcy petition Bifulco listed a debt owed to "National Collegiate Trust," identified the debt as a "student loan (co-sign[e]d for son)," and did not identify the debt as disputed.   *Id*. at ¶ 5 & Ex. 3-H.

Plaintiffs alleged in their Complaint that they were both somehow misled by representations by the Defendants; however, their bankruptcy schedules quite clearly show they understood the nature of the accounts as student loans, debts that were owed to the Trust Defendants, and the fact that they owed these debts to the Trust Defendants.   As such, the judicial estoppel defense goes to the heart of these Plaintiffs' claims, highlighting lack of typicality with the putative class claims and undermining their adequacy as a class representative because of the unique defense to which their claims are subject.

Beyond these bankruptcy filings, Plaintiffs also engaged in further acts that diminish their credibility and render them inadequate as lead plaintiffs.   *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming denial of certification and noting that "[t]he fact that Savino offered differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial.").   The evidence reflects that Plaintiffs Frauenhofer and Bifulco entered into forbearance and deferment agreements on their loans acknowledging the debts.   *See*, *e.g.*, Luke Decl. at ¶¶ 40, 63–64.   And prior to loan charge-off, AES provided notice to each Plaintiff of the delinquency of their accounts and offered opportunities to cure the default.   *Id*. at ¶¶ 20, 41, 50, 62, 78.   Plaintiffs' claims of confusion, or some sort of scheme that led to the entry of the state court judgments, completely contradict and conflict with the documents they submitted to apply for the loans, and their communications with

---

[21] "Bankruptcy schedules, executed under penalty of perjury, when offered against a debtor are eligible for treatment as judicial admissions."   *In re Arcade Pub., Inc.,* 455 B.R. 373, 383 (Bankr. S.D.N.Y. 2011).

AES well prior to the state court lawsuits.  This creates serious credibility issues that render Plaintiffs inadequate representatives of the proposed class.

### B.      Plaintiffs' Claims Are Not Typical of the Claims of the Proposed Class.

To obtain class certification, Plaintiffs must also show that their claims and defenses are typical of the claims and defenses of the proposed class.  *See*, *e.g.*, *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010); *Marisol A.*, 126 F.3d at 376.  Not only must Plaintiffs' claims arise from the same course of events as the claims of the proposed class, but Plaintiffs must make "similar legal arguments to prove the defendant's liability" as each member of the proposed class.  *Marisol A.,* 126 F.3d at 376; *see also Brown*, 609 F.3d at 475.  In addition, to satisfy the typicality requirement, Plaintiffs must show that they are not "subject to unique defenses which threaten to become the focus of the litigation."  *Rapcinsky*, 2013 WL 93636 at *4–5 (quoting *Baffa*, 222 F.3d at 59).  "At bottom, the typicality requirement concerns the fairness of allowing an entire class's claim to rise or fall with the fate of the named representative's claims; thus, that representative's claims must be typical of the class so as to prevent a false prophet from bearing the standard for an entire class of claims."  *Id.*

Plaintiffs have not and cannot demonstrate that their claims and defenses are typical of those of the proposed class for the same reasons that they cannot establish their adequacy as class representatives.  Due to the mix of different claims brought by different Plaintiffs, no one Plaintiff's claims or defenses are typical of the entire proposed class.  Because the evidence shows Plaintiffs did indeed owe the debts that were the subject of their collection actions to the Trust Defendants, and Plaintiffs' refusal to acknowledge their loans would necessitate a mini-trial for each loan, Plaintiffs are subject to unique defenses and arguments that they lack any cognizable injury.  For these reasons, Plaintiffs cannot meet the typicality requirement and their request for class certification should be denied.  *See*, *e.g.*, *Joseph L. v. Connecticut Dep't of Child. & Fams.*,

161 F. App'x 72, 75 (2d Cir. 2005) (affirming denial of class certification for lack of typicality where there were defenses unique to the plaintiff; plaintiff's claims were based on the failure of an agency to grant him an opportunity for hearing, but the evidence showed that the agency did provide the plaintiff with the opportunity for a hearing); *Rapcinsky*, 2013 WL 93636, at *5 (finding plaintiff failed to meet typicality requirement because his claims involved legal theories not shared by all members of the proposed class, and he was subject to unique defenses).

