UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
MUTINTA MICHELO, KATHERINE SEAMAN,    )
MARY RE SEAMAN, and SANDRA TABAR,    )
individually and on behalf of all others similarly situated, )
    )
                        Plaintiffs,    )
    )
       v.    )
    )
NATIONAL COLLEGIATE STUDENT LOAN    )      No. 18-cv-1781
TRUST 2007-2; NATIONAL COLLEGIATE    )
STUDENT LOAN TRUST 2007-3;    )
TRANSWORLD SYSTEMS, INC., in its own right and )
as successor to NCO FINANCIAL SYSTEMS, INC.; )
EGS FINANCIAL CARE INC., formerly known as    )
NCO FINANCIAL SYSTEMS, INC.; and    )
FORSTER & GARBUS LLP,    )
    )
                     Defendants.    )
_____)
CHRISTINA BIFULCO, FRANCIS BUTRY,    )
and CORI FRAUENHOFER, individually and on    )
behalf of all others similarly situated,    )
    )
                        Plaintiffs,    )
    )
       v.    )
    )
NATIONAL COLLEGIATE STUDENT LOAN    )      No. 18-cv-7692
TRUST 2004-2; NATIONAL COLLEGIATE    )
STUDENT LOAN TRUST 2006-4;    )
TRANSWORLD SYSTEMS, INC., in its own right and )
as successor to NCO FINANCIAL SYSTEMS, INC.; )
EGS FINANCIAL CARE INC., formerly known as    )
NCO FINANCIAL SYSTEMS, INC.; and    )
FORSTER & GARBUS LLP,    )      **FILED VIA ECF**
    )
                     Defendants.    )
_____)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

I. ARGUMENT ................................................................................................................ 4

    A.    Defendants' Arguments Have Been Rejected By *Sykes* ............................................. 4

    B.    Plaintiffs Satisfy Rule 23(b)(3), As Class Resolution Is Superior ............................. 9

    C.    A National Class Should Be Certified........................................................................ 11

    D.    A Rule 23(b)(2) Class For Injunctive Relief Should Be Certified ............................ 13

    E.    Defendants' Remaining Arguments All Fail............................................................... 14

II.  CONCLUSION............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,

    521 U.S. 591 (1997)..................................................................................................... 6

*Atkinson v. ForceField Energy Inc. (In re ForceField Energy Inc. Sec. Litig.)*,

    Nos. 15-cv-3020, -3141 & -3729, 2015 U.S. Dist. LEXIS 95614 (S.D.N.Y. July 22, 2015) .... 6

*Baker v. G.C. Servs. Corp.*,

    677 F.2d 775 (9th Cir. 1982) ..................................................................................... 3

*Bartell v. Nat'l Collegiate Student Loan Trust 2005-3*,

    No. 14-cv-04238, 2015 U.S. Dist. LEXIS 54921 (N.D. Cal. Apr. 27, 2015)............................ 7

*Berni v. Barilla S.p.A.*,

    964 F.3d 141 (2d Cir. 2020) .............................................................................. 13, 14

*Brown v. Fed. Express Corp.*,

    249 F.R.D. 580 (C.D. Cal. 2008)............................................................................... 14

*Butler v. Sears, Roebuck & Co.*,

    727 F.3d 796 (7th Cir. 2013) .................................................................................. 10

*Clark v. Main St. Acquisition Corp.*,

    553 F. App'x 510 (6th Cir. 2014) ............................................................................ 11

*Fangman v. Genuine Title, LLC*,

    No. 14-cv-81, 2016 U.S. Dist. LEXIS 154582 (D. Md. Nov. 8, 2016) ..................................... 9

*Frank v. United Airlines, Inc.*,

    216 F.3d 845 (9th Cir. 2000) .................................................................................. 11

*Haworth v. Midland Credit Mgmt.*, Inc.,

    No. 8:19-CV-46, 2019 WL 7161230 (D. Neb. Oct. 17, 2019)................................................. 11

*Ho v. Dowell (In re Ho)*,

    274 B.R. 867 (B.A.P. 9th Cir. 2002) ......................................................................... 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,

    No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) ..................... 15

*In re Aluminum Warehousing Antitrust Litig.*,

    336 F.R.D. 5 (S.D.N.Y. 2020) ............................................................................. 10

*In re Cmty. Bank of N. Va.*,

    795 F.3d 380 (3d Cir. 2015) ............................................................................... 10

*In re Literary Works in Elec. Databases Copyright Litig.*,

    654 F.3d 242 (2d Cir. 2011) ................................................................................. 5

*Janson v. Katharyn B. Davis, LLC*,

    806 F.3d 435 (8th Cir. 2015) ............................................................................... 11

*Laurens v. Volvo Car United States*,

    No. 2:18-cv-08798, 2020 U.S. Dist. LEXIS 256702 (D.N.J. Dec. 8, 2020) ............................ 9

*Minter v. Wells Fargo*,

    No. 07-cv-3442, 2013 U.S. Dist. LEXIS 59965 (D. Md. Apr. 26, 2013)................................ 10

*Mitchell v. Bigelow (In re Mitchell)*,

    418 B.R. 282 (B.A.P. 8th Cir. 2009) ....................................................................... 8

*New Hampshire v. Maine*,

    532 U.S. 742 (2001).......................................................................................... 4

*Page v. Forster & Garbus, LLP*,

    No. 18-cv-3611, 2019 U.TS. Dist. LEXIS 101832 (E.D.N.Y. June 17, 2019) ........................ 9

