UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MUTINTA MICHELO, KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) | No. 18-cv-1781 |
| Defendants. | ) ) | |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) | No. 18-cv-7692 |
| | | **FILED VIA ECF** |
| Defendants. | ) ) | |

**DECLARATION OF ASHER HAWKINS
IN FURTHER SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

ASHER HAWKINS, an attorney duly licensed to practice law in the State of New York and admitted to practice in this Court, declares under penalty of perjury:

1. I am an attorney at law and an associate with Frank LLP, the attorneys of record for Plaintiffs and the Class in the above-captioned consolidated actions. I submit this declaration in support of Plaintiffs' Motion for Class Certification (the "Motion") and the reply thereto.

2. Attached hereto are true and correct copies of Exhibits A–Q, which are identified and described in detail below.

**The Trusts Sued TSI-NCO In Delaware Chancery Court Over Loss Of
The Supporting "Schedules" Listing Assigned Loans**

3. Attached hereto as Exhibit A are excerpts from the Verified Amended Complaint for Injunctive and Equitable Relief, filed June 15, 2018 in the Court of Chancery for the State of Delaware, in the action *National Collegiate Master Student Loan Trust I et al. v. U.S. Bank National Association et al.*, Case No. 2018-0167-JRS (Transaction ID 62138855) (the "Delaware Complaint").

4. The Delaware Complaint was filed by all fifteen National Collegiate trusts, including the Trust Defendants here. (Ex. A, at ¶ 24). One of the defendants therein is TSI-NCO.[1] (*Id.*, ¶ 15).[2]

5. The Trusts admit and assert in their Delaware Complaint the following facts against TSI-NCO, including that they do not have the loan assignment documents:

---

[1] "TSI-NCO" as used herein refers to Defendant Transworld Systems, Inc. ("TSI"), in its own right and as successor to NCO Financial Systems, Inc. ("NCO"), and EGS Financial Care Inc., formerly known as NCO.

[2] The Delaware Complaint also details that New York law governs all Trusts' formation, as well as their relationships with entities like TSI-NCO that performed servicing duties, and these relationships run to "each" Trust individually, not all Trusts collectively. (Ex. A, at ¶¶ 29, 37, 39, 42).

- "To establish standing and obtain a judgment against a defaulted borrower [in state court], the Trusts, who were not the original lenders, must demonstrate their ownership of the loan [being alleged]." (*Id.*, ¶ 73).

- "The transaction documents dealt with this as follows. First, each deal included Pool Supplement agreements, whereby the originator of the loans (called the 'Program Lender') 'transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the 'Depositor') . . . each student loan set forth on the attached Schedule 1 [or 2].' Each Schedule[] states that the list of loans is 'On file with FMC' (i.e., First Marblehead)." (*Id.*, ¶ 74).

- "[TSI-NCO and the Trusts' other servicers], however, have failed to obtain and safeguard the Schedule [] to each Pool Supplement agreement. . . . ." (*Id.*, ¶ 76 (emphasis added)).

**Defendants Here Have No Evidence That The Trusts Owned The Loans They Sued On**

6. On January 7, 2019, Plaintiffs served Defendants with discovery requests for production of documents. These included requests for documents evidencing chain of title for each alleged loan sued upon in the underlying state-court collection lawsuits against each Named Plaintiff.

7. On May 17, 2019, Defendants produced documents responsive to Plaintiffs' demands. As to the chain-of-title demands, Defendants' production included the documents that have been compiled into Exhibit 1-A to the Declaration of Bradley Luke in support of Defendants' opposition to the Motion.[3] Mr. Luke describes these documents as the "Pool Supplements" by which Named Plaintiffs' alleged loans were assigned to the Trusts which later were named as the plaintiffs in the underlying state-court actions. (Luke Decl., ¶ 14.a–b (citing Ex. 1-A (the "Incomplete Pool Supplements"))).

8. None of the Incomplete Pool Supplements contains the page that would inform the reader where to locate the "Schedule" listing individual loans purportedly being assigned to The National Collegiate Funding LLC ("NCF") for subsequent assignment to one of the Trusts.

---

[3] Capitalized references to the "Declaration" are to Mr. Luke's in the motion practice at bar.

