# Exhibit A

## to Hawkins Declaration

Plaintiffs' Reply in Further Support of Motion for Class Certification

*Michelo et al. v. Nat'l Collegiate Student Loan Trust 2007-2 et al.,* No. 18-CV-1781

*Bifulco et al. v. Nat'l Collegiate Student Loan Trust 2004-2 et al.,* No. 18-CV-7692

**EFiled:  Jun 15 2018 04:31PM EDT**
**Transaction ID 62138855**
**Case No. 2018-0167-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No.  2018-0167-JRS  **VERIFIED AMENDED COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF AND DAMAGES** |
| Plaintiffs, | ) ) | |
| v. | ) | |
| U.S. BANK NATIONAL ASSOCIATION, GSS DATA SERVICES, INC., TURNSTILE CAPITAL MANAGEMENT, LLC, AND TRANSWORLD SYSTEMS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
302-622-7000
*Attorneys for Plaintiffs*

## THE PARTIES

11.     Plaintiffs are each Delaware statutory trusts with Wilmington Trust Company ("WTC"), a Delaware banking corporation, as their Owner Trustee. WTC has its principal business office at 1100 North Market Street, Wilmington, DE 19890.  On July 20, 2017, WTC resigned as Owner Trustee, but continues to function in that role as no replacement has yet been appointed.

12.     Defendant U.S. Bank is, upon information and belief, a nationally charted bank with its headquarters located at 800 Nicollet Mall, Minneapolis, MN 55402.

13.     Defendant GSS, upon information and belief, is a Massachusetts corporation with a principal business office located at 402 West Broadway, Suite 2000, San Diego, CA 92101.

14.     Defendant Turnstile, upon information and belief, is a Delaware limited liability company with a principal business office located at 402 West Broadway, Suite 2000, San Diego, CA 92101.

15.     Defendant TSI, upon information and belief, is a California corporation with a principal place of business in Ft. Washington, Pennsylvania. TSI is the successor to NCO.

16.     Non-party PHEAA is, upon information and belief, a public corporation, organized under the laws of the Commonwealth of Pennsylvania,

Trust Agreements (entitled "Purposes and Powers"), the Trusts have the obligation and power, *inter alia,* "to provide for the administration of the Trust and the servicing of the Student Loans." § 2.03(a)(ii).   The Trusts further have the power "[t]o engage in those activities and to enter into such agreements that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith." § 2.03(a)(iii).   They also have the power "[t]o engage in such other activities as may be required in connection with the conservation of Trust Property…." § 2.03(a)(iv).

23.     These are owner-directed Trusts.  As provided in § 2.03(b)(i) of the Trust Agreements, in conducting the operations of the Trusts, "[t]he Trust will act solely in in its own name," and "the Owner Trustee or other agents selected in accordance with this Agreement will act on behalf of the Trust subject to direction by the Owners…."  The Owner Trustee is required "to administer the Trust in the interests of the Owners." § 8.03.

24.     The beneficial interests in Plaintiff The National Collegiate Master Student Loan Trust I are owned by NC Residuals Owners Trust and SL Resid Holdings LLC.   The beneficial interests in Plaintiff The National Collegiate Student Loan Trust 2003-1 are owned by NC Owners, LLC ("NC Owners"), Pathmark Associates LLC ("Pathmark") and NC Residuals Owners Trust.   The beneficial interests in the remaining Plaintiffs are owned by NC Owners and

### B.      The Trusts' Service Providers

27.      In order to preserve the value of the collateral (i.e., the Student Loans), several agreements regarding the servicing and administration of the Student Loans have been entered into.

#### 1.      The Master Servicing Agreement

28.      The Trusts and PHEAA are parties to the Amended and Restated Private Loan Servicing Agreement between PHEAA and the First Marblehead Corporation ("FMC") (the "Master Servicing Agreement" or "MSA") and a series of Custodial Agreements entered into among Plaintiffs, U.S. Bank in its capacity as Indenture Trustee, and PHEAA.   PHEAA acts as the custodian of the Student Loans and services the Student Loans while they are in repayment and in the early stages of delinquency or default.

#### 2.      The Indenture

29.      Each of the Trusts executed an Indenture with U.S. Bank as Indenture Trustee.   U.S. Bank executed the Indentures in Massachusetts.   The Indentures are governed by New York law.   The rights and duties of the Indenture Trustee are specified in each Indenture.

30.      The Indentures give the Indenture Trustee certain specified, mostly ministerial, duties, principally to deposit money collected on the Student Loans owned by the Trusts and to pay out money to Noteholders and others according to a specified "waterfall."

