

Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone: 212-415-8600
Fax: 212-303-2754
www.lockelord.com

Gregory T. Casamento
Direct Telephone: 212-812-8325
gcasamento@lockelord.com

March 18, 2022

<u>By ECF</u>

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

      Re:    *Seaman, et al. v. National Collegiate Student Loan Trust 2007-2, et al.*
              Case No.: 1:18-cv-01781-PGG
              *Bifulco, et al. v. National Collegiate Student Loan Trust 2006-4, et al.*
              Case No.: 1:18-cv-07692-PGG

Dear Judge Gardephe:

      We write on behalf of Defendants pursuant to this Court's Individual Rules of Practice Rule IV.A. to request a pre-motion conference and permission to file a motion under Fed. R. Civ. P. 12(b)(1) seeking dismissal of certain of Plaintiffs' claims for lack of Article III standing.

      A challenge to Article III standing may be raised at any stage in the litigation. *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (lack of "subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (internal quotations and citation omitted); *see also All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits.").

      The Supreme Court's decision in *TransUnion, LLC v. Ramirez* provided key guidance as to the applicability of Article III's concrete injury requirement to intangible harms. 141 S. Ct. 2190 (2021). Since *Ramirez* was decided, courts within the Second Circuit have routinely re-examined the presence or absence of Article III jurisdiction for intangible harms, either by issuing show cause orders or in response to pre-motion letters from defendants. *See, e.g.*, *Ciccone v. Cavalry Portfolio Servs.*, LLC, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (noting that the *Ramirez* decision "substantially and materially changed a district court's analysis of Article III standing in statutory consumer law cases.") (internal quotations and

Hon. Paul G. Gardephe
March 18, 2022
Page 2

citation omitted). In cases where, as here, plaintiffs contend they do not owe debts or were provided inaccurate information regarding debts on which defendants are collecting or have collected, many courts within the Second Circuit have found that plaintiffs failed to allege or demonstrate a concrete injury in fact as required by Article III to establish subject matter jurisdiction and, accordingly, dismissed the claims. *See, e.g.*, *In re FDCPA Mailing Vendor Cases*, No. CV 21-2312, 2021 WL 3160794, at *1 (E.D.N.Y. July 23, 2021) (dismissing FDCPA claims); *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021) (granting summary judgment for defendant); *Ciccone*, 2021 WL 5591725, at *5 (dismissing FDCPA claims); *Zlotnick v. Equifax Info. Servs., LLC*, No. 21CV7089GRBJMW, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (dismissing FCRA claims).

This Court should do the same here.

In *Ramirez*, the Supreme Court explained the important role of Article III's concrete injury requirement, namely, that it "is essential to the Constitution's separation of powers" and prevents uninjured plaintiffs from suing to ensure a defendant's compliance with regulatory law. 141 S. Ct. at 2206–07.[1] *Ramirez* required the Court to consider whether the concrete injury requirement was satisfied in three different circumstances:

(1) where consumers were inaccurately identified in TransUnion's internal files as being on a terrorist watch list, and the consumers' credit reports containing that identification were disseminated to third parties;
(2) where consumers were inaccurately identified in TransUnion's internal files as being on a terrorist watch list, but that information was *not* disseminated to any third parties and remained internal to TransUnion; and
(3) where consumers complained about formatting defects in certain mailings sent to them by TransUnion.

*Id*. at 2200. The Court found that a concrete injury had been adequately alleged in the first instance, but not the latter two instances. *Id*. at 2200, 2208–14.

Application of the *Ramirez* analysis to Plaintiffs' allegations of intangible harm requires dismissal of certain claims. At a high level, Plaintiffs in this case allege two types of intangible injuries. *First*, Plaintiffs allege that Defendants included false information in certain filings in state court actions involving debts owed by Plaintiffs. *See* Dkt. No. 124 at ¶¶ 72–76, 81–82, 92–96, 101–02, 104–13, 123–27, 132–33, 136–37, 139–48, 166, 171–72, 175–83, 186–87, 198, 203–04, 207–17, 227, 232–33, 236–47, 274(c)–(g), 280(c)–(g), 284. But, Plaintiffs do not explain how they were confused or misled by those statements, nor do Plaintiffs identify any way in which they would have acted differently in the absence of the alleged misrepresentations. In fact, when

---

[1] It is Plaintiffs' burden to demonstrate standing, "with the manner and degree of evidence required at the successive stages of the litigation" and "for each claim that they press and for each form of relief that they seek." *Id.* at 2208 (internal quotations and citations omitted).

