UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, <br><br> Defendants. | No. 18-cv-1781 |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, <br><br> Defendants. | No. 18-cv-7692 <br><br><br><br><br><br><br><br> **FILED VIA ECF** |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER OPPOSITION TO
DEFENDANTS' RULE 12(b)(1) MOTION**

## TABLE OF 12(b)(1) MOTION DOCUMENTS & FILINGS

| Document Description | Abbreviation | Docket Number in 18-cv-1781 | Docket Number in 18-cv-7692 |
|---|---|---|---|
| Court's Order of March 24, 2022, granting Defendants' Request for Motion for Rule 12(b)(1) Dismissal | "Ord. of Mar. 24" | 364 | 293 |
| Defendants' Motion for Rule 12(b)(1) Dismissal | N/A | 371 | 300 |
| Defendants' Memorandum of Law in Support of Motion for Rule 12(b)(1) Dismissal | "Mot." | 372 | 301 |
| Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Rule 12(b)(1) Dismissal | "Pls.' Opp." | 389 | 317 |
| Plaintiffs' Declaration by Counsel (Hawkins) in Support of Opposition to Defendants' Motion for Rule 12(b)(1) Dismissal | "Pls.' Decl." | 390 | 318 |
| Defendants' Reply in Support of Motion for Rule 12(b)(1) Dismissal | N/A | 397 | 325 |
| Transcript of May 5, 2022 Oral Argument re Rule 12(b)(1) Motion | "Tr." | 403 (notice) | N/A |
| Court's Order of May 6, 2022, directing Supplemental Briefs re Defendants' Rule 12(b)(1) Arguments | "Ord. of May 6" | 399 | 327 |
| Defendants' Supplemental Brief on Article III Standing | "Defs.' 3d Br." | 408 | 332 |

Plaintiffs submit this brief concerning Defendants' motion to dismiss pursuant to Rule 12(b)(1), and in response to Defendants' supplemental brief on Article III standing submitted May 26, 2022. ("Defs.' 3d Br.").[1] This Court ordered the supplemental briefing after Defendants changed their 12(b)(1) challenge during the May 5 oral argument. (Tr. 29:3–3423). In granting Defendants a third brief on standing, this Court directed them to justify why their standing theories shifted, and to explain why all belated arguments shouldn't be ignored. (Ord. of May 6, at 3). Defendants' third brief fails to do this, rejecting the Court's inquiry, and relying on the notion that Article III standing may be addressed at any time. (*See* Defs.' 3d Br., at 1 n.1).

Beyond failing procedurally, Defendants' third brief consists of failed arguments. They expansively argue that all Class members lack standing, instead of the subset challenged initially.[2] Otherwise, Defendants offer nothing new. Their third brief fails for the same reason as their prior papers: Controlling precedent confirms the standing of each Plaintiff and fellow Class member. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208–09 (June 25, 2021) ("*TransUnion*"). Under *TransUnion* and subsequent precedent, all Class members suffered concrete harms sufficient for Article III standing. The harms here are analogous to ancient torts like defamation and wrongful use of suit, meeting *TransUnion*'s test for constitutional injury. *TransUnion*, 141 S. Ct. at 2208–09 (confirming standing for claims of false credit-reporting, akin to tort of defamation per se).

---

[1] The table preceding this brief contains a list of prior motion papers and filings, their docket numbers, and the abbreviations by which they're referenced herein.

[2] Throughout certification briefing in 2021, Defendants said *TransUnion* only barred a small subset of the Class: persons sued in a Trust collection action are barred if the action was discontinued before service, they said. (Ord. of Mar. 24, at 2). After certification was fully briefed, Defendants were permitted a late 12(b)(1) motion. (*Id.* at 2–4). Their motion sought dismissal of all claims "except those" for suing in state court in bad faith. (Ord. of May 6, at 3; *see generally* Mot.). Under Defendants' own wording, this meant most Class members <u>do have</u> standing. (Tr. 29:3–21). Defendants' third brief now asserts no Class member has standing, i.e., no person sued in a Trust action has standing, regardless of Defendants' violations in connection with the action.