###### C.      Plaintiffs' Claims Are Not Susceptible to Common Proof.

To obtain class certification, Plaintiffs must identify "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  As the Supreme Court has explained, "[w]hat really matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 349 (emphasis in original).  Certification of the proposed class should be denied, because myriad issues of both law and fact are not subject to common proof. *See*, *e.g.*, *Kowalski*, 2012 WL 1097350 at *14.

###### 1.      The "Common" Issues Proposed By Plaintiffs Require Extensive Individualized Inquiry.

Nearly every question on Plaintiffs' list of purportedly common issues (Mem. at 13) would require individualized inquiry.  Plaintiffs' conclusory allegation of a common practice among Defendants does not excuse Plaintiffs from demonstrating that the allegedly common practice was actually followed or implemented as to each Plaintiff and each purported class member.  In other words, ***Plaintiffs cannot assume the common misconduct and harm that they must prove in order to obtain class certification or ultimately succeed on their claims.***

Demonstrating that each Plaintiff was subject to and harmed by a particular alleged course of conduct would require precisely the kind of individualized inquiry that precludes class certification.  For example:

| | | |
|---|---|---|
| Determining "whether Defendants initiated state-court collection suits against Class members without possession of proof of indebtedness" | *WOULD REQUIRE* | Individualized inquiry into what specific documents Defendants had in their possession at the time the collection action was initiated for proof of indebtedness as to each individual borrower. |
| Determining "whether Defendants initiated state-court collection suits against Class members without review of proof of indebtedness" | *WOULD REQUIRE* | Individualized inquiry into what specific documents of proof of indebtedness Defendants reviewed prior to filing the collection action(s) against each individual borrower. |
| Determining "whether Defendants' state-court affidavits were false and misleading" | *WOULD REQUIRE* | Identification of specific statements in specific filings that Plaintiffs contend were false and misleading, and individualized inquiry into whether the statements were true as to each borrower. |
| Determining "whether Defendants' attorney affirmations were false and misleading" | *WOULD REQUIRE* | Identification of whether such affirmations were filed and, if so, what specific statements in specific filings Plaintiffs contend were false and misleading, as well as individualized inquiry into whether each statement is true as to each borrower. |
| Determining "whether Defendants' attorneys who signed such affirmations were required by policy not to ask nor review proof of indebtedness" | *WOULD REQUIRE* | Individualized inquiry into what policies were in effect as of the time of each affirmation for each individual borrower and into what each attorney requested and reviewed prior to filing an affirmation for each borrower. |

| | | |
|---|---|---|
| Determining "whether Defendants reported Class members as debtors to credit bureaus without possession or proof of indebtedness" | *WOULD REQUIRE* | Individualized inquiry into when and how Defendants reported a particular borrower as a debtor to credit bureaus, and individualized analysis of what specific documents of proof of indebtedness Defendants had in their possession at the time of reporting. |
| Determining "whether Defendants reported Class members as debtors to credit bureaus without review of proof of indebtedness" | *WOULD REQUIRE* | Individualized inquiry into when and how Defendants reported a particular borrower as a debtor to credit bureaus, and individualized analysis of what specific documents of proof of indebtedness Defendants reviewed before making the reports. |
| Determining "whether Defendants' actions violated" specific laws | *WOULD REQUIRE* | Analyzing the results of the individualized inquiries set out above for each borrower, in the context of the specific elements of the three causes of action asserted in the Complaint. |
| Determining "the nature and scope of appropriate declaratory and/or injunctive relief" | *WOULD REQUIRE* | Analyzing the results of the individualized inquiries set out above for each borrower, in the context of the specific elements of the three causes of action asserted in the Complaint; Determining how and to what degree each borrower was harmed (if they were), and analyzing appropriate relief. |

Plaintiffs do not provide any suggested path to determining the answers to these questions on a class-wide basis. Plaintiffs' weak inference that the mere existence of policies and procedures absolves them of any need to prove the specifics of any particular case is insufficient to demonstrate that all of these individual issues are subject to common proof.