*Polk v. DelGatto, Inc*,

    No. 21-cv-129, 2021 U.S. Dist. LEXIS 137764 (S.D.N.Y. July 23, 2021)............................. 13

*Ramirez v. Riverbay Corp.*,

    39 F. Supp. 3d 354 (S.D.N.Y. 2014) ....................................................................... 10

*Savino v. Computer Credit, Inc.*,

    173 F.R.D. 346 (E.D.N.Y. 1997)............................................................................. 9

*Swaney v. Regions Bank*,

    No. 13-cv-544, 2020 U.S. Dist. LEXIS 101215 (N.D. Ala. June 9, 2020) ............................ 12

*Sykes v. Mel Harris & Assocs. LLC*,

    780 F.3d 70 (2d Cir. 2015) ................................................................................ passim

*Sykes v. Mel Harris & Assocs. LLC*,

    285 F.R.D. 279 (S.D.N.Y. 2012) ........................................................................ passim

*Sykes v. Mel Harris & Assocs. LLC*,

    No. 09-cv-8486, 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016) .............................. 5

*Torres v. Toback, Bernstein, Reiss LLP*,

    No. 11-cv-1368, 2014 U.S. Dist. LEXIS 36925 (E.D.N.Y. Mar. 29, 2014) ........................... 12

*Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*,

    No. 09-cv-1316, 2011 U.S. Dist. LEXIS 161250 (C.D. Cal. Apr. 4, 2011) ............................ 15

*Vill. on Canon v. Bankers Tr. Co.*,

    No. 95 Civ. 3706 (JGK), 1997 U.S. Dist. LEXIS 1112 (S.D.N.Y. Feb. 3, 1997) ..................... 7

*Vincent v. Money Store*,

    304 F.R.D. 446 (S.D.N.Y. 2015) ...................................................................... 6, 7, 8

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y.*,

    331 F.R.D. 279 (S.D.N.Y. 2019) ................................................................................ 7

**Statutes**

15 U.S.C. § 1640(a)(2)(B) ........................................................................................ 12

15 U.S.C. § 1692 et seq. ..................................................................................... passim

N.Y. Gen. Bus. Law § 349 ................................................................................. 1, 5, 13

N.Y. Jud. Law § 487 ............................................................................................. 1, 6

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

Fed. R. Evid. 802 ................................................................................................... 8

Named Plaintiffs,[1] individually and on behalf of the class of all others similarly situated (the "Class") (together, "Plaintiffs"), respectfully submit this reply memorandum of law in further support of their motion for Rule 23 class certification.

Defendants' Opposition fails, because it fails to distinguish the controlling law of this Circuit, instead not mentioning it at all. *Sykes v. Mel Harris & Assocs. LLC*, 780 F.3d 70, 84–87 (2d Cir. 2015) ("*Sykes III*"), *aff'g* 285 F.R.D. 279, 290 (S.D.N.Y. 2012) ("*Sykes II*") (Chin, J.) (awarding class certification), is the controlling law over facts like these. (Pls.' Br. at 12, 14, 16, 19, 21-23 (discussion of *Sykes II*); *id.* at 8, 9, 22 (discussion of *Sykes III*)).

The allegations in this case are nearly identical to those in *Sykes*. Circuit Judge Chin's entire description of *Sykes* precisely describes the case at bar. *Sykes II*, 285 F.R.D. at 282–83:

> In this case, [six] plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a scheme to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court. [*Compare with Michelo-Bifulco* Consol. Compl.,[2] ¶¶ 1–67, 252–265 (alleging a scheme by a debt-buying company, a law firm, a service company, and others engaged in a scheme to fraudulently obtain default judgments against them and more than 90,000 other consumers in state courts.] Defendants allegedly acted in concert to defraud these consumers in violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., . . . New York General Business Law ("GBL") § 349, and New York Judiciary Law ("NYJL") § 487. [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 266–285 (alleging claims under the FDCPA, GBL § 349, and NYJL § 487).] Plaintiffs seek injunctive relief, declaratory relief, and damages on behalf of themselves and other similarly situated

---

[1] "Named Plaintiffs" as used herein collectively refers to Katherine Seaman, Mary Re Seaman, Sandra Tabar, Christina Bifulco, Francis Butry, and Cori Frauenhofer. "Defendants" collectively refers to: National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2007-3 (together, the "Trusts" or "Trust Defendants"); Transworld Systems, Inc. ("Transworld"), in its own right and as successor to NCO Financial Systems, Inc. ("NCO"); EGS Financial Care Inc. ("EGS"), formerly known as NCO Financial Systems, Inc. (together, "TSI-NCO"); and Forster & Garbus LLP ("Forster"). Plaintiffs' certification motion papers appear on the lead docket (18-cv-1781) at ECF Nos. 312 (motion), 314 & 317 (memorandum in support ("Pls.' Br.")), and 315 (declaration in support) ("First Hawkins Decl."). Defendants' Opposition ("Opp.") appears on the lead docket at ECF No. 323, and their declarations at ECF Nos. 325–331.