Specifically, the first page of each Incomplete Pool Supplement identifies an "attached Schedule" listing such loans, yet there is no accompanying attachment.  (*Compare, e.g.*, Luke Decl., Ex. 1-A, at Bates No. TSI 001860 (stating that "Bank One Loans" being assigned to NCF for subsequent assignment to Trust 2004-2, may be found on "attached Schedule 2"), *with id.* at Bates No. TSI 001862 (last page of Incomplete Pool Supplement; no reference to "Schedule 2")).

9. On August 20, 2019, Plaintiffs sent Defendants discovery requests concerning the existing production.  These included a request that Defendants produce each "Schedule" listing loans, in anticipation of the Rule 30(b)(6) depositions of Mr. Luke, who was designee for both TSI-NCO and the Trusts.  Defendants did not respond to Plaintiffs' demand for the "Schedule[s]," even as they continued to produce documents responsive to other demands.

**Defendants' Corporate Designee Cannot Explain The Incomplete Pool Supplements**

10. Mr. Luke was deposed on February 11 and 13, 2020.

11. Mr. Luke could not explain why pages were missing from the Incomplete Pool Supplements such that there is no way to identify the location of the Schedule listing loans.  To illustrate this, we discuss Mr. Luke's testimony concerning the Incomplete Pool Supplement that Defendants identify as assignment documentation for the alleged loans over which Named Plaintiffs Bifulco and Butry were sued in state court.  Defendants assert that this Incomplete Pool Supplement evidences assignment of a pool of loans from Bank One to NCF on October 28, 2004, for subsequent assignment to Trust 2004-2.  According to Mr. Luke, TSI-NCO received this Incomplete Pool Supplement electronically from First Marblehead on May 14, 2012.  (Luke Decl. ¶ 14.a & Ex. 1-A, at Bates Nos. TSI 0001780–82, TSI 001860–62) (the "Bank One/2004-2 Incomplete Document").

12. At deposition, Mr. Luke testified that the Bank One/2004-2 Incomplete Document is not the original version of the pool supplement agreement that it depicts, but rather a version of it which had been filed with the U.S. Securities and Exchange Commission ("SEC"), and which TSI-NCO later downloaded from the SEC website (he did not know when). Mr. Luke could not explain why the Bank One/2004-2 Incomplete Document is missing the page identifying the location of the "Schedule" listing loans that is referenced in the document's first page. (Ex. C, TSI-NCO 30(b)(6) Tr., 24:17–34:18).[4]

13. After Mr. Luke testified that he was unable to explain the missing page, defense counsel interrupted the deposition to state that "the original version of the pool supplement" was another document, produced at Bates No. NCSLT_000102–108. (*Id.* at 36:12–15). This document (the "Bank One/2004-2 Second Version") (Exhibit D hereto) contains a final page stating that the "Schedule" listing loans is located on a "supplemental loan roster CD." (Ex. D, at Bates No. NCSLT_000108).[5]

14. When questioned about this reference to a "CD" containing the "Schedule" of loans, Mr. Luke testified that possibly it was one of several compact discs that had been sent to TSI-NCO by First Marblehead in the spring of 2016, following a civil investigative demand from the Consumer Financial Protection Bureau ("CFPB"). (Ex. B, Trusts 30(b)(6) Tr., 130:18–140:8).

15. After Mr. Luke's depositions concluded, Plaintiffs requested production of the "CD" referenced in Bates No. NCSLT_000108. This request was the subject of Rule 37 motion

---

[4] References herein to "Trusts 30(b)(6) Tr." are to the transcript of the Feb. 11, 2020 deposition of the Trusts' corporate designee, Bradley Luke; references to "TSI-NCO 30(b)(6) Tr." are to the transcript of the Feb. 13, 2020 deposition of TSI-NCO's corporate designee, also Mr. Luke. Excerpts from these transcripts are attached hereto as Exhibits B and C, respectively.

[5] The Bank One/2004-2 Second Version exists as a PDF document. According to the PDF's metadata, its "DateCreated" is "2018-10-02".

practice that culminated in this Court's Order of August 6, 2020, in which the Court directed production of the CD within three weeks, or else "state under oath that [Defendants] cannot produce the[ CD] and explain why not." (Ord. of Aug. 6, 2020 U.S. Dist. LEXIS 140889, at *5).