Rights and Remedies Cumulative.  No right or remedy herein conferred upon or reserved to the Indenture Trustee … is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise.

### 3.    The Administration Agreement

37.    The Trusts are parties to Administration Agreements entered into on various dates, by and among each of the Trusts individually, Wilmington Trust Company as Owner Trustee, U.S. Bank as Indenture Trustee, The National Collegiate Funding LLC as the Depositor, and First Marblehead Data Services, Inc. ("FMDS"), GSS's predecessor-in-interest, as the Administrator under each such Administration Agreement.  FMDS, which is a Massachusetts corporation, executed the Administration Agreement in Massachusetts.  The Administration Agreements are governed by New York law.

38.    The Administration Agreements provide the Administrator with certain specified rights and duties, but make clear that ultimate control rests with the Trusts.  Thus, § 1(d)(ii) of the Administration Agreements provides that as to non-ministerial matters, the Administrator shall not "take any action that the Issuer directs the Administrator not to take on its behalf."  It further provides that in the absence of instructions from the Indenture Trustee, in accordance with the Indenture, or from the Owner Trustee or the Owners, in accordance with the Trust Agreement, the Administrator shall not take any action regarding "[t]he initiation

-14-

of any claim or lawsuit by the Issuer … except for claims or lawsuits initiated in the ordinary course of business by the Issuer or their respective agents or nominees for the collection of the Student Loans owned by the Issuer." § 1(d)(i)(B).  Such provision plainly recognizes that the Issuer retained the ability to initiate lawsuits.

### 4.    The Special Servicing Agreement

39.    A Special Servicing Agreement was entered into on March 1, 2009, by and among First Marblehead Education Resources, Inc. ("FMER") as Special Servicer, U.S. Bank as Back-Up Special Servicer, and each of the Trusts, which named FMER as Special Servicer for delinquent and defaulted Loans and further provided that if FMER were to resign as Special Servicer, U.S. Bank would step in as the Special Servicer.  FMER executed the Special Servicing Agreement in Massachusetts.  The Special Servicing Agreement is governed by New York law.

40.    In March 2009, FMER hired TSI to provide default prevention and collection services in the event that U.S. Bank became Special Servicer, including hiring lawyers to bring collection cases.

### 5.    The Special Subservicing Agreement

41.    In March 2009, U.S. Bank made an agreement with Goal Structured Solutions, Inc. ("Goal") that if U.S. Bank were to become Special Servicer, it would hire an affiliate of Goal to act as Special Subservicer.

42.    In 2012, the Administrator was sold to Goal and renamed GSS, and shortly after that sale, FMER resigned as Special Servicer, triggering U.S. Bank's role as back-up Special Servicer.  U.S. Bank, as it had promised Goal, thereupon entered into the Special Subservicing Agreement dated as of September 7, 2012, hiring Turnstile – a wholly-owned subsidiary of Goal – to perform certain responsibilities regarding defaulted and delinquent loans that U.S. Bank was obligated to perform for the benefit of the Trusts pursuant to the Special Servicing Agreement.  The Special Subservicing Agreement is governed by New York law.

43.    Under the Special Subservicing Agreement, Turnstile was, among other things, "responsible for monitoring and supervising the performance by NCO" of its collection activities.  Special Subservicing Agreement ¶ 2.  The Special Subservicing Agreement required Turnstile to "conduct reviews of NCO's performance no less frequently than quarterly" and to meet with NCO on a quarterly basis to discuss with NCO its "post-default collections activities."  *Id*. Turnstile was required to "provide oversight of activities of NCO with regard to account management, litigation assistance and/or settlement strategies."  Special Subservicing Agreement Ex. A ¶ 1.  Turnstile was further required to "instruct Servicers to provide original documents to NCO," "review, monitor and assist NCO in connection with counterclaims naming … any Trust in collection

to expire on loans of hundreds of millions of dollars, including loans to borrowers in Delaware.  Defendants' failures properly to collect on delinquent and defaulted loans, and their failures to monitor and supervise collection efforts,  continues to the present date, and loans continue to become statute-barred.