Hon. Paul G. Gardephe
March 18, 2022
Page 3

deposed, many Plaintiffs disclaimed any knowledge of the documents containing the purportedly false statements, admitting that they did not recall reading the documents, had not taken any action as a result of reading the documents, and could not identify what statements they thought were false in the documents.[2] A claim cannot satisfy Article III where, as here, it is based on alleged falsehoods in documents that Plaintiffs did not even read. *Ramirez*, 141 S. Ct. at 2213 (finding no concrete injury where plaintiffs "presented no evidence that" they "so much as *opened*" the mailings at issue, "nor that they were confused, distressed, or relied on the information in any way," noting that these kinds of alleged misstatements are "bare procedural violations, divorced from any concrete harm.") (emphasis in original). Plaintiffs' failure to identify any "downstream consequences from" the alleged misrepresentations, such as that the misrepresentations somehow "hindered their ability to correct erroneous information" before it was acted upon, confirms the lack of Article III injury in this case. *Id*. at 2214 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III.").

*Second*, some Plaintiffs allege that Defendants falsely reported certain debts owed by Plaintiffs to credit reporting agencies. *See* Dkt. No. 124 at ¶¶ 86–87; 192, 221, 274(h), 280(h). But, Plaintiffs do not allege that credit reports containing the allegedly inaccurate information were ever disseminated to third parties. *Ramirez* made clear that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." 141 S. Ct. at 2210. Plaintiffs' claims based on inaccurate reports to credit agencies should accordingly be dismissed for failure to establish concrete injury.[3]

---

[2] *See, e.g.,* K. Seaman Dep. Tr., attached as Ex. A, at pp. 170, 282–83 (Q: In 2014 and 2015, what, if anything, confused you, by anything that [F&G] communicated to you? A: I don't really remember.); M. Re-Seaman Dep. Tr., attached as Ex. B, at pp. 20, 121 (Q: As you sit here today, separate and independent from anything that you may have discussed or learned from your lawyer, do you have any information or evidence that anything in Exhibit Number 7 is a false affidavit? A: No.); C. Bifulco Dep. Tr., attached as Ex. C, at pp. 105–06 (Q: [W]hat did you do when you became aware of the state court action? What action did you take? A. Nothing. What could I? What could I?); C. Frauenhofer Dep. Tr., attached as Ex. D, at pp. 184–85, 187 (Q: Ms. Frauenhofer, this is the formal complaint – this is a copy of the formal complaint that was filed against you in the state court lawsuit. Have you ever seen this document before? A: I think so. Q: And when was the last time that you saw it? A: I don't know. I don't remember. Q: Was it prior to this federal lawsuit you've filed against our clients? A: I don't know.); S. Tabar Dep. Tr., attached as Ex. E, at pp. 262–63, 302 (Q: Attached to this exhibit is a copy of the complaint that was filed in the Bronx Court. Have you ever seen that before? A: I have not seen that before. Q: So you have not seen the complaint before? A: No.).

[3] Any argument by Plaintiffs "based on an asserted *risk of future harm*" should be rejected because "in a suit for damages, the mere risk of future harm standing alone, cannot qualify as a concrete harm." *Id*. at 2210–11 (emphasis in original).

Hon. Paul G. Gardephe
March 18, 2022
Page 4

      For these reasons, Defendants respectfully request that the Court schedule a pre-motion conference and grant Defendants leave to file a Rule 12(b)(1) motion seeking to dismiss portions of Plaintiffs' claims for lack of Article III standing. Plaintiffs have not consented to Defendants' request to file the aforementioned motion.

                Respectfully submitted,

By: /s/ Gregory T. Casamento

Gregory T. Casamento
R. James DeRose, III
LOCKE LORD LLP
Brookfield Place, 20th Floor
200 Vesey Street
New York, New York 10281
(212) 415-8600
gcasamento@lockelord.com
rderose@lockelord.com

J. Matthew Goodin
LOCKE LORD LLP
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
(312) 443-0700
jmgoodin@lockelord.com

*Attorneys for Defendants National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2007-3*

cc: Counsel of Record