Defendants' fraud involved a three-pronged strategy to collect from individuals on unprovable debts. First, they filed state-court suits supported by false pleadings. Second, they filed materially false and misleading affidavits in state court. Third, they wrongly reported to credit bureaus that these individuals are deadbeats who need to be sued. Any of these tactics alone causes Article III injury in fact. *TransUnion*, 141 S. Ct. at 2208–09; *see Ewing v. Med-1 Sols., LLC*, 24 F.4th 1146, 1152–54 (7th Cir. 2022) (confirming standing per *TransUnion* for claims of wrongful credit-reporting) ("[B]eing portrayed as a deadbeat [has] real-world consequences.").

Defendants rely on distinguishable post-*TransUnion* cases concerning dunning letters that didn't involve allegations of fraudulent statements in court. (Defs.' 3d Br., at 5 (relying on cases claiming dunning letters violated privacy)). Because no one saw the dunning letters in those cases, the courts found no harm. (*See id.*). To the contrary, here the harms are real, and redressable by the claims brought. *TransUnion*, 141 S. Ct. at 2208–09; *Ewing*, 24 F.4th at 1152–54.[3]

Finally, Defendants attempt to bootstrap a renewed *Rooker-Feldman* challenge onto their 12(b)(1) brief. This must be rejected under the law of the case. Defendants' are wrong that *TransUnion* "changed" the law concerning "this Court's reject[ing Defendants'] *Rooker-Feldman* argument in the 2019 ruling". (Defs.' 3d Br., at 8–10). *TransUnion* does not mention, refer to, or concern the *Rooker-Feldman* doctrine in any way. Defendants' third brief should be ignored.

I.  **ARGUMENT**

   A.  ***TransUnion* Confirms Standing For Claims Of Wrongful Use Of Suit**

Defendants incorrectly assert that their scheme to defraud consumers through false state-court filings cannot be the basis for "a concrete injury" under Article III. (Defs.' 3d Br., at 4–5).

---

[3] At minimum, the Class are entitled to statutory damages, which may be appropriate relief for harms difficult to quantify. Insofar as Defendants also caused quantifiable damages, like garnishment, those with such additional harms have standing for these. *See* Part I.C–D, *infra*.

In fact, post-*TransUnion* courts agree that concrete injury occurs when defendants commit violations of the FDCPA and similar law in connection with state-court suits like those here. Plaintiffs' claims are analogous to the historical tort of wrongful use of civil proceedings, and therefore have standing under *TransUnion*'s test. *Makhnevich v. Bougopoulos*, No. 18-cv-285, 2022 U.S. Dist. LEXIS 57706, at *16 n.7 (E.D.N.Y. Mar. 29, 2022) (Matsumoto, J.) (Because "Plaintiff[s'] claims concern Defendants' alleged misconduct during the [state c]ourt action, Plaintiff[s'] claims share 'a close relationship [with] harms traditionally recognized as providing a basis for lawsuits in American courts.'" (quoting *TransUnion*, 141 S. Ct. at 2204)); *see also* Am. Compl. ¶¶ 1–17 (describing Defendants' wrongful suits in state courts).

The harms from wrongful use of civil proceedings have been recognized at common law since at least the Jacobean era in England, four hundred years ago.[4] Following *TransUnion*, courts consistently confirm standing for claims concerning wrongful prosecution of a lawsuit—particularly, using a suit to try to obtain property. *Makhnevich*, 2022 U.S. Dist. LEXIS 57706, at *16 n.7; *see Panebianco v. Selip & Stylianou, LLP*, No. 21-cv-5466, 2022 U.S. Dist. LEXIS 23308, at *3–4 (E.D.N.Y. Feb. 9, 2022) (Hurley, J.) (citing *TransUnion*) (Article III standing for FDCPA/GBL plaintiff who claimed debt collector sued him without ensuring service of complaint was sufficiently discreet); *McRobie v. Palisades Acquisition XVI, LLC*, No. 15-cv-18, 2022 U.S. Dist. LEXIS 38778, at *40 (W.D.N.Y. Mar. 3, 2022) (Roemer, Mag. J.) (confirming Article III