27

2. **Plaintiffs Fail to Offer Any Common Method to Identify Injury or Calculate Damages.**

Plaintiffs' claims for monetary relief are central to their claims. *See, e.g.*, Compl. ¶¶ 275, 281, 285 & Prayer for Relief (ii), (iv) – (v). But, Plaintiffs' Memorandum is noticeably silent as to any proposal for a common method of determining whether and to what degree any individual Plaintiff or putative class member was damaged by the alleged misconduct. Injury is an essential element of Plaintiffs' claims, and cannot be overlooked. *See, e.g.*, *Goshen*, 98 N.Y.2d at 324 (identifying injury as an essential element of a GBL § 349 claim); *Gill v. Dougherty*, 136 N.Y.S.3d 383 (2d Dep't 2020) (holding that Judiciary Law § 487 requires a showing that the plaintiff suffered an injury proximately caused by the attorney's deceit or collusion). Absent any suggestion from Plaintiffs as to how the existence of injury and amount of damages could be calculated on a common or collective basis, without individualized inquiry, the commonality requirement for class certification is not met.

IV. **Plaintiffs Fail to Satisfy the Additional Requirements of Rule 23(b)(2).**

Plaintiffs seek certification of a Rule 23(b)(2) class to pursue injunctive relief. (Mem. At 23–24). There are many reasons this request should be denied.

First, Plaintiffs appear to seek certification of a nationwide class under Rule 23(b)(2). But Plaintiffs' only claim for injunctive relief in the Complaint is under GBL § 349. As discussed in Section II(A) above, a GBL § 349 claim is unavailable anywhere outside New York. Because Plaintiffs' only claim for injunctive relief is only available in New York, there is no legal basis to certify any Rule 23(b)(2) class that includes individuals outside of this State in this case.

Second, Plaintiffs' request for certification of a Rule 23(b)(2) class should be denied in its entirety because the threshold requirements of Rule 23(a) are not met in this case. *See supra* Section III. Plaintiffs' failure to sufficiently demonstrate common issues susceptible to common

proof also renders it impossible for them to show that defendants "acted … on grounds that apply generally to the class, so that final injunctive relief … is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2); *Wal-Mart*, 564 U.S. at 360–61.

Third, certification of a Rule 23(b)(2) class is "only appropriate for class actions where the relief sought is exclusively or predominantly declaratory or injunctive." *Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 16 (2d Cir. 2003). Where the request for injunctive relief is merely incidental, of lower relative importance to the monetary remedies sought, or where each class member would be entitled to an individualized award of monetary damages, certification of a Rule 23(b)(2) class should be denied. *Id*. at 19–20; *Wal-Mart*, 564 U.S. at 360–61. Plaintiffs here expressly request monetary damages to remedy the exact same alleged misconduct. Their Prayer for Relief makes one request for "preliminary injunctive and ancillary relief," two requests for statutory damages, three requests for actual damages, and one request for treble damages. (Complaint at 57). The limited injunctive relief requested by Plaintiffs pales in comparison to their wide-reaching claims for monetary damages. Where, as here, the primary relief sought by Plaintiffs is monetary, certification of a Rule 23(b)(2) class should be denied. *See*, *e.g.*, *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–47 (2d Cir. 2020) ("Such a past harm is of the kind that is commonly redressable at law through the award of damages, which, it should be noted, is what Plaintiffs primarily sought in their complaint.").