[2] References herein to "*Michelo-Bifulco* Consol. Compl." are to the operative Consolidated Class Action Complaint herein, filed at ECF No. 124 on the lead docket.

individuals. They move for class certification. [*Compare with Michelo-Bifulco* Consol. Compl., "Prayer for Relief" at Pts. i–vii (seeking injunctive relief, declaratory relief, and damages)].

The motion is granted. The record before the Court establishes that defendants obtained tens of thousands of default judgments in consumer debt actions, based on thousands of affidavits attesting to the merits of the action that were generated en masse by sophisticated computer programs and signed by a law firm employee who did not read the vast majority of them and claimed to, but apparently did not, have personal knowledge of the facts to which he was attesting. [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 13–14, 106, 109, 140, 143, 176, 179, 208, 211, 237, 240 (Defendants obtained thousands of default judgments in consumer debt actions by submitting affidavits signed by persons without personal knowledge of the alleged debts)]. . . . As discussed more fully below, defendants' unitary course of conduct purportedly to obtain default judgments in a fraudulent manner presents common questions of law and fact that can be resolved most efficiently on a class-wide basis.

The default judgment affidavits submitted by the *Sykes* defendants in state court were alleged to be fraudulent for the exact same reasons as alleged by Plaintiffs here. *Sykes II*, 285 F.R.D. at 285:

> [The affiant] uses the database and software programs to create "judgment packet[s]" that include an affidavit of merit and are ultimately used to obtain a default judgment in the debt collection action. [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 8, 17, 44, 63, 107, 141, 177, 209, 238 (computer generated default judgment affidavits)]. The documents are generated using "templates" with an "open standard format." [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 8, 17, 44, 63, 107, 141, 177, 209, 238 (same)] . . . .

> [The affiant] produces the affidavits of merit for signature in batches of up to 50 at a time. [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 262 (Defendants' Affiants did as many as 40 in a day)]. He "quality check[s]" [by] ensuring that information printed on the affidavit matches the information stored in the Debt Master database. (*Compare with* Consol. Compl., ¶¶ 107, 141, 177, 209, 238 (Defendants' Affiants' review consists of checking computer screen)]. In any given week, [affiant] signs as many as 350 affidavits of merit. [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 262].

> Hence, [the affiant] signs hundreds of affidavits a week, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing. [*Compare with Michelo-Bifulco* Consol. Compl., ¶¶ 13–14, 106–107, 109, 140–141, 143, 176–177, 179, 208–209, 211, 237–238, 240, 259, 261–262 (Defendants' Affiants robo-sign hundreds of affidavits a week, purportedly based on personal knowledge, and

<u>purporting to certify that the action has merit, but without actually having reviewed documents establishing the indebtedness alleged)</u>].

Because Defendants cannot distinguish *Sykes II* and *III*, their Opposition fails to mention them <u>at all</u>.  The result is pages of spilled ink.  For example, Defendants spend nearly half their brief bootstrapping the argument that a class cannot be certified under these conditions because (they say) some individuals may have owed the alleged debts.  (Opp. at 2–5, 10–12, 19–25, 32–34).  However, this Court already recognized Plaintiffs' claims go beyond whether debts are "real."  Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 707 n.23; *see also Sykes III*, 780 F.3d 70, 83 ("'Liability under the FDCPA can be established irrespective of whether the presumed debtor owes the debt in question.'" (quoting *Sykes II*, 285 F.R.D. at 292)) (also citing *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.")).

In any event, Defendants are again wrong on the merits.  The documents that they have submitted to demonstrate chain of title fail to do so, because they lack the necessary contractual "schedules" that would identify ownership of individual debts.  The Trusts' owners-in-interest admit as such in allegations they made in Delaware Chancery Court; they assert that TSI-NCO tortiously exposed the Trusts to losses by prosecuting sham suits in state court, despite knowing that "record-keeping failures" meant documents that might show chain of title were absent or negligently handled.  The Trusts are estopped from now arguing otherwise.

All Defendants' frauds were Class-wide and are provable by common evidence.  Certification should be granted.

I.     **ARGUMENT**

A. **Defendants' Arguments Have Been Rejected By _Sykes_**

1. <u>_Class Members Were Defrauded In The Same Way Per Defendants' Policies_</u>

Defendants Rule 23(a) arguments ignore that Plaintiffs' allegations concerning Defendants' false affidavits mirror those approved of in _Sykes III_.  _Compare_ 780 F.3d at 85 (the _Sykes'_ plaintiffs' "contention that form statements made in the affidavits of merit, that the affiant is 'personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to' the default judgment action, was uniformly false, because [the affiant] . . . has not reviewed, nor do defendants actually possess, documents relevant to the underlying debt."), _with Michelo-Bifulco_ Consol. Compl., ¶¶ 13–14, 106–107, 109, 140–141, 143, 176–177, 179, 208–209, 211, 237–238, 240, 259, 261–262 (Defendants' Affiants attested to review of documentation demonstrating ownership of a debt when they had not).