16. On August 28, 2020, Defendants provided Plaintiffs a declaration from Mr. Luke in which he stated that the CD could not be produced but that he had an "open request for a search for the CD [referenced in Bates No. NCSLT_000108]" to two Nonparties: (1) Cognition Financial, as First Marblehead is presently known, and (2) GSS Data Services, Inc. ("GSSDS").[6] (Ex. E). Defendants have never produced the CD referenced in Bates No. NCSLT_000108.

**Defendants' Competing Versions Of Pool Supplements Contradict Each Other**

17. On February 5, 2021, Defendants produced a series of documents pursuant to this litigation's protocol for sampling-based class discovery (the "Class Production"). This protocol required, among other things, that Defendants produce the pool supplement agreement pertinent to each putative Class member randomly selected for inclusion in the sample. (First Hawkins Decl.,[7] at ¶ 36).

18. The Class Production contained a third version of the pool supplement agreement purportedly assigning a pool of loans from Bank One to NCF on October 28, 2004, for subsequent assignment to Trust 2004-2 (the "Bank One/2004-2 Third Version") (Ex. F (Bates Nos. NCSLT_SLF_000001–4)).

19. The Bank One/2004-2 Third Version is similar to the Bank One/2004-2 Second Version, in that it bears typographical marks which Mr. Luke said result from downloading the document from the SEC website. (*See* ¶ 12, *supra*). However, the Third Version, unlike the

---

[6] GSSDS is the administrator for the Trusts per their founding documents.

[7] References herein to "First Hawkins Decl." are to the undersigned's declaration of June 6, 2021, in support of the Motion. (ECF No. 315 in Case No. 18-cv-1781).

6

Second Version, contains a final page stating that the "Schedule" listing loans is "[o]n file with the Indenture Trustee." (Ex. F, at Bates No. NCSLT_SLF_000004).

20. According to SEC records, on November 8, 2004 the "Administration Agreement" for Trust 2004-2, dated October 28, 2004, was filed with the SEC. This identified Trust 2004-2's "Indenture Trustee" as U.S. Bank National Association.[8]

21. Prior to the February 5, 2021 production here of the Bank One/2004-2 Third Version, no document or testimony provided by Defendants had ever identified U.S. Bank National Association as a possible location for the purported "Schedule" listing loans assigned from Bank One to NCF on October 28, 2004, for subsequent assignment to Trust 2004-2,

22. According to the metadata for the Bank One/2004-2 Third Version, this document was created as a PDF by TSI-NCO employee Jonathan Boyd (or someone using his username) on December 23, 2014. (Ex. G).[9] By this date, Plaintiffs had already been sued by Defendants in state court and had default judgments entered.

23. TSI-NCO's Affiants were prohibited from reviewing pool supplement or any other chain-of-title documents prior to signing affidavits that allowed Defendants to procure default judgment in state court. (First Hawkins Decl., ¶ 24).

24. If demanded to produce such documents because someone they sued in state court answered, a TSI-NCO employee would search the company's digital file folders for the pool

---

[8] This "Administration Agreement" may be viewed in its entirety at:
https://www.sec.gov/Archives/edgar/data/1305287/000088237704002294/d264863.txt.

[9] Exhibit G consists of data that have been excerpted from a DAT file containing lines of metadata for dozens of class-sampling files produced by Defendants, in addition to the Bank One/2004-2 Third Version. For ease of display, and to avoid submission of evidence not relevant to the instant motion, the line of metadata specific to the Third Version has been excerpted from the DAT, and reformatted into the Microsoft table that appears in Exhibit F.

supplement. (Ex. H, Cummins Dep. Tr., 55:2–57:13).[10] When no pool supplement could be found, the employee would search the SEC website, and if a filing there looked like the right pool supplement, they would download that and rely on it as proof of chain of title. (*Id.*, 188:13–189:18).[11]

**Defendants Belatedly Produced Excel Spreadsheets As The "Schedule[s]"**

25. Mr. Luke testifies in his Declaration that "[o]n November 14, 2012, NCO received in a digital Excel file format from First Marblehead each of the loan schedules" referenced on the first page of each of the Incomplete Pool Supplements. (Luke Decl. ¶ 14.e).