> ### E.   Defendants' Failure to Obtain and Safeguard Documents Impedes the Trusts' Ability to Collect on Defaulted Loans

71.   Defendants have filed, in the name of the Trusts, lawsuits throughout the country seeking to collect on defaulted loans, and are continuing to do so to the present date.   Among other places, such lawsuits have been recently filed in Delaware,[1] New York,[2] and Massachusetts.[3]

---

[1] *See, e.g.*, *NCSLT v. Plummer*, No. CPU4-17-003152 (filed July 25, 2017); *NCSLT v. Cosby*, No. CPU5-17-001090 (filed July 25, 2017); *NCSLT v. Takklai* (filed July 25, 2017); *NCSLT v. Gordon*, No. CPU5-17-001091 (filed July 25, 2017); *NCSLT v. Tineo*, No. CPU4-17-003028 (filed July 25, 2017); *NCSLT v. Morgan*, No. CPU6-16-0011273 (filed Dec. 9, 2016).

[2] *See, e.g.*, *NCSLT 2007-2 v. Singn*, No. 158221/17 (N.Y. Sup. Ct. N.Y. Co. filed Sept. 14, 2017); *NCSLT 2007-4 v. Sasieta*, No. 151612/17 (N.Y. Sup. Ct. N.Y. Co. filed Feb. 20, 2017); *NCSLT 2006-4 v. Joyner*, No. 151531 (N.Y. Sup. Ct. N.Y. Co. filed Feb. 16, 2017); *NCSLT v. Valentin*, No. 156033/16 (N.Y. Sup. Ct. N.Y. Co. filed Aug. 31, 2016).

[3] *See, e.g.*, *NCSLT 2006-4 v. Powley*, 2016 Mass. Super. LEXIS 744 (Mass. Super. Ct. May 12, 2016); *NCSLT 2007-3 v. Durgin*, 2016 Mass. Super. LEXIS 509 (Mass. Super. Ct. May 11, 2016); *NCSLT 2007-2 v. Lewis*, 2016 Mass. Super. LEXIS 719 (Mass. Super. Ct. Apr. 6, 2016); *NCSLT 2006-1 v. Sweda*, 2016 Mass. Super. LEXIS 281 (Mass. Super. Ct. Mar. 17, 2016); *NCSLT 2006-3 v. Matthew*, 2015 Mass. Super. LEXIS 1644 (Mass. Super. Ct. June 9, 2015); *NCSLT 2006-4 v. Laracy*, 2014 Mass. Super. LEXIS 504 (Mass. Super. Ct. Nov. 4, 2014).

72.     Defendants' record keeping failures, however, have impeded the Trusts' ability to collect from borrowers who have defaulted on their loans.

73.     To establish standing and obtain a judgment against a defaulted borrower, the Trusts, who were not the original lenders, must demonstrate their ownership of the loan.

74.     The transaction documents dealt with this as follows.  First, each deal included Pool Supplement agreements, whereby the originator of the loans (called the "Program Lender") "transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the 'Depositor') … each student loan set forth on the attached Schedule 1."  Each Schedule 1 states that the list of loans is "On file with FMC" (i.e., First Marblehead).

75.     Second, there are Deposit and Sale agreements, whereby the Depositor sold to the Trust the loans listed on Schedule 1 to the Pool Supplement agreements.

76.     Defendants, however, have failed to obtain and safeguard the Schedule 1 to each Pool Supplement agreement.  PHEAA has admitted that it does not possess and made no effort to obtain these documents.  In a document request in a related case, the Trusts requested that PHEAA produce "All Pool Supplement Agreements, including all related schedules" in PHEAA's possession, custody or

control.   PHEAA responded that PHEAA "is not aware of any responsive documents."

77.    The Defendants involved in pursuing defaulted loans, including without limitation U.S. Bank as Special Servicer, Turnstile and TSI, have failed to obtain the Schedule 1s and other documents needed to prove ownership of the loans.   Pursuant to § 5b of Exhibit A to the Special Subservicing Agreement, Turnstile is required to "instruct Servicers to provide original documents to" TSI, but it has failed to do so.   As Special Servicer, U.S. Bank has responsibility to take action regarding "the enforcement and collection of Delinquent Loans and Defaulted Loans to maximize the collection of amounts payable of the Student Loans," including without limitation retaining collection agencies and others to prosecute lawsuits against borrowers in default.   Special Servicing Agreement § 2. And U.S. Bank is required to monitor Turnstile's performance and replace Turnstile if Turnstile's performance is deficient, but U.S. Bank has failed to do so.

78.    As a result of the failure to obtain and safeguard the Schedule 1s to the Pool Supplement agreements and other documents relating to the Student Loands, it has become difficult if not impossible properly to foreclose on defaulted loans, including loans to borrowers in Delaware, New York and Massachusetts.

79.    In the course of its investigation, the CFPB found that TSI has filed at least 1,214 collection lawsuits against borrowers even though it lacked the