---

[4] *Waterer v. Freeman*, (1618) 80 Eng. Rep. 412, 413; Hobart 266, 267 ("[I]f a man sue me in a proper Court, yet if his suit be utterly without ground of truth, and that certainly known to himself, I may have an action of the case against him for the undue vexation and damage that he putteth me unto by his ill practice."); *see, e.g.*, *Pangburn v. Bull*, 1 Wend. 352 (N.Y. Sup. Ct. 1828) (same); *Bump v. Betts*, 19 Wend. 421 (N.Y. Sup. Ct. 1838) (same).

3

injury where defendants filed state-court action against plaintiff without reviewing chain of title, yet "still maintain they have a right to collect a debt from" him).[5]

Courts read *TransUnion* as confirming the existence of concrete harm even where the collector merely <u>threatens</u> legal action without justification. *E.g.*, *Butela v. Midland Credit Mgmt.*, No. 20-cv-1612, 2022 U.S. Dist. LEXIS 76602, at *6–7 (W.D. Pa. Apr. 27, 2022) (standing where defendant falsely told plaintiff that collection suit had been filed in state court).[6] Defendants have no response to this precedent. Instead, they continue to rely on an inapposite line of cases where courts found *TransUnion* bars claims concerning <u>collection letters only</u>. (*See* Defs.' 3d Br., at 5 (citing, inter alia, *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-cv-2428, 2021 U.S. Dist. LEXIS 228037 (E.D.N.Y. Nov. 29, 2021) (Seybert, J.))). These cases provide Defendants no support: unlike here, those plaintiffs had no theory of FDCPA liability analogous to common-law torts. *Ciccone*, 2021 U.S. Dist. LEXIS 228037, at *14 (denying standing where FDCPA theory of liability was that collector shouldn't have shared consumers' information with third-party vendor paid to generate dunning letters); *see also id.* ("[S]pecific provisions of the FDCPA condone the use of intermediaries to communicate with debtors.").[7]

---

[5] *See also Viernes v. DNF Assocs., LLC*, No. 19-cv-316, 2022 U.S. Dist. LEXIS 14777, at *17–18 (D. Haw. Jan. 27, 2022) (standing for FDCPA claims alleging violations during collection suit, which bear close relationship to historical tort of "wrongful use of civil proceedings"); *Benjamin v. Rosenberg & Assocs., LLC*, No. 19-cv-3012, 2021 U.S. Dist. LEXIS 161302, at *17–19 (D.D.C. Aug. 26, 2021) (same, discussing history of "common-law unjustifiable-litigation torts").

[6] *See also Velez-Aguilar v. Sequium Asset Sols.*, No. 21-cv-14046, 2022 U.S. Dist. LEXIS 8842, at *6–12 (D.N.J. Jan. 18, 2022) (defendant threatened to sue over unpaid judgment beyond limitations period); *Perez v. McCreary, Veselka, Bragg & Allen*, No. 19-cv-724, 2021 U.S. Dist. LEXIS 155028, at *6–9 (W.D. Tex. Aug. 17, 2021) (threat to sue on debt after limitations period).