Fourth, certification of a class under Rule 23(b)(2) is also only available "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. It is not available "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant," or where "each class member would be entitled to an individualized award of monetary damages." *Id*. at 360–61; *see also Berni*,

964 F.3d at 146. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360–61 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009)); *see also Manual for Complex Litigation* § 21.142 (4th ed. 2004) (explaining that a class is typically certified under Rule 23(b)(2) when "class-wide injunctive or declaratory relief is necessary to redress group injuries, such as infringements on civil rights, and is commonly relied on by litigants seeking institutional reform through injunctive relief"). Courts must be especially vigilant that this requirement is met, because Rule 23(b)(2) classes are mandatory classes and provide no notice or opportunity for class members to opt out. *Wal-Mart*, 564 U.S. at 360–61.

As best as Defendants can tell from Plaintiffs' Complaint and Memorandum, the injunctive relief Plaintiffs wish to pursue through a Rule 23(b)(2) class is an injunction requiring Defendants to stop reporting Plaintiffs' debts to credit bureaus "without possession or review of proof thereof." (Mem. At 24). This, again, is going to require individualized investigation, proof, and application for each class member. Defendants possess, have reviewed, and have produced to Plaintiffs proof of Plaintiffs' debts (Luke Decl. at ¶¶ 5–24, 27–30, 37–41, 48–50, 60–62, 75–78), and Defendants have not reported Plaintiffs' debts to the credit reporting agencies since 2015 (*id*. at ¶¶ 35, 46, 57, 72, 87), so the requested injunctive relief would not even be available to any of the named Plaintiffs.[22] Claims for individualized injunctive relief such as this are not appropriate for Rule 23(b)(2) certification. *See Wal-Mart*, 564 U.S. at 360-61; *Kartman v. State Farm Mut. Auto. Ins.*

---

[22] While Plaintiffs' motion refers to Defendants' credit-reporting, F&G does not engage in credit reporting. Schultz Decl. at ¶ 11 & Ex. 3-S at 105–106. The Hawkins declaration concedes as much. Hawkins Decl. at ¶ 30. Thus, no injunction would be appropriate against F&G.

*Co.*, 634 F.3d 883, 892–94 (7th Cir. 2011) (reversing district court's certification of Rule 23(b)(2) class, where the requested injunction "would not be an appropriate remedy for any single plaintiff, let alone for the class as a whole," and would have required defendants to analyze their interactions with each individual plaintiff or class member); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323, 342 (S.D.N.Y. 2002) ("A Rule 23(b)(2) action cannot resolve individualized issues of fact, nor provide different types of relief required to redress individual injuries. 'A class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant.'") (quoting 5 *Moore's Fed. Prac.* § 23.43(2)(b) at 23–195 (3d ed. 2000)).[23]

Fifth and finally, the Court should decline to certify any Rule 23(b)(2) class in this case because Plaintiffs have not demonstrated they can satisfy the test for injunctive relief. "An injunction requires a showing that: (1) the plaintiffs have suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiffs and defendant; and (4) the public interest would be well served by the injunction." *Kartman*, 634 F.3d at 892–94; *see also Berni*, 964 F.3d at 146–49. Plaintiffs do not seriously attempt to argue, let alone provide evidence of, any of these elements. Plaintiffs do not allege any ongoing harm, let along irreparable harm. The Complaint alleges that Plaintiffs "were injured" and "suffered damages"—in the past tense—and does not identify any alleged misconduct aimed at any Plaintiff after 2018. *See* Complaint ¶ 281. Plaintiffs' proposed Rule 23(b)(2) class, seeking damages for the same misconduct, identifies a February 27, 2018 end

---

[23] Plaintiffs suggest that courts "frequently" certify injunctive classes in FDCPA actions. This is not true. *See*, *e.g.*, *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 197 (E.D.N.Y. 2006) (refusing to certify a Rule 23(b)(2) class in an FDCPA action, noting that courts have found such certification to be inappropriate in FDCPA cases and the court was unaware of any instance in which a Rule 23(b)(2) class was certified in an FDCPA case).

date for the alleged harm.  (Mem. At 10).  Plaintiffs also offer no explanation of why the monetary

damages they are also seeking would be inadequate to remedy their alleged injuries.  Accordingly,

the Court should deny Plaintiffs' request for certification of a Rule 23(b)(2) injunctive relief class.