Even if Plaintiffs were required to show by common evidence that Defendants lack proof of indebtedness, they could do so.  The Trusts' owners have <u>admitted</u> in Delaware Chancery Court, that the Trusts do not possess valid "schedules" listing the individual loans assigned to them.  _New Hampshire v. Maine_, 532 U.S. 742, 750–51 (2001) (Judicial estoppel must be applied where two factual positions are maintained by the same party, "prohibiting parties from deliberately changing positions according to the exigencies of the moment."); _see_ ¶¶ 3–5.  Indeed, the very documents that Defendants submit here concerning chain of title, only confirm the Trusts allegations in Delaware: the documents here are missing the necessary Schedules to prove they own individual

debts.  (¶¶ 6–24).[3]  The record here simply does not support Defendants' assertions that they can

prove each Class member's alleged debt is "real."  (¶¶ 6–34).[4]

      2.   *Class Members' Claims Do Not Conflict*

      Defendants argument concerning imaginary conflicts between Class members, (Opp. at

17–18), is contradicted by *Sykes v. Mel Harris & Assocs., LLC*, No. 09-cv-8486, 2016 U.S. Dist.

LEXIS 74566, at *44–46 (S.D.N.Y. May 24, 2016) ("*Sykes V*"), which certified a class whose

members had a mix of FDCPA, GBL, and RICO claims arising from individual debt-collection

circumstances.[5]

      Defendants' reliance on *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d

242, 254 (2d Cir. 2011), is unavailing.  (Opp. at 17–18).  There, the plaintiffs sought to certify a

class including different types of copyright claims.  The court found that those class members with

statutory damages claims would be in conflict with those without statutory damage claims.  Here,

just as in *Sykes,* all Class members qualify for statutory damages under the FDCPA and the GBL,

---

[3] References herein to "¶¶ __" are to the attached Declaration of Asher Hawkins that is submitted in support of this Reply.  References to "First Hawkins Decl. ¶¶ __" are to the declaration submitted in support of Plaintiffs' principal brief (ECF No. 315 in Case No. 18-cv-1781).

[4] Similarly, Defendants' written policies allow Plaintiffs to establish through common proof—just a few pages of business records—that <u>each</u> Class member suffered the <u>same</u> fraudulent conduct, every time a state-court suit benefiting a Trust was filed.  Specifically, TSI-NCO's policies governing such suits prohibited the Trusts' Attorneys and Affiants from requesting and/or reviewing documents establishing an alleged loan's (1) chain of assignment and (2) terms and conditions.  (¶¶ 35–37; *see* First Hawkins Decl. ¶¶ 11, 23–24).  Despite being ignorant of the ownership, true amount, and other essential facts of the debt being alleged, these employees were nevertheless required to sign court filings swearing the opposite.

[5] Defendants' argument appears to be based on a mischaracterization of the Court's Rule 12 decision.  They incorrectly claim that decision left two Named Plaintiffs without FDCPA claims.  (*Id.* (purporting to chart live versus dismissed claims)).  In fact, this Court held <u>all</u> Named Plaintiffs have live FDCPA claims.  Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 696–99.  Consistent with the Class definition, all Named Plaintiffs have FDCPA claims alleging Defendants pursued state-court judgments without possession and review of proof of indebtedness.  *Id.* at 697.  Defendants are wrong that the FDCPA claims of Katherine and Mary Re Seaman were dismissed—the Court merely held these Plaintiffs (and only they) do not qualify for equitable tolling to the extent they assert an FDCPA violation for the false statement in the state-court complaint that the Trust is an "original creditor." *Id.* at 697.  That violation is but one aspect of Defendants' overall scheme.

while bringing a mix of claims under the FDCPA, GBL, and NYJL § 487. *Compare Sykes II*, 285 F.R.D. at 282–83, *with Michelo-Bifulco* Consol. Compl., "Prayer for Relief" at Pts. i–vii.[6]

    3.  <u>Class Members' Claims Are Not Subject To Unique Defenses Barring Certification</u>

There are no unique defenses barring certification, as Defendants argue. (Opp. at 19–24). They contend that identifying when particular debt-collection events occurred against each Class member will be necessary for statute-of-limitations reasons. This argument fails because the Court has already found that no Class member could have timely learned of Defendants' fraudulent practices. Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 698. Defendants fail to explain how Plaintiffs here would be subject to more unique defenses than the plaintiffs in *Sykes III*.[7]

    a)  <u>The Claims Concerning Credit-Reporting Are Timely</u>

Defendants argue that they ceased credit-reporting against Named Plaintiffs in connection with the state-court actions several years before this case began, so any allegation pertaining to credit-reporting is time-barred. (Opp. at 20–21). This argument is contradicted by the law of this case, as the Court held at the Rule 12 stage that Named Plaintiffs could not have known of Defendants' self-concealing fraud at the time it occurred. Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 694, 697–98 (tolling claims that Plaintiffs could not have discovered until they learned Defendants' business practices were fraudulent).

---

[6] Even if Defendants' assertion of intra-class conflict had basis, this would not violate Rule 23(a). Courts regularly certify classes where (unlike here) there is palpable conflict between class members' differing claims. *E.g.*, *Atkinson v. ForceField Energy Inc. (In re ForceField Energy Inc. Sec. Litig.)*, Nos. 15-cv-3020, -3141 & -3729, 2015 U.S. Dist. LEXIS 95614, at *15–19 (S.D.N.Y. July 22, 2015) (Buchwald, J.) (certifying class of investors where named plaintiffs had equity-based claims but also represented note-holders with differing claims on liability and damages) (distinguishing *Literary Works*); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 617–26 (1997) (cautioning against decertification if there is even minimal alignment of interest between class's different groups), *cited with approval in Sykes III*, 780 F.3d at 93.