26. Defendants failed to produce any Excel spreadsheets as the "Schedule[s]" listing loans which had been referenced in the pool-supplement documents in their initial production. (*See* ¶ 9, *supra*). Defendants' initial production concerning chain of title contained: (1) the pool-supplement documents, and (2) the data tables (the "Tables") that Mr. Luke now submits as Exhibits 1-B through 1-F of his declaration. (Luke Decl. ¶ 14.f).[12]

27. At deposition, Mr. Luke testified that the Tables are not the actual "Schedule[s]," but rather excerpts of Excel spreadsheets—each containing thousands of lines of data pertaining to individual alleged borrowers—which TSI-NCO got from First Marblehead. (Ex. B, Trusts 30(b)(6) Tr., 212:11–213:16).

---

[10] References herein to "Cummins Dep. Tr." are to the transcript of the February 5, 2021 deposition of TSI-NCO Affiant James Cummins.

[11] Mr. Luke's Declaration similarly acknowledges that TSI-NCO relied on the SEC website concerning lack of another kind of chain-title-evidence: the "Deposit and Sale Agreements" by which pools of loans were purportedly assigned from NCF to a specific Trust. (Luke Decl. ¶ 14.h). TSI-NCO frequently lacked these when Defendants initiated suit. (*Compare id.*, *with id.* at ¶ 21 (listing dates of suit commencement)).

[12] According to their metadata, the Tables were created on various dates in mid-2018 following this litigation's commencement.

28.     Following Mr. Luke's depositions, Plaintiffs demanded that Defendants produce the actual "Schedule[s]." In response, on March 13, 2020, Plaintiffs were provided four Excel spreadsheets, produced at Bates Nos. NCSLT_003474–75 and – 4724–25 (the "Spreadsheets").

**Defendants Cannot Use Their Excel Spreadsheets In Court As Proof Of Assignment, Because These Show Plaintiffs Do Not Owe Money To The Trusts**

29.     Prior to becoming a Named Plaintiff here, Plaintiff Sandra Tabar appeared in state court to answer after Defendants obtained a default judgment against her in an action in which Trust 2007-2 was the plaintiff.[13]

30.     Ms. Tabar first appeared in state court on or about April 9, 2018.[14] Upon answering, Ms. Tabar (assisted by volunteers from a pro bono clinic) demanded that Trust 2007-2 produce proof of the debt alleged, including "[a]ll information and documents relating to [Trust 2007-2's] acquisition of the alleged debt." (Ex. I, at Bates No. Plaintiffs' 000187). These demands were never met. After months of continuance, Defendants discontinued the action with prejudice on August 13, 2018, the date it was scheduled for trial. (*Id.*, at Bates No. Plaintiffs' 000196).

31.     In discovery here, Defendants' May 2019 initial production included a Table that was asserted to be proof of chain of title for the debt Ms. Tabar allegedly owed to Trust 2007-2. That Table now appears as Exhibit 1-C to Mr. Luke's Declaration (the "Tabar Table"). The Tabar Table lists the "BSSN"—short for "borrower Social Security number"—as "[REDACTED]2466."

32.     When Defendants produced the Spreadsheets in March 2020, these included one with the file name "Lender Report - Post Sale-NATIONAL CITY BANK.xls," which was produced at Bates No. NCSLT_004724 (the "National City/2007-2 Spreadsheet"). The National

---

[13]  Ms. Tabar is the only Named Plaintiff who appeared in state court.

[14]  The default judgment against her was obtained in May 2014; Ms. Tabar asserted she did not learn of the action until early 2018, as she was never served.

City/2007-2 Spreadsheet was asserted to be the "Schedule" listing loans allegedly assigned from National City Bank to NCF on June 14, 2007, for subsequent assignment to Trust 2007-2, as referenced on the first page of the pool-supplement document bearing that date on its face. (*See* Luke Decl., Ex. 1-A, at Bates No. TSI 00550).

33. The National City/2007-2 Spreadsheet does not contain the line of data matching that depicted in the Tabar Table. Specifically, the 2007-2 Spreadsheet contains a line of data some of which match the data in the Tabar Table—but the line in the Spreadsheet lists a different Social Security number than does the Tabar Table. (*Compare* Ex. J (listing borrower Social Security number ending in "2446"),[15] *with* Luke Decl., Exc. 1-C (listing borrower Social Security number ending in "2466")).