[7] Also inapposite is Defendants' continued reliance on *Age Kola v. Forster & Garbus LLP*, No. 19-cv-10496, 2021 U.S. Dist. LEXIS 172197 (S.D.N.Y. Sep. 10, 2021) (Seibel, J.) (cited by Defs.' 3d Br., at 5). The court there found no possible injury where the plaintiff received collection letters indicating different balances on the debt account, but no information was disseminated publicly. *Id.* at *18–21. Similarly distinguishable is the only new cite in Defendants' latest brief. In *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457 (8th Cir. Feb. 14, 2022) (cited by Defs.' 3d Br., at 5),

4

### B. *TransUnion* Confirms Standing For Claims Of False Credit-Reporting

Defendants are wrong that Plaintiffs suffered no concrete harm from Defendants' strategy of falsely reporting to credit bureaus that Plaintiffs owed debts, as if these could be proved in court. (Defs.' 3d. Br., at 5–7).  Following *TransUnion*, courts confirm standing for claims about false credit-reporting under the FDCPA and similar statutes, because such violations are analogous to defamation per se at common law.  As soon as a collector publicizes the injurious statement to a third party—i.e., the credit bureau—a concrete harm occurs. *Ewing*, 24 F.4th at 1152–54 (standing for plaintiffs alleging FDCPA violations by collector for falsely reporting to credit bureaus) ("In this regard, [plaintiffs] resemble the prevailing subclass in *TransUnion*, who demonstrated that misleading information about them had been 'disseminated to third parties' . . . . The Court in *TransUnion* did not require those plaintiffs to come forward with additional evidence of publication because dissemination [to the bureaus] was clear." (quoting 141 S. Ct. at 2209)).

Courts reject Defendants' assertion that falsely disseminating negative information about consumers to the bureaus doesn't generally cause consumers harm.  In reality, "being portrayed as a deadbeat who does not pay [their] debts has real-world consequences." *Ewing*, 24 F.4th at 1152–54; *see Anderson v. Credit One Bank. (In re Anderson)*, Nos. 14-22147 (Ch. 7) & -8214 (Adv.), 2022 Bankr. LEXIS 1530, at *90–93 (Bankr. S.D.N.Y. June 2, 2022) (Drain, Bk. J.) (certifying

---

standing was denied for an FDCPA claim alleging the collector shouldn't have sent copies of garnishment paperwork to the plaintiff because the collector knew the plaintiff was represented by counsel.  *Id.* at 463.  The court in *Ojogwu* emphasized that the mailing there could <u>only help</u> the plaintiff, by providing information that he needed even if represented by counsel.  *See id.*  In contrast, courts confirm concrete injury where, as here, the collector's actions are designed to scare the plaintiff into paying. *Westerman v. Constar Fin. Servs., LLC*, No. 21-cv-2255, 2021 U.S. Dist. LEXIS 192803, at *4 (D. Md. Oct. 4, 2021) (standing for FDCPA claim where collector continued contacting consumer who requested that communications go through attorney).

class of consumers falsely credit-reported against, and rejecting defendant's standing challenge per *TransUnion*) ("Publication as pressure to pay is [constitutionally] 'concrete'.").[8]

When analyzing Article III injury in the context of credit-reporting, courts recognize "the widely held view, supported by an industry of 'credit score improvers,' that one's credit score is critically important," such that falsely reporting a debt as "owing when it is not, is the pressure to pay, the only other way to correct the report being the payment of the debt." *Anderson*, 2022 Bankr. LEXIS 1530, at *86. Because "credit reports play a key, public role in enabling access to credit and other important things, such as obtaining jobs and housing," falsely reporting negative information to extract payment causes "an injury in fact under *TransUnion*." *Id.* at *92–93 (certifying class where creditor falsely reported debts as not discharged in bankruptcy).[9]

Defendants unsuccessfully try to rebut such precedent by citing the Second Circuit's November 2021 decision in *Maddox v. Bank of New York Mellon Trust*, 19 F.4th 58 (cited by Defs.' 3d Br., at 5–6, 10). Their reliance on *Maddox* fails, because that case had nothing to do with credit-reporting, or anything similar. The *Maddox* plaintiff alleged that his mortgage company neglected to publicly record a satisfaction within the limited time required by state law.