*See*, *e.g.*, *Berni*, 964 F.3d at 149 ("Where there is no likelihood of future harm, there is no standing

to seek an injunction, and so no possibility of being certified as a Rule 23(b)(2) class.").

## V.       Plaintiffs Fail to Satisfy the Additional Requirements of Rule 23(b)(3).

### A.       Individual Issues Predominate Over Any Potential Generalized Proof.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623 (explaining that

predominance is "a more demanding criterion than the commonality inquiry under Rule 23(a)");

*see also Comcast*, 569 U.S. at 34.  "Class-wide issues predominate if resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252

(2d Cir. 2002).

The sheer number of factual questions that will require individual inquiry make it clear that

common questions, in this case, do not "predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b)(3); *see supra* Section III(C); *Kowalski*, 2012 WL 1097350 at *19

("Because this Court finds that the proposed class cannot meet the commonality requirement, *a*

*fortiori* the proposed class fails the predominance test.").  Accordingly, Plaintiffs' motion for class

certification should be denied.  *See*, *e.g.*, *McKracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 167

(S.D.N.Y. 2008) (denying class certification on predominance grounds where liability depended

on "specific representations made to each plaintiff"); *Marinaccio v. Barnett Banks, Inc.*, 176 F.R.d

104, 107 (S.D.N.Y. 1997) (denying class certification on predominance grounds where claims would require individual analysis of thousands of transactions).

Moreover, Plaintiffs' total failure to propose any damages model whatsoever requires the Court to deny the motion for class certification on predominance grounds.  As other courts have put it: "No damages model, no predominance, no class certification."  *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 48 (S.D.N.Y. 2020) (quoting *Rail Freight I*, 725 F.3d at 253) (denying class certification on predominance grounds, finding that "individual determinations of injury will predominate" over any common issues because injury was "provable only via individualized inquiries keyed to each particular purchaser").

**B.     A Class Action is Not the Superior Method of Adjudicating Plaintiffs' Claims.**

Even if Plaintiffs had met all of the other requirements for class certification—which they have not—certification here would be inappropriate because it is not the superior method of adjudication for Plaintiffs' claims.  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1192 (9th Cir. 2001).  Here, each Plaintiff would need to demonstrate that Defendants did not possess and/or review sufficient documentation of their debt before initiating collection actions against them, and that any misrepresentations regarding possession or review of loan documentation caused Plaintiffs to suffer some injury, and finally the nature and amount of any such injury.  The court would have to conduct a mini-trial for each Plaintiff and class member.  Under these circumstances, Courts routinely find that class certification is not the superior method of adjudication.  *See*, *e.g.*, *Brown v. Fed. Express Corp.*,

249 F.R.D. 580, 587–88 (C.D. Cal. 2008) (denying class certification where the court would be "mired in over 5000 mini-trials" regarding individual issues).

Class certification is also not the superior method of adjudication here for public policy reasons. Where Plaintiffs have technical complaints about whether civil procedures were properly followed in actions against them—such as Plaintiffs' complaints here, which center on whether documents were reviewed by the correct people at the right time—Plaintiffs should be encouraged to raise those issues in their individual collection actions instead of declining to participate in the collection action and allowing default judgment to be entered against them, only to ask the courts to take up the technical procedural complaints years later *en masse*. To be clear, Plaintiffs here unequivocally owed the debts that were the subject of their collection actions, or will require min-trials to establish that they did not, and Defendants can show they unequivocally had the proper documentation in their possession. The evidence shows that NCO, TSI, and F&G reviewed the proper documentation of indebtedness at the proper time, and Plaintiffs—years after their collection actions—claim they did not. Schultz Decl. at ¶ 11 & Ex. 3-S at 47–51, 60–61. These types of disputes should be raised and dealt within the individual state court actions in which they arise.[24] Aggregation of these kinds of he-said, she-said complaints about single words in affidavits is not efficient or desirable for any party, or for the courts.