[7] *See Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015) (Koeltl, J.) (cited by Opp. at 20–21) (stressing that "the unique defense rule is not rigidly applied in this Circuit." (quotation omitted)).

The evidence here shows TSI-NCO contacted the credit bureaus to identify each Class member as the subject of a debt-collection suit, within days of each suit's commencement in state court. (¶¶ 38–39; *see* First Hawkins Decl. ¶ 30). Defendants' policy required this be done without confirming who owned the alleged debt or its true amount. (¶¶ 6–38). Even if Class members saw Defendants' credit-reporting at the time it occurred, this would not have caused them to suspect the fraud behind this debt-collection event. Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 697–98.[8]

Finally, Defendants' purported timeliness defense concerning credit reporting would not violate Rule 23(a), even if it had merit. The purpose of the "unique defense rule" is to ensure that a class is not comprised of individuals who lack a common connection. Courts refuse to apply the rule where "there [is] no serious dispute that [all] Plaintiffs" were subject to the same harm—here, credit reporting in connection with the collection suits. *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y.*, 331 F.R.D. 279, 298 (S.D.N.Y. 2019) (Seibel, J.) ("[T]he unique defense rule is designed to protect the class, not shield defendants from a potentially meritorious suit).

  b) <u>There Is No Judicial Estoppel Against Plaintiffs Who Went Through Bankruptcy</u>

Defendants' arguments concerning bankruptcy has no basis in the law. (Opp. at 21–23).[9] Bankruptcy law requires that a Schedule F include all entities who may <u>potentially</u> exert claims as

---

[8] Defendants' credit reporting was part of their fraudulent concealment, because they reported the creditor as "National Collegiate Trust," concealing the number identifying which Trust was asserted as the owner in state court. (Declaration of Bradley Luke in Support of Defendants' Opposition ("Luke Decl.") (ECF No. 323), at ¶¶ 35, 46, 57, 72, 87). Such misidentification would have "frustrate[d]" Class members' ability to timely understand what debts they were accused of owing, and in connection with which state-court collection suits. *See Bartell v. Nat'l Collegiate Student Loan Trust 2005-3*, No. 14-cv-04238, 2015 U.S. Dist. LEXIS 54921, at *15–16 (N.D. Cal. Apr. 27, 2015). The evidence of concealment here distinguishes this case from Defendants' cited case, which involves no allegations of fraudulent concealment at all. The *Vincent* court emphasized that those plaintiffs would be viable if (as here) the defendants had taken steps to conceal their fraud. *See Vincent*, 304 F.R.D. at 459 (cited by Opp. at 20–21).

[9] Defendants' own authority holds that judicial estoppel via bankruptcy applies <u>only</u> when a bankruptcy filer accesses unlisted assets for personal benefit post-bankruptcy. *Vill. on Canon v. Bankers Tr. Co.*, No. 95 Civ. 3706 (JGK), 1997 U.S. Dist. LEXIS 1112, at *9–11 (S.D.N.Y. Feb. 3, 1997) (Koeltl, J.) (cited by

creditors whether their claim is valid or not.  It is black letter bankruptcy law that Schedule Fs are not admissions of liability.  *Mitchell v. Bigelow (In re Mitchell)*, 418 B.R. 282, 288–89 (B.A.P. 8th Cir. 2009) ("[I]t is inappropriate for the debtor to make decisions about whether or not there is any merit to the creditor's claim.  It is incumbent upon the debtor to list each and every entity which has or may assert a claim against her.").[10]  Plaintiffs only learned about the fraud <u>after</u> the bankruptcy.[11]

### c)   There Are No Credibility Issues With Any Named Plaintiff

Defendants incorrectly assert that Named Plaintiffs lack "credibility," and so are inadequate representatives, based on hearsay from Nonparty AES (aka "PHEAA").  (Opp. at 23–24).  Defendants' declarant, a TSI-NCO employee, offers no reason why he should be allowed to offer these hearsay statements by AES into evidence.  Fed. R. Evid. 802 (prohibiting hearsay).[12]

Even if considered, the hearsay documents do not support Defendants' characterization. Defendants assert that "AES provided notice to each Plaintiff" of their indebtedness in a series of letters.  (Opp. at 23).  This is not reflected in the documents Defendants have submitted.  If anything, they show that AES sent to Plaintiffs letters that (1) failed to provide notice of a debt being assigned from an originating bank, and (2) repeatedly demanded payment for a debt without identifying who owned the debt.  Luke Decl. ¶¶ 30, 41, 50, 62, 78, & Exs. 1-R, 1-Y, 1-EE, 1-LL,

---

Opp. at 22).  Here, in contrast, these Plaintiffs listed potential <u>creditors</u> in bankruptcy, and have gained no benefit.

[10]  *See, e.g.*, *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 874–75 (B.A.P. 9th Cir. 2002) ("Bankruptcy schedules are supposed to be over-inclusive.  Every potential creditor should be listed in order to have notice of the bankruptcy and an opportunity to protect itself. . . .  [C]omplete and candid schedules [by bankruptcy filers] are vital to a bankruptcy system, which relies on self-reporting.").

[11]  *See Vincent* 304 F.R.D. at 456 ("An individual filing for bankruptcy is not bound to disclose a claim when he is unaware of its existence." (quotation omitted)).