34. On January 4, 2021, a Cognition Financial senior vice president, Jens Meyer, executed a declaration that Defendants provided to Plaintiffs. Mr. Meyer stated that "the data for the loans" allegedly owned by Trust 2007-2 were entered into First Marblehead's database on "November 30, 2006." That date is months <u>before</u> the date when Defendants allege Ms. Tabar took out the loan they say was assigned to Trust 2007-2. (Luke Decl., ¶¶ 74, 76 (asserting that this alleged loan was requested on January 20, 2007 and disbursed on February 15, 2007)).[16]

---

[15] Exhibit J consists of a line of data excerpted from the National City/2007-2 Spreadsheet. For ease of display, and to avoid submission of evidence not relevant to the instant motion, the specific line of data discussed above has been excerpted from the National City/2007-2 Spreadsheet, and reformatted into the Microsoft table that appears in Exhibit J.

[16] *See also* Luke Decl., Ex. 1-C, at Bates No. TSI 00566 (The Tabar Table lists "Disb[ursement] Date" as "2/15/2007").

**Defendants' Employees Confirmed At Deposition That They Robo-Signed State-Court Filings Without Knowledge**

35.     Defendants' Affiants and Attorneys gave testimony at deposition here that they did not understand the basic facts of the indebtedness alleged in the state-court filings they signed against Class members. With respect to chain of title, these employees:

- Did not understand who owned alleged loans purportedly assigned to the Trusts and then sued upon. (Ex. K, Alphabet Dep. Tr.,[17] 39:18–41:11, 82:20–83:6 (TSI-NCO Affiants were told that TSI-NCO "purchase[d]" and is "the owner" of the loan which they alleged in state-court papers were owed to the Trusts)).[18]

- Did not understand how "Schedules" listing loans were created. (Ex. H, Cummins Dep. Tr., 142:9–145:1 (TSI-NCO Affiants were told by Mr. Luke that the bank that lent alleged loans created the spreadsheets that TSI-NCO considers the "Schedules").[19]

- Did not understand how "Schedules" listing loans were custodied. (Ex. H, Cummins Dep. Tr., 119:15–24 (TSI-NCO Affiants never saw a document identifying the original location of the "Schedules"); Ex. M, Boyd Dep. Tr., 97:24–98:3 (same).

36.     With respect to the amounts of the debts alleged, Defendants' Affiants and Attorneys did not understand how these were calculated, because they were not familiar with the terms and conditions that purportedly governed them. Specifically, the pages allegedly signed by Plaintiffs set forth a loan origination fee percentage to be applied to the loan amount, but the final origination fee reflects application of a higher percentage. For example, the documents asserted against Plaintiff Butry identify a 6.5% fee on $5,000 lent, which should be $325—but the actual fee imposed was $347.59. (Luke Decl., Ex. 1-HH, at Bates Nos. FG_00682–83). Defendants'

---

[17] References herein to "Watts Dep. Tr." are to the transcript of the May 15, 2021 deposition of TSI-NCO Affiant Chandra Alphabet; to "Watts Dep. Tr.," the Jan. 4, 2021 deposition of Forster Attorney Valerie Watts; to "Boyd Dep. Tr.," the Feb. 10, 2021 deposition of TSI-NCO Affiant Jonathan Boyd; and to "Forster 30(b)(6) Tr.," the Feb. 9, 2021 deposition of Forster's corporate designee, Joel Leiderman.

[18] *See also, e.g.*, Ex. L, Watts Dep. Tr., 123:19–124:17 (Forster Attorney states that loans were assigned directly from the originating bank to the Trust).

[19] Mr. Luke stated in his Rule 30(b)(6) testimony that the spreadsheets were "created by First Marblehead." (Ex. B, Trusts 30(b)(6) Tr., 157:11–20).

Affiants and Attorneys do not know how this inflated fee was calculated.  (Ex. M, Boyd Dep. Tr., 59:1–62:13; Ex. N, Forster 30(b)(6) Tr., 179:19–183:11).

37. Mr. Luke attaches to his declaration a set of documents that he describes as the terms for all of the alleged loans over which Plaintiffs were sued.  (Luke Decl., ¶ 14.n & Ex. 1-J). The language of these documents states that the origination fee will be applied using a percentage that is inflated in excess of the percentage shown to borrowers—but does not provide the formula allowing for calculation of the excess basis points.  (*E.g.*, Luke Decl., Ex. 1-J, at Bates No. TSI 001866 (text on upper half of left column, under "F. LOAN ORIGINATION FEE")).