---

[8] *See also Fernandez v. Rentgrow, Inc.*, No. 19-cv-1190, 2022 U.S. Dist. LEXIS 58378, at *13–16 & nn.9–11 (D. Md. Mar. 9, 2022) (analyzing *TransUnion*) (Companies whose "business model is based on" trafficking negative information about consumers invariably do so whenever possible, and it would be "[un]reasonable for a jury to conclude that" negative information, once reported, was never seen nor relied upon.). Defendants inappositely cite a single case where a plaintiff was denied standing after claiming the collection caused him reputational injury. (Defs.' 3d Br., at 5 (citing *Adler v. Penn Credit Corp.*, No. 19-CV-7084, 2022 U.S. Dist. LEXIS 43518 (S.D.N.Y. Mar. 11, 2022) (Karas, J.))). But, unlike here, that plaintiff never alleged or tried to show the defendant credit-reported against him; his theory of reputational harm rested only on his vague supposition that potential creditors might learn of the collection effort. *Id.* at *21–26.

[9] Defendants irrelevantly argue that Plaintiffs' operative pleading fails to specifically plead "defamation" in asserting Defendants' violations. (Defs.' 3d Br., at 5). Defendants' point is irrelevant. *TransUnion* does not require that a plaintff's claims <u>exactly</u> match historical torts— they must only have a "close relationship" to common law. *TransUnion*, 141 S. Ct. at 2204.

But this technical violation caused no Article III injury under *TransUnion*. The court reasoned that since the defendant never <u>disseminated</u> negative information, the harm wasn't analogous to defamation or any other tort. *See* 19 F.4th at 64–65. Such is not the case here. Similarly, the context of mortgage-satisfaction recording doesn't involve risk of harm to consumers even if mistakes are made. Harm could only occur in the unlikely event a potential creditor, within the limited time period, reviewed the entire mortgage record, observed absence of satisfaction, and automatically deemed the consumer uncreditworthy. *Id.* Any such risk is too "nebulous." *Id.*

But decisions following *TransUnion* and *Maddox* confirm standing in the context of false credit-reporting. With credit-reporting, any negative item undisputedly reduces the consumer's credit score to some extent, inherently causing concrete harms. *Anderson*, 2022 Bankr. LEXIS 1530, at *85–93 (distinguishing *Maddox* to confirm standing) (finding defendants "miss the point" in reasoning a single negative item on credit report likely causes only de minimis harm).[10]

### C. The Law Of This Case Confirms Standing For The Claims Here

Defendants are wrong that this Court's Rule 12 decision in 2019 foreclosed false credit-reporting as a basis for Article III injury. (Defs.' 3d Br., at 7). The Court's ruling that Defendants city only concerned statutory injury under the GBL. The GBL uniquely[11] incorporates an "'actual injury' requirement [which] is <u>something more</u> than the 'injury-in-fact' required to establish constitutional standing." (Ord. of Oct. 11, 2019, 419 F. Supp. 3d 668, 706 (Gardephe, J.) (quote omitted) (emphasis added)). The Court's Rule 12 decision read GBL precedent as requiring a

---

[10] *See Fernandez*, 2022 U.S. Dist. LEXIS 58378, at *13 n.9 (confirming Article III standing for claims over false credit-reporting) (distinguishing *Maddox*) ("The *Maddox* Court expressly [found mortgage-satisfaction recordation different than the facts in] *TransUnion*, where—as here—class members had their credit reports disseminated to third parties."); *see also* Pls.' Opp., at 12–13 (discussing expert findings about inherent harms of negative credit-reporting).

[11] Notably, the FDCPA <u>does not</u> have this heightened injury requirement. (*See id.*).

7

plaintiff to show negative consequences caused by false credit-reporting, to demonstrate an "actual injury" for GBL statutory standing. (*Id.* at 709).  The Court's discussion of GBL "actual injury" did not concern constitutional standing, nor the nature of Plaintiffs' claims under other statutes, like the FDCPA and § 487. (*Id.*)  Following *TransUnion*, courts confirm standing for FDCPA and like claims based on false credit-reporting and similar harms. *Ewing*, 24 F.4th at 1152–54.