### C.   A Class Action is Not Suitable Where Plaintiffs Claims Are Predicated Upon Equitable Tolling.

The elements of equitable tolling must be established by the class in addition to the alleged violations of state and federal law. *Minter v. Wells Fargo Bank, N.A.,* No. CIV.A. WMN-07-3442,

---

[24] In fact, some putative class members have already done this by asserting defenses or counterclaims (including defenses or counterclaims based on the same legal theories asserted by Plaintiffs) in their collection actions. *See* Schultz Decl. at ¶ 3 & Ex. 3-CC. This creates yet another issue that will require individualized inquiry.

2013 WL 1795564, at *3 (D. Md. Apr. 26, 2013).   Where plaintiffs' claims rely upon equitable tolling to save their claims, predominance and superiority fail.   *See In re Cmty. Bank of N. Virginia*, 622 F.3d at 293–94 (internal citations omitted) ("[equitable tolling] presents an individual question of law and fact that could predominate over common questions under Rule 23(b)(3)…or challenge the predominance requirement in light of the presence of idiosyncratic statute-of-limitations issues among the laws of various states in a nationwide class action.").

Here, Plaintiffs cannot establish entitlement to equitable tolling on a class-wide basis given the individualized inquiry necessary to determine due diligence or whether a class member was aware of his or her potential claims before the limitations.   These individualized inquiries will require numerous mini-trials on each putative class members' subjective state of mind and knowledge of their student loan, rendering the case unmanageable as a class action.   For example, and despite years of claims to the contrary, the evidence in this case confirms that each Plaintiff was aware that a Trust Defendant owned their debt before the collection actions were filed based upon numerous communications with AES, Plaintiffs' bankruptcy filings, and the credit reporting of the accounts.   Moreover, each of the Plaintiffs, save Tabar (allegedly), was served with the collection lawsuits and the default judgment motions and affidavits.   The Plaintiffs were all aware of the collection actions, and collection on the accounts, and they all did nothing.   They were not ignorant of a cause of action due to any concealment; if they were ignorant it was because they chose to be.

Individualized inquiries into each class member's diligence render a case unmanageable. *Minter*, 2013 WL 1795564 at *4 ("The problem is not that the circumstances of class members' transactions may create a jury question; it is that it only creates that jury question as to some class members and not others.  Managing a class action where some class members had a duty to inquire

while others did not, presents substantial logistical and mental challenges for the Court and jury which warrant decertification in this already complicated case."); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 104 (2d Cir. 2015) (Jacobs, J., dissenting) (identifying that equitable tolling considerations present a commonality problem).

Here, the District Court's Order reflects the very issue presented herein which defeat predominance and superiority – which is that an individualized inquiry was required to determine whether each plaintiffs' claims were tolled both under the FDCPA and GBL.  As Plaintiffs' motion suggests, their claims are predicated upon disparate alleged acts by different entities,[25] yet they suggest that their claims are subject to common treatment.  (*See* ECF 316 at 13).  For example, the Seamans' FDCPA original creditor representation claims were dismissed given that nothing was concealed from them.  *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 697 (S.D.N.Y. 2019) ("The Court concludes that the requirements of equitable tolling are not satisfied as to the "original creditor" misrepresentation. While it is not clear that the "original creditor" misrepresentation would or should be apparent to a reasonable borrower, the Seaman Plaintiffs have not alleged that Defendants' misrepresentation "concealed" the Seaman Plaintiffs' cause of action, nor have the Seaman Plaintiffs demonstrated that they acted diligently with respect to this claim.").  As such, where Plaintiffs' claims are all predicated upon equitable tolling (excluding the Seamans GBL claims) predominance and superiority fail.[26]