[12]  The following paragraphs in the Luke Declaration (and the documents referenced as exhibits therein) are premised on hearsay and should be disregarded:  Paragraphs 5–13, 14.g, 14.n, 17, 20, 27–30, 33, 35–41, 44, 46–50, 53, 57–64, 67–68, 72–78, 80, 84, 87.

1-VV; *see Page v. Forster & Garbus, LLP*, No. 18-cv-3611, 2019 U.TS. Dist. LEXIS 101832, at *25–26 (E.D.N.Y. June 17, 2019) (Lindsay, Mag. J.) (prohibiting debt collection where consumer was never provided notice of assignment to the secondary buyer that later sued on the debt).[13]

There is no suggestion AES sent Plaintiffs any documents that would have alerted them to Defendants' fraudulent scheme.  Plaintiffs could not have uncovered the underlying fraud on their own.  Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 697–98.[14]

## B.  Plaintiffs Satisfy Rule 23(b)(3), As Class Resolution Is Superior To All Other Methods

### 1.  *Applying Equitable Tolling Comports With Class-Wide Treatment*

Defendants wrongly contend that no class may be certified here, because Named Plaintiffs' claims are protected by equitable tolling, while some Class members' claims may not be so protected.  (Opp. at 34–36).  However, "[t]hat the Named Plaintiffs had to prove equitable tolling does not alone make the[m inadequate] representatives . . . .  [Certification is proper as all Class members' claims] involve the same actors, disclosures, and sham [lawsuits]."  *Fangman v. Genuine Title, LLC*, No. 14-cv-81, 2016 U.S. Dist. LEXIS 154582, at *34 (D. Md. Nov. 8, 2016)

---

[13] Such failure to notice assignment is consistent with Defendants' systemic chain-of-title failings described above.  Defendants also allege that two Plaintiffs (Bifulco and Frauenhofer) "acknowledg[ed] the debts" and "their loans," based on purported payment-deferral documents from AES.  However, these documents (if real) do not identify discrete loans/debts for which payments may have been deferred.  Even if Defendants could make this crucial connection, it would not advance their credibility attack.  In the precedent Defendants cite, the named plaintiff gave contradictory testimony as to whether he himself ever was even subjected to the deceptive debt collection identified in his complaint.  *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 357 (E.D.N.Y. 1997) (Spatt, J.) (court could not tell whether plaintiff received offending letter), *aff'd*, 164 F.3d 81 (2d Cir. 1998) (cited by Opp. at 23).  Here, in contrast, there is no dispute Plaintiffs themselves were targeted in state court pursuant to Defendants' policies.

[14] The unique defenses doctrine also applies only where the Defendant raises a defense that is distinctive to the named plaintiffs, and not the other class members.  Defendants' argument that Plaintiffs "did indeed owe the debts that were the subject of [those] actions to the Trust Defendants," (Opp. at 24), is not unique to the Named Plaintiffs.  Instead, Defendants intend to invoke this same defense against all class members.  *See Laurens v. Volvo Car United States*, No. 2:18-cv-08798, 2020 U.S. Dist. LEXIS 256702, at *22 (D.N.J. Dec. 8, 2020) (Defendant's objection of unique defense fails as "the defense is not unique to Plaintiff— [defendant] intends to invoke it as to every class member, not just Plaintiff").

(confirming named plaintiffs' adequacy over objection that their claims were tolled).[15]  Since no class member could have been aware of Defendants' internal policies, all of their claims should be tolled in the same way.

    2.  *Class Members' Damages May Be Determined Through Generalized Proof*

Defendants argue individualized damages issues should preclude certification under Rule 23(b)(2). (Opp. at 28, 32–33).  They offer no reason why the determination of monetary damages here would be any more difficult than in *Sykes III*.  Statutory damages are inherently assessed on a common basis, and the need to distribute these to Class members efficiently outweighs the potential inconvenience of individualized damages.  *Sykes III*, 780 F.3d at 88.  Because individual damages will primarily consist of garnishments, the amounts of which are "stored by [D]efendants themselves" in an "easily accessible" way, there is minimal risk "individual damage considerations [might] threaten to overwhelm the litigation."  *Id.*[16]

Relying on antitrust law, Defendants invent a requirement that Plaintiffs must provide a mathematical model which may be used to calculate every Class member's damages.  (Opp. at 33 (citing *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 48 (S.D.N.Y. 2020)).  Defendants again fail to distinguish *Sykes III*'s finding that "proponents of class certification need

---

[15]  Defendants' authority is readily distinguishable.  In *Minter v. Wells Fargo*, No. 07-cv-3442, 2013 U.S. Dist. LEXIS 59965, at *13-14 (D. Md. Apr. 26, 2013) (cited by Opp. at 34–35), the named plaintiffs were precluded by the law of the case from asserting tolling.  Plaintiffs here had their tolls claimed.  Finally, in *In re Cmty. Bank of N. Va.*, 795 F.3d 380, 404–05 (3d Cir. 2015) (cited by Opp. at 35), the court approved class-wide tolling.

[16]  *See, e.g.*, *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 369 (S.D.N.Y. 2014) (Koeltl, J.) (certifying class over defendant's objections of individual damages, where "computing damages is likely to be a mere matter of arithmetic," "likely to consist predominantly of arithmetical calculations based on payroll records and other documentary evidence").  Even if Defendants were correct that individual damages might be difficult to calculate, the "sensible way to proceed" is to certify liability per Rule 23(c)(4) now, then later conduct "separate hearings" on "damages of individual class members, or homogenous groups of class members."  *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (Posner, J.).

not rely upon a class-wide damages model to demonstrate predominance."   780 F.3d at 88
(quotation omitted).