**The Declarant's Statements About Credit Reporting Do Not Match The Record**

38. Mr. Luke states that TSI-NCO began credit reporting against Plaintiff Bifulco on July 28, 2013.  (Luke Decl., ¶ 46).  However, TSI-NCO's account notes show that this credit reporting began April 21, 2013.  (Ex. O, at Bates Nos. TSI 00040–41).

39. Mr. Luke states that TSI-NCO began credit reporting against Plaintiff Butry on July 7, 2013, and he was not sued in state court until November 15, 2013.  (Luke Decl., ¶¶ 52, 57).  The record shows that Defendants first sued him on a date between August 16 and 30, 2013, in Niagara Falls City Court, then re-filed suit in Tonawanda City Court on or about November 15, 2013, after concluding that Niagara Falls was the wrong forum.  (Ex. P, at Bates Nos. FG_00335, -352, -655–56).

**There Are No Competing Class Actions Being Litigated In Other Jurisdictions**

40. Plaintiffs previously identified two putative class actions in other jurisdictions that also involve FDCPA claims against Defendants named here, but that do not implicate certification of the Class here:

> a) *Gosse et al. v. Transworld Sys., Inc., et al.*, No. 3:20-cv-01446-RDM-MCC (M.D. Pa.) (filed Aug. 14, 2020)

12

    b) *Merrill et al. v. Transworld Sys., Inc. et al.*, No. 1:20-cv-00183-PLM-SJB (W.D. Mich.) (filed Mar. 2, 2020).

  41. On August 10, 2021, *Merrill* concluded with a stipulation of dismissal with prejudice. The dismissal is on an individual basis as to the named plaintiff there and is nonbinding upon the putative class it originally described. (ECF No. 49 in Case No. 1:20-cv-00183-PLM-SJB (W.D. Mich.)).

  42. On March 2, 2021, the plaintiffs in *Gosse* filed an amended complaint which asserts a class period that commences more than a year <u>after</u> the Class period here. Specifically, the *Gosse* amended complaint defines an FDCPA class period beginning August 14, 2019, i.e., one year before that litigation commenced, and does not argue for tolling. (*See* ¶ 65.a of ECF No. 67 in Case No. 3:20-cv-01446-RDM-MCC (M.D. Pa.)). Here, the Class period is February 27, 2012 through February 27, 2018, per this Court's decision applying tolling.

  43. Defendants reference a third putative class action in another court, *Hoffman et al. v. Transworld Sys. Inc., et al.*, No. 2:18-cv-01132 (W.D. Wa.) (cited by Opp. at 16 n. 18). There are no FDCPA claims in that case; those plaintiffs assert only Washington state law claims (which are not pleaded here). *Hoffman*, 2021 U.S. Dist. LEXIS 1348, at *3 (W.D. Wa. Jan. 4, 2021).

**Miscellaneous Facts And Exhibits In Further Support Of Certification**

  44. TSI-NCO and the Network Firms, including Forster, used specific alphanumeric codes, referred to as "P-codes," which allowed TSI-NCO and the Network Firms to communicate information about specific accounts. TSI-NCO has an online communications portal called "eRecoverEase" ("eRE"), which communicated account-specific details via P-code with the Network Firms to which National Collegiate accounts had been referred. Each Network Firm has its own computer system for account management, and eRE permits interface between those and TSI-NCO's account-management system, "CRS." (First Hawkins Decl. ¶ 8).

45.	TSI-NCO's "eRecoverEase User Manual for Network Attorneys" lists a variety of P-codes. One P-code—"*CC:P114"—is specifically used to identify instances where an individual sued in a Trust collection suit in state court has answered, and an additional P-code ("P105") is used to denote the filing of a counterclaim in such a suit. (Ex. Q, TSI-NCO SOP, at Bates No. TSI 01429).[20] Other, separate P-codes are used for similar events, like a trial date being scheduled. (*Id.* (P-code for "Trial Set" is "*CC:L127")).

Dated:   New York, New York
         Sept. 13, 2021

                                                    By:   */s/ Asher Hawkins*

                                                          Asher Hawkins (AH2333)
                                                          ahawkins@frankllp.com

---

[20] As to any counterclaims in state court, TSI-NCO requires Network Firms to provide regular, detailed updates. (*Id.* at Bates No. TSI 01436).