Plaintiffs and Class members suffered multiple harms giving rise to both constitutional injury and statutory relief under all statutes here—no Plaintiff lacks standing or means of relief, as Defendants claim.  But even accepting their argument (which is wrong),[12] at minimum each Plaintiff has constitutional and statutory standing for: (1) FDCPA statutory damages only, based on Article III injuries of wrongful use of suit and false credit-reporting, *Ewing*, 24 F.4th at 1152–54;[13] and (2) GBL injunctive relief, based on false credit-reporting, *see* Pls.' Opp., at 13–14.

### D. *TransUnion* Did not Change The Law Of This Case Regarding *Rooker-Feldman*

Defendants incorrectly assert that *TransUnion* somehow bars those Plaintiffs who suffered garnishment from seeking actual damages. (Defs.' 3d Br., at 8–10). *TransUnion* addresses none

---

[12] The record here confirms Defendants falsely reported negative credit information against every Class member, per Defendants' internal protocols; and this negative reporting harmed individually, as it inevitably would. (Pls.' Opp., at 6–8, 10–12; *see also* Pls.' Decl., Ex. 1-D). Defendants take issue with the fact the operative pleading expressly asserts negative credit-reporting as to some Plaintiffs, but not others. (Defs.' 3d Br., at 7). This merely reflects Plaintiffs' lack of discovery into Defendants' internal protocols at the time the controlling pleading was filed, roughly three years ago. If Defendants had timely raised *TransUnion*-related arguments they failed to make throughout Rule 23 briefing, Plaintiffs could've requested re-pleading at an appropriate time. (Pls.' Opp., at 2–3, 13–14).  Plaintiffs cannot be penalized now for Defendants' delay in formulating their *TransUnion* argument.  *See* Part I.E, *infra*.  Last, Defendants' denial of garnishing Ms. Re Seaman, (Defs.' 3d. Br., at 8 n.7), is belied by the record, (Pls.' Decl., Ex. 2A).
[13] A flat, per-violation dollar penalty such as the FDCPA imposes could be the best means of redressing the harm caused by false credit-reporting like Defendants', which might be difficult to quantify precisely, or amount to relatively small sums individually. *See Anderson*, 2022 Bankr. LEXIS 1530, at *86 (setting per-violation penalty of up to $1,000 for each instance of falsely reporting negative credit information).

of the arguments Defendants use to form this conclusion.  Defendants' argument concerns the *Rooker-Feldman* doctrine, which *TransUnion* did not even mention.  According to Defendants, confirming Plaintiffs' constitutional standing to bring FDCPA and similar claims would later force the Court to grant actual damages that "this Court clearly cannot [award] under *Rooker-Feldman*." (*Id.* at 9).  This appears to be an inappropriate attempt to relitigate a lost argument: as Defendants admit, "this Court rejected [their] *Rooker-Feldman* argument in the 2019 ruling."  (*Id.*).  In any event, no court has recognized any relationship between *TransUnion* and the *Rooker-Feldman* doctrine.  Defendants only rely on *Maddox*, (Defs.' 3d Br., at 10), which says nothing about *Rooker-Feldman* either, *see generally* 19 F.4th at 60–66.[14]

Defendants are also wrong in their similar argument that *TransUnion* somehow bars claims for actual damages incurred by those who fought back in state court.  (Defs.' 3d Br., at 6 n.5). Such Plaintiffs' entitlement to seek these damages is the law of the case, (Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 714 n.29), and Defendants' lone post-*TransUnion* cite is unavailing.[15]

### E. **Defendants' Third Brief Should Be Ignored, As Its Arguments Came Too Late**

Defendants had many months and numerous opportunities to make all of the points raised in their third brief.  (Ord. of May 6, at 3).  The Court directed Defendants to justify their delay in

---

[14] In post-*TransUnion* litigation analogous to this one, the court <u>separately considers</u> *Rooker-Feldman* and *TransUnion* issues, without collapsing the two concepts as Defendants now demand. *See Velez-Aguilar*, 2022 U.S. Dist. LEXIS 8842, at *4–18 (analyzing separately whether the plaintiff's claims of FDCPA violations during state-court action were barred by (1) the *Rooker-Feldman* doctrine; or, (2) *TransUnion*'s interpretation of Article III standing).