### D.    Plaintiffs' Proposed FDCPA Nationwide Class is Unmanageable.

Plaintiffs ask this Court to certify a class of people who would not even have claims in their respective states.  As noted in *Vincent*, where a variety of factual circumstances are present

---

[25] Noting 12 questions of law and fact supposedly common to all class members.

[26] Plaintiffs also do not address that each state has its own statute of limitations for claims brought under those state's laws.

that would make a class action trial "unmanageable," a court can deny certification.  *Vincent*, 304 F.R.D. at 462; *see also LaRocque ex rel. Spang v. TRS Recovery Servs., Inc.,* 285 F.R.D. 139, 157–58 (D. Me. 2012) (noting class action trial would be unmanageable where court would need to review files for 261 class members to determine what documentation was presented and in what respects it might have been inaccurate").

While the District Court held in its Order that representations as to personal knowledge and review of proof of indebtedness are material under the FDCPA (ECF 109 at 38–49), the vast majority of courts in other circuits, which would include plaintiffs purported sub-classes, have found otherwise and have found no FDCPA violation where there is no false information in the affidavit and was merely, allegedly, unsubstantiated by personal knowledge.[27] This is reflected in *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015) where the plaintiff alleged a lawyer filed an affidavit with a state court complaint that was not based upon personal knowledge.  The plaintiff alleged that act was a violation of Section 1692e of the FDCPA and the 8th Circuit found otherwise in noting the distinction between an affidavit which contained false information and one which was merely unsubstantiated by personal knowledge.  *Id.* at 437; *see also Summer v. Sec. Credit Servs., LLC*, 335 Ga. App. 197, 201, 779 S.E.2d 124, 128 (2015) ("In assessing FDCPA liability, courts are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a customer's ability to intelligently choose his or her response….Therefore, the Summers FDCPA claim based on the filing of the subject affidavits fails."); *Haworth v. Midland Credit Mgmt., Inc.*, No. 8:19-CV-46, 2019 WL 7161230, at *4 (D. Neb. Oct. 17, 2019) ("Other courts have agreed that an affidavit is

---

[27] Plaintiffs here have provided no evidence that any information in any of the affidavits was false, and simply contend they were made without personal knowledge.

not false, misleading, deceptive, unfair, or unconscionable for FDCPA purposes just because it

lacks personal knowledge.") (collecting cases across circuits); *Clark v. Main St. Acquisition Corp.,*

553 F. App'x 510, 516 (6th Cir. 2014) (same).

    As such, plaintiffs proposed "National Class" or 50 state subclasses, is unmanageable

because plaintiffs' alleged FDCPA claims are not actionable in other circuits.

## VI.   Plaintiffs' Alternative Request for Certification of a "Liability-Only" Class is Undeveloped, and Would Not Significantly Advance Resolution of Their Claims.

    At the end of their Memorandum, Plaintiffs make a two-sentence request for certification

of "a liability class." (Mem. at 25). Plaintiffs do not develop this argument, to explain what the

bounds of such a class would be or how it could satisfy the requirements of Rule 23. For this

reason alone, the request should be denied.

    To the extent the Court is willing to substantively consider Plaintiffs' cursory request, it

should still be denied. Rule 23(c)(4) permits certification of classes "with respect to particular

issues," "when appropriate." Fed. R. Civ. P. 23(c)(4). Issue certification is only available where

Plaintiffs have met the requirements of Rule 23(a) with respect to the issues to be certified (here,

apparently, "liability"). Plaintiffs have not done that here. *See supra* Section III.[28]

    Even where the requirements of Rule 23(a) have been met, courts will deny Rule 23(c)(4)

issue certification where it does not "significantly advance the resolution of the underlying case,

thereby achieving judicial economy and efficiency." *D.C., by and through Garter v. Cty. Of San*

---

[28] Currently, the Second Circuit permits Rule 23(c)(4) certification in the absence of predominance. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (permitting issue certification "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement"). But, there is a substantial circuit split on this issue that remains unresolved. *See, e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010).