## C. A National Class Should Be Certified

### 1. *No Court Has Held That A Defendant May Submit Fraudulent Affidavits*

Defendants' reliance on *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir.
2015), is misplaced.  (Opp. at 36–38).  In *Janson*, the plaintiff alleged that the defendant simply
swore "to the truth of the affidavit without having personal knowledge of the facts contained within
it."  806 F.3d at 437.  In contrast, this Court has already recognized that "Plaintiffs point to three
allegedly material misrepresentations Defendants made: (1) that the Defendants were the 'original
creditors' of the relevant loans; (2) that the Trust Defendants were 'authorized to proceed' with
litigation in state court; and (3) that Defendants possessed and reviewed proof of indebtedness."
Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 701.

All of Defendants' authority suffers from this same defect.  *Compare* Ord. of Oct. 11, 2019,
419 F. Supp. 3d at 701, *with* Opp. at 37–38 ("Other courts have agreed that an affidavit is not false,
misleading, deceptive, unfair, or unconscionable for FDCPA purposes just because it lacks
personal knowledge.") (quoting *Haworth v. Midland Credit Mgmt.*, Inc., No. 8:19-CV-46, 2019
WL 7161230, at *4 (D. Neb. Oct. 17, 2019) (emphasis added)), *and* Opp. at *id.* (citing *Clark v.
Main St. Acquisition Corp.*, 553 F. App'x 510, 516 (6th Cir. 2014) (no allegations of false
representations concerning original creditors, legal authority to act, or concerning the possession
of evidence)).

Even if there were a jurisdictional split, that would not preclude certification of a national
class under a statute with nationwide applicability (like the FDCPA), regardless of any minority
view.  *E.g.*, *Frank v. United Airlines, Inc.*, 216 F.3d 845, 848–49, 856 (9th Cir. 2000) (certifying

nationwide class under Age Discrimination in Employment Act, despite minority view from one circuit); *Swaney v. Regions Bank*, No. 13-cv-544, 2020 U.S. Dist. LEXIS 101215, at *3 n.2 (N.D. Ala. June 9, 2020) (same; Telephone Consumer Protection Act).

2. *Certification Should Be Applied On A Per-Trust, Per-State Basis*

Defendants argue without supporting authority that a certification on a per-Trust and per-state basis would somehow "nullify the damages cap under 15 U.S.C. § 1692k." (Opp. at 16). In fact, Congress intended that FDCPA violators like Defendants be subject to such multi-class liability for the same course of misconduct. Defendants offer no answer to *Torres v. Toback, Bernstein, Reiss LLP*, No. 11-cv-1368, 2014 U.S. Dist. LEXIS 36925, at *25–26 (E.D.N.Y. Mar. 29, 2014) (Pohorelsky, Mag. J.), which certified FDCPA subclasses such that "each subclass" "will [be] provide[d]" the maximum statutory damages under § 162k(b)(2)(B) (emphasis added)). Indeed, Congress could have included in § 1692k an express prohibition on such liability—as it has in other statutes—but chose not to. *Compare* 15 U.S.C. § 1640(a)(2)(B) (limiting Truth In Lending Act liability to "any class action or series of class actions" (emphasis added)), *with* 15 U.S.C. § 1692k(a)(2)(B) (no such limitation).

Defendants' second argument against per-Trust certification is that doing so "does not make sense" because only TSI-NCO is subject to FDCPA liability nationally. (Opp. at 16 & n.17). In addition to per-Trust certification being required because each Trust is a separate legal entity, TSI-NCO's agency relationship runs to each individually, rather than collectively as Defendants suggest. (¶¶ 3–4 & n.2). Likewise, per-state certification is appropriate, as records identifying consumers sued are organized according to state. First Hawkins Decl., ¶¶ 35–39; *see* Ord. of Aug.

26, 2020 U.S. Dist. LEXIS 14889, at *7 (ordering state- by-state "staged basis" class-sampling process).[17]

   3.   *The Trusts Are Subject To Nationwide GBL Liability*

   Defendants incorrectly assume the Trusts cannot be liable under the GBL for wrongs connected to non-New York collection suits.  (Opp. at 13).  In fact, the Trusts are subject to national GBL liability, because New York was the "locus" for the securitization assignments that the Trusts rely on to demonstrate their chain-of-title, and thus ownership of the subject loans.  Again, the Trusts have admitted in open-court that flaws existed in the Trusts' securitization-assignment documentation, a contention supported by discovery; this is why they conducted the fraud in the first place.  Moreover, the contracts governing those transactions bind the Trusts to New York law. *Polk v. DelGatto, Inc*, No. 21-cv-129, 2021 U.S. Dist. LEXIS 137764, at *24–25 (S.D.N.Y. July 23, 2021) (Engelmayer, J.) (approving non-New Yorker's GBL claim, based on defendant's ties to New York and reliance on New York law); *see* ¶¶ 3–4 & n.2.