[15] Defendants rely on one recent ruling by a court in the Northern District of Illinois. (Defs.' 3d Br., at 6 n.5 (citing *Milisavljevic v. Midland Credit Mgmt.*, No. 19-cv-8449, 2022 U.S. Dist. LEXIS 12186 (N.D. Ill. Jan. 24, 2022))).  However, that ruling reflects a minority view rejected by fellow courts in the Seventh Circuit.  *See Anthony v. F.S.B*, No. 21-cv-2509, 2022 U.S. Dist. LEXIS 58998, at *11–12 (N.D. Ill. Mar. 30, 2022) (confirming standing from harm of cost of defending against bad-faith suit) (citing *Deiker v. TrueAccord Corp.*, 2021 U.S. Dist. LEXIS 188820, at *8–9 (N.D. Ill. Sept. 30, 2021)); *Lako v. Portfolio Recovery Assocs.*, No. 20-cv-355, 2021 U.S. Dist. LEXIS 145776, at *8–9 (W.D. Wis. Aug. 4, 2021) (same).

their third brief, (*see id.*), but Defendants non-responsively made vague references to the idea that standing may be addressed at any time, (Defs.' 3d Br., at 1 n.1). Under Defendants' poor logic, courts would be forced to address a standing challenge anytime a judge anywhere in the country interprets an important decision like *TransUnion*. Also, courts would have to put up with litigants' stating one thing in briefs, but the opposite at argument, as Defendants have. (Tr., 31:22–32:6).

While it's true this Court must consider standing under controlling precedent before allowing the case to proceed, this principle in no way permits Defendants to constantly shift their position on the same precedent, whenever they feel like it. *See Nova Design Build, Inc. v. Grace Hotels, LLC*, No. 08-cv-2855, 2008 U.S. Dist. LEXIS 76439, at *11 (N.D. Ill. Sept. 30, 2008) (rejecting as "improper" Rule 12(b)(1) argument raised for first time in reply when it could've been raised earlier); *see also Giuffre v. Andrew*, No. 21-cv-6702, 2022 U.S. Dist. LEXIS 6659, at *43 n.106 (S.D.N.Y. Jan. 11, 2022) (Kaplan, J.) (forbidding arguments first raised at oral argument) (cited by Ord. of May 6, at 3). Under the circumstances here, this Court should "ensure fairness" by refusing to consider the belated, inconsistent standing arguments in Defendants' third brief. *Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP*, No. 03-cv-5560, 2009 U.S. Dist. LEXIS 12471, at *4–6 (S.D.N.Y. Feb. 18, 2009) (Pitman, Mag. J.). If these Defendants and attorneys need a year to develop a consistent *TransUnion* argument, that's their problem. Penalizing them will have no chilling effect on the many defendants and counsel in the countless other cases in which *TransUnion* arguments have been timely and consistently raised. *See id.*

## II.     CONCLUSION

For the reasons set forth above, this Court deny Defendants' Motion. If, in the alternative, the Court perceives any merit in the motion, the Court should grant Plaintiffs opportunity to replead and supplement the record.

Dated: New York, New York
June 9, 2022

      Respectfully submitted,

      **FRANK LLP**

      By:   */s/ Gregory A. Frank*
      Gregory A. Frank (GF0531)
      Marvin L. Frank (MF1436)
      Asher Hawkins (AH2333)
      305 Broadway, Suite 700
      New York, New York 10007
      Tel: (212) 682-1853
      Fax: (212) 682-1892
      gfrank@frankllp.com
      mfrank@frankllp.com
      ahawkins@frankllp.com

      *Counsel for Plaintiffs and the Classes*