*Diego*, 783 Fed. Appx. 766, 767–68 (9th Cir. Nov. 5, 2019) quotations omitted) (affirming denial of issue certification where individual issues regarding injury would "potentially require tens of thousands of trials" even if common liability issues were resolved on a class basis); *see also Dungan v. Academy at Ivy Ridge*, 344 Fed. Appx. 645, 647–48 (2d Cir. Aug. 20, 2009) (affirming denial of issue certification where "the significance of individualized issues of reliance, causation, and damages … meant that issue certification would not meaningfully reduce the range of issues in dispute and promote judicial economy") (quotations omitted).  Certification of a "liability" class here would still leave each Plaintiff or class member to separately advance and prove that they suffered any damages at all as a result of the alleged conduct and, if so, how those damages should be calculated.  The dollar amounts at issue are likely very small, given that the only damages alleged are that some Plaintiffs had to repay money they already owed and that some Plaintiffs may have experienced what they view as inappropriate reports to credit bureaus reflecting their debts.  Under these circumstances, the value of certifying a "liability" class that would not address damages in any way is far outweighed by the cost of litigating any common issues (to the extent there even are any common issues) on a class-wide basis.

For these reasons, the Court should decline Plaintiffs' alternative request for certification of a Rule 23(c)(4) issue class.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny

Plaintiffs' Motion for Class Certification in its entirety.


Dated: New York, New York
August 12, 2021

By: */s/ Gregory T. Casamento*
Gregory T. Casamento
R. James DeRose, III
LOCKE LORD LLP
Brookfield Place, 20th Floor
200 Vesey Street
New York, New York 10281
(212) 415-8600
gcasamento@lockelord.com
rderose@lockelord.com

J. Matthew Goodin
LOCKE LORD LLP
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
(312) 443-0700
jmgoodin@lockelord.com

*Attorneys for Defendants National Collegiate*
*Student Loan Trust 2004-2, National Collegiate*
*Student Loan Trust 2006-4, National Collegiate*
*Student Loan Trust 2007-2, and National Collegiate*
*Student Loan Trust 2007-3*


By: */s/ James K. Schultz*
James K. Schultz
SESSIONS, ISRAEL & SHARTLE LLC
1545 Hotel Circle South, Suite 150
San Diego, California 92108
(619) 296-2018
jschultz@sessions.legal

Bryan Shartle
SESSIONS, ISRAEL & SHARTLE LLC
3850 N. Causeway Blvd., Ste. 200

Metairie, Louisiana 70002
(504) 846-7917
bshartle@sessions.legal

Morgan Ian Marcus
SESSIONS, ISRAEL & SHARTLE LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603
(312) 578-0990
mmarcus@sessions.legal

*Attorneys for Defendants Transworld Systems, Inc.
and EGS Financial Care, Inc.*

By: /s/ Carol A. Lastorino
      Carol A. Lastorino
      Amanda Rae Griner
      RIVKIN RADLER LLP
      926 Rexcorp Plaza
      Uniondale, New Yord 11556
      (516) 357-3101
      carol.lastorino@rivkin.com
      Amanda.gruman@rivkin.com

*Attorneys for Defendant Forster & Garbus LLP*

41

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory T. Casamento, an attorney, hereby certify that on the 12th day of August, 2021, I served a true and correct copy of the foregoing *Defendants' Opposition to Plaintiffs' Motion for Class Certification* via ECF on all parties entitled to notice.


<u>/s/ Gregory T. Casamento</u>
Gregory T. Casamento