   **D.  A Rule 23(b)(2) Class For Injunctive Relief Should Be Certified**

   Defendants are wrong that this Circuit's law precludes certification of a Rule 23(b)(2) class in cases like this one.  (Opp. at 29).  The Second Circuit approved a Rule 23(b)(2) class in this exact circumstance.  *Sykes III*, 780 F.3d at 98 (approving Rule 23(b)(2) class, because each class member "might each still be subject to a further action by these same defendants.")

   Defendants' precedent is limited to false-advertising class actions where the plaintiffs seek only injunctive relief.  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147–149 (2d Cir. 2020) (cited by Opp. at 29).  Because a pleading element of false advertising is that the plaintiffs will never again buy

---

[17]  If Defendants were correct about treating all Trusts collectively, this would create absurd results—for example, TSI-NCO could be held liable in this litigation for work it did on behalf of National Collegiate trusts not named here.

the deceptively sold product, injunctive relief is an inferior remedy to money damages. *Id.* Here, in contrast, both money damages and injunctive relief are properly sought, ensuring Class members receive full relief for the consequences of Defendants' unlawful credit reporting, and in the most efficient way possible. *Sykes II*, 285 F.R.D. at 293 (certifying both Rule 23(b)(2) and –(b)(3) classes).

Defendants' remaining arguments against injunctive relief all fail. First, there is no possibility Rule 23(b)(2) certification will leave some Class members with fewer rights than others. (Opp. at 29–30). All members of the 23(b)(2) class will also be members of the 23(b)(3) class, such that (contrary to what Defendants say) all members of any Class will receive notice and opt-out rights. *Sykes II*, 285 F.R.D. at 293. Second, Defendants' insistence that any credit reporting by them against Plaintiffs stopped years ago is irrelevant. (Opp. at 30–31). Only injunctive relief will protect class members in the future.[18]

### E. Defendants' Remaining Arguments All Fail

Defendants are incorrect that "public policy reasons" militate in favor of Class members raising their claims piecemeal, through thousands of individual state-court actions.[19] (Opp. at 33–34). *Sykes III*, rejected this logic specifically. 780 F.3d at 94 ("[R]equiring plaintiffs, under the guise of Rule 23(b)(3)'s superiority analysis, to pass through the threshold of the state courthouse

---

[18] Even if <u>Defendants</u> have stopped actively reporting, the harm from their conduct continues—credit bureaus continue to factor this negative reporting into current assessments of Class members' creditworthiness. *See* Pls.' Br., at 24 & n.16; *see also* "The Difference Between VantageScore Scores and FICO Scores," Experian (May 15, 2019) (explaining that all credit-score models continue to regard "collection accounts" as a negative factor in calculating credit scores, unless or until there is a reason for the model to "ignore" that event, e.g., the account is marked "paid"), *available at*: https://www.experian.com/blogs/ask-experian/the-difference-between-vantage-scores-and-fico-scores/.

[19] *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008) (cited by Opp. at 33–34), is inapposite, because it involved employment claims by a class whose "members were employed in different job classifications with disparate job duties," and so subject to different policies.

to seek relief[,] cannot seriously be entertained as an adequate, let alone superior, substitute for proceeding by class on these claims.").[20]

Defendants are also wrong that this Court lacks authority to certify liability-only classes under Rule 23(c)(4), merely because of the possibility of individualized damages inquiries. (Opp. at 38–39). Even if "some individualized inquiries may still need to be addressed, they will almost certainly be collateral to common ones, and will not qualitatively outweigh the plaintiffs' reliance on common proof." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *280 (E.D.N.Y. Oct. 15, 2014) (Pohorelsky, Mag. J.). "[N]ot only do the more substantial elements going to the defendants' liability weigh heavily in favor of predominance, the issue of damages is also substantially amenable to common proof, and will not require labyrinthine individual calculations." *Id.* (quotation omitted); *see* Part I.B.2, *supra* (Defendants' records allow for rapid calculations of each Class member's damages).

Next, Defendants are incorrect that Named Plaintiffs, who were all sued in New York courts, are improper representatives of any Class (or sub-class) of individuals outside of New York that this Court might certify. (Opp. at 16). In fact, Named Plaintiffs are proper representatives in this regard, as they "are pursuing their claims under the same legal theories as the unrepresented class members [in other states]." *Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*, No. 09-cv-1316, 2011 U.S. Dist. LEXIS 161250, at *26 (C.D. Cal. Apr. 4, 2011).

Finally, Defendants are wrong that there are other putative class actions that might conflict with certification here. (Opp. at 16 n. 18; *but see* ¶¶ 40–43).

---

[20] Further, even if Defendants were correct that the few Class members who appeared in state court and lodged counterclaims are not proper Class members, (Opp. at 34 n.24), this is not a basis for rejecting certification. Defendants' own records allow for easy identification of which individuals answered in state court, asserted counterclaims, and the like. (¶¶ 44–45).

## II.   <u>CONCLUSION</u>

For the reasons set forth above, Rule 23 certification should be granted.


Dated:      New York, New York
                 Sept. 13, 2021

Respectfully submitted,

**FRANK LLP**

By:   <u>/s/ Gregory A.  Frank</u>
Gregory A. Frank (GF0531)
Marvin L. Frank (MF1436)
Asher Hawkins (AH2333)
305 Broadway, Suite 700
New York, New York 10007
Tel: (212) 682-1853
Fax: (212) 682-1892
gfrank@frankllp.com
mfrank@frankllp.com
ahawkins@frankllp.com

*Attorneys for Plaintiffs and the Class*

16