UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | | |
|---|---|---|
| KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) | No. 18-cv-1781 |
| | ) | |
| Defendants. | ) ) | |

———————————————————————

| | | |
|---|---|---|
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) | No. 18-cv-7692 |
| | ) | |
| | ) | **FILED VIA ECF** |
| | ) | |
| Defendants. | ) ) | |

———————————————————————

**PLAINTIFFS' RESPONSES TO DEFENDANTS' JOINT OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
OF MARCH 13, 2023 CONCERNING ARTICLE III STANDING
AND RULE 23 CERTIFICATION**

## TABLE OF CONTENTS

I. LEGAL STANDARD ................................................................................................ 3

II. ARGUMENT ....................................................................................................... 3

    A.    Plaintiffs And Class Members Enjoy Article III Standing ............................................... 3

    B.    No Plaintiff Or Class Member Here Is Barred By *Rooker-Feldman* ......................... 8

    C.    Plaintiffs' Class Certification Motion Should Be Granted ......................................... 16

    D.    Defendants' Miscellaneous Arguments Fail ............................................................. 23

III. CONCLUSION .................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)............................................................................................. 20

*Anderson v. Credit One Bank. (In re Anderson),*
    641 B.R. 1 (Bankr. S.D.N.Y. 2022) ..................................................................... 16

*Anthony v. F.S.B,*
    No. 21-cv-2509, 2022 U.S. Dist. LEXIS 58998 (N.D. Ill. Mar. 30, 2022) ............. 16

*Atkinson v. ForceField Energy Inc. (In re ForceField Energy Inc. Sec. Litig.),*
    Nos. 15-cv-3020, -3141 & -3729,
    2015 U.S. Dist. LEXIS 95614 (S.D.N.Y. July 22, 2015) ....................................... 20

*Benjamin v. Rosenberg & Assocs., LLC,*
    No. 19-cv-3012, 2021 U.S. Dist. LEXIS 161302 (D.D.C. Aug. 26, 2021) ............... 5

*Bump v. Betts,*
    19 Wend. 421 (N.Y. Sup. Ct. 1838) ................................................................. 4, 7

*Butela v. Midland Credit Mgmt.,*
    341 F.R.D. 581 (W.D. Pa. 2022) ............................................................................ 6

*Deebs v. Alstom Transp., Inc.,*
    346 F. App'x 654 (2d Cir. 2009) .................................................................... 23, 24

*Deiker v. TrueAccord Corp.,*
    2021 U.S. Dist. LEXIS 188820 (N.D. Ill. Sept. 30, 2021) ..................................... 16

*Deutsch v. D&A Servs. LLC,*
    No. 22-1042, 2023 U.S. App. LEXIS 9161 (3d Cir. Apr. 18, 2023).......................... 6

*Dist. of Columbia Ct. of Appeals v. Feldman,*
    460 U. S. 462 (1983)................................................................................... passim

*Durden v. DNF Assocs.,*
    No. 22-cv-799S, 2023 U.S. Dist. LEXIS 4592 (W.D.N.Y. Jan. 10, 2023) ............... 16

*Frost v. Lentex Co., LLC,*
    No. 20-cv-5313, 2022 U.S. Dist. LEXIS 231948 (S.D.N.Y. Dec. 27, 2022).......... 24

*Hansen v. Miller*,
  52 F.4th 96 (2d Cir. 2022) ....................................................................................... 9

*Herskovic v. Verizon Wireless*,
  No. 19-cv-03372, 2023 U.S. Dist. LEXIS 58342 (E.D.N.Y. Apr. 3, 2023) .............................. 10

*Ho v. Dowell (In re Ho)*,
  274 B.R. 867 (B.A.P. 9th Cir. 2002) ........................................................................ 20

*Hoblock v. Albany Cnty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ............................................................................... 9, 11

*Hoffman v. Transworld Sys.*,
  No. C18-1132, 2023 U.S. Dist. LEXIS 13790 (W.D. Wash. 2023 Jan. 26, 2023).................. 17

*Husainy v. Gutwein LLP*,
  No. 18-cv-28, 2022 U.S. Dist. LEXIS 163809 (N.D. Ind. Sept. 9, 2022) ............................. 16

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ............................................................................. 19, 20

*Lako v. Portfolio Recovery Assocs.*,
  No. 20-cv-355, 2021 U.S. Dist. LEXIS 145776 (W.D. Wis. Aug. 4, 2021) ........................... 16

*Laurens v. Volvo Car United States*,
  No. 2:18-cv-08798, 2020 U.S. Dist. LEXIS 256702 (D.N.J. Dec. 8, 2020) .......................... 21

*Lewis v. Legal Servicing, LLC*,
  No. 19-cv-8085, 2022 U.S. Dist. LEXIS 125278 (S.D.N.Y. Mar. 15, 2022)......................... 15

*Loeffler v. Staten Island Univ. Hosp.*,
  No. 95-cv-4549, 2010 U.S. Dist. LEXIS 24274 (E.D.N.Y. Mar. 16, 2010)........................... 24

*Maddox v. Bank of New York Mellon Trust*,
  19 F.4th 58 (2d Cir. 2021) ............................................................................... 7, 8

*Makhnevich v. Bougopoulos*,
  No. 18-cv-285, 2022 U.S. Dist. LEXIS 57706 (E.D.N.Y. Mar. 29, 2022)............................. 5

*McCrobie v. Palisades Acquisition XVI, LLC*,
  664 F. App'x 81 (2d Cir. 2016) .......................................................................... 15

*McRobie v. Palisades Acquisition XVI, LLC*,
  No. 15-cv-18, 2022 U.S. Dist. LEXIS 38778 (W.D.N.Y. Mar. 4, 2022) ........................... 5, 13

*Midland Funding LLC v. Austinnam*,

　　No. 2959-13, 2015 N.Y. Misc. LEXIS 9 (N.Y. City Ct., Mt. Vernon; Jan. 6, 2015) .............. 13

*Midland Funding LLC v. Roulhac*,

　　No. 4100-12, 2014 N.Y. Misc. LEXIS 5655 (N.Y. City Ct., Buffalo; Jan. 13, 2014) ............ 13

*Milisavljevic v. Midland Credit Mgmt.*,

　　581 F. Supp. 3d 1020 (N.D. Ill. 2022) ................................................................... 16

*Mitchell v. Bigelow (In re Mitchell)*,

　　418 B.R. 282 (B.A.P. 8th Cir. 2009) ..................................................................... 20

*Panebianco v. Selip & Stylianou, LLP*,

　　No. 21-cv-5466, 2022 U.S. Dist. LEXIS 23308 (E.D.N.Y. Feb. 9, 2022) ................................. 5

*Pangburn v. Bull*,

　　1 Wend. 345 (N.Y. Sup. Ct. 1828) ......................................................................... 4

*Pickett v. Midland Funding, LLC*,

　　No. 22-cv-13071, 2023 U.S. Dist. LEXIS 41420 (E.D. Mich. Jan. 17, 2023) .................. 12, 13

*Reed v. Goertz*,

　　No. 21-442, 2023 U.S. LEXIS 1665 (Apr. 19, 2023) ...................................................... 11

*Rodowicz v. Stein*,

　　No. 20-cv-00710, 2023 U.S. Dist. LEXIS 23651 (D. Conn. Feb. 13, 2023) ........................... 14

*Sykes v. Mel Harris & Assocs., LLC*,

　　285 F.R.D. 279 (S.D.N.Y. 2012) ........................................................................... 20

*Sykes v. Mel Harris & Assocs., LLC*,

　　757 F. Supp. 2d 413 (S.D.N.Y. 2010) ..................................................................... 12

*Sykes v. Mel Harris & Assocs., LLC*,

　　No. 09-cv-8486, 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016) ............................ 19

*Sykes v. Mel S. Harris & Assocs. LLC*,

　　780 F.3d 80 (2d Cir. 2015) ........................................................................... passim

*TransUnion LLC v. Ramirez*,

　　141 S. Ct. 2190 (2021) ............................................................................... passim

*Velez-Aguilar v. Sequium Asset Sols.*,

　　No. 21-cv-14046, 2022 U.S. Dist. LEXIS 8842 (D.N.J. Jan. 18, 2022) ............................. 6, 10

*Viernes v. DNF Assocs., LLC,*

No. 19-cv-316, 2022 U.S. Dist. LEXIS 14777 (D. Haw. Jan. 27, 2022)................................... 5

*Vincent v. Money Store,*

304 F.R.D. 446 (S.D.N.Y. 2015) ............................................................................... 20, 21

*Vossbrinck v. Accredited Home Lenders, Inc.,*

773 F.3d 423 (2d Cir. 2014) ......................................................................................... 8, 9

*Waterer v. Freeman,*

(1618) 80 Eng. Rep. 412; Hobart 266 .............................................................................. 4

## Statutes

15 U.S.C. § 1681 et seq............................................................................................... 1, 10

15 U.S.C. § 1692 et seq.............................................................................................. passim

N.Y. Gen. Bus. Law § 349........................................................................................... passim

N.Y. Jud. Law § 487 ................................................................................................. passim

## Rules

22 NYCRR § 130-1.1a.................................................................................................... 13

CPLR 5015(c) ............................................................................................................. 22

Fed. R. Civ. P. 12 ..................................................................................................... passim

Fed. R. Civ. P. 23 ..................................................................................................... passim

## Treatises

Restatement (Second) of Torts § 674 (1977) ............................................................................ 6, 7

## Constitutional Provisions

U.S. Const., art. III, § 2 ............................................................................................ passim

Plaintiffs[1] respectfully respond to Defendants' Rule 72 objections to the parts of Magistrate Judge Moses's Report and Recommendation of March 24, 2023 (the "R&R")[2] that denied Defendants' Rule 12(b)(1) motion challenging Plaintiffs' Article III standing; and granted Plaintiffs' Rule 23 motion for class certification.

Defendants' objections to both standing and certification are all premised on woeful mischaracterizations of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ("*TransUnion*"), which their objections cite on nearly every page. (Objs. at 1–24.) But *TransUnion* involved no debt collections, no sham state-court lawsuits, and none of the statutes upon which Plaintiffs' claims here are based (FDCPA, GBL, and § 487).[3]

The R&R correctly recognized *TransUnion*'s limitations. *TransUnion* involved claims about credit-reporting technicalities alleged to have violated the FCRA. The *TransUnion* court unremarkably held there is no Article III standing for a FCRA claim where a credit bureau's internal files contain incorrect information about a consumer, but there is no chance this information will make its way into the actual credit report available to the public. *See* 141 S. Ct.

---

[1] Plaintiffs are Katherine Seaman, Mary Re Seaman, Sandra Tabar, Christina Bifulco, Francis Butry, and Cori Frauenhofer, in their own rights and on behalf of the classes of similarly situated individuals (the "Class") (together, "Plaintiffs"). "TSI" as used herein collectively refers to Defendants Transworld Systems, Inc. ("Transworld"), in its own right and as successor to NCO Financial Systems, Inc. ("NCO"), and EGS Financial Care Inc. ("EGS"), formerly known as NCO. "Trusts" collectively refers to Defendants National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2004-2, and National Collegiate Student Loan Trust 2006-4. "Forster" as used herein refers to Defendant Forster & Garbus LLP. Together, TSI, the Trusts, and Forster collectively are referred to herein as "Defendants". References to "CCAC ¶__" are to paragraphs of the operative pleading. References to "Objs. at __" are to Defendants' Rule 72 objections.

[2] Dkt. No. 423 in Case No. 18-CV-1781, and Dkt. No. 346 in Case No. 18-CV-7692.

[3] Plaintiffs' claims are under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; N.Y. Gen. Bus. Law § 349 ("GBL"); and N.Y. Jud. Law § 487 ("§ 487"). References herein to "FCRA" are to the separate statute at issue in *TransUnion*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

at 2208–13.  The majority likened such a consumer to a motorist who is traveling ahead of a reckless driver but is close enough to home to make it to safety without "a serious likelihood of" a crash.  *Id.* at 2211–12.

Here, in contrast, Plaintiffs are like unlucky drivers whom Defendants crashed into before they could get to safety.  As the R&R held, each Plaintiff and Class member was sued in state court and then had a default judgment publicly entered against them, entailing garnishments and other concrete harms, making them eligible for actual and statutory damages.  (R&R at 38–48 (analyzing *TransUnion* and related precedent)).

Defendants also try to expand the precedential scope of *TransUnion*, to improperly (1) renew the subject-matter jurisdictional challenge already rejected by this Court, and (2) attack this Circuit's controlling Rule 23 precedent in analogous cases.  Although *TransUnion* <u>only</u> addressed Article III standing, Defendants incorrectly insist *TransUnion* somehow changed the law of the *Rooker-Feldman*[4] doctrine, (Objs. at 12–19), which *TransUnion* does not mention.  No court has found that *TransUnion* impacted *Rooker-Feldman*; courts separately analyze standing under *TransUnion*, and the *Rooker-Feldman* doctrine, as distinct concepts.

This Court has already rejected the same *Rooker-Feldman* arguments and cited precedent that Defendants resubmit.  *See* Ord. of Oct. 11, 2019, 419 F. Supp. 3d 668, 686–88 & n.5–6 (Gardephe, J.) (denying, *inter alia*, Defendants' Rule 12(b)(1) motion based on *Rooker-Feldman*).

As to certification, Defendants argue that *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 80 (2d Cir. 2015) ("*Sykes III*")), the Second Circuit authority relied upon by the R&R for class certification, is no longer good law after *TransUnion*—because *Sykes III* rejected a *Rooker-*

---

[4]  *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U. S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U. S. 413 (1923).

*Feldman* challenge.  Again, according to Defendants, *TransUnion* somehow changed *Rooker*-— despite saying nothing about it.  (*See id.*).  No court has found that *TransUnion* impacted *Rooker-Feldman*, and there is no basis for second-guessing *Sykes III*.  Defendants' long chain of logical flaws is nonsense.

This Court should overrule Defendants' Rule 72 objections.

## I.   <u>LEGAL STANDARD</u>

Modification of a report and recommendation is appropriate only if the Court has overlooked a material matter of fact[5] or law in rendering its decision.  Fed. R. Civ. P. 60; *see Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000); *see also* Fed. R. Civ. P. 72(a) & -(b)(3).  Defendants' objections fail this test.

## II.   <u>ARGUMENT</u>

### A.   <u>Plaintiffs And Class Members Enjoy Article III Standing</u>

#### 1.   <u>The R&R Correctly Rejected Defendants' Standing Arguments</u>

Defendants argue that the R&R erred in finding standing for each Plaintiff and the Class.  (Objs. at 6–19).  Defendants assert that a state-court collection suit cannot itself cause concrete harm.  (*Id.*).  Yet, Defendants implicitly admit that standing exists here.  One of Defendants' arguments is that an individual sued in state court <u>would have</u> suffered concrete harm, and thus have standing, "had a default been taken against him."  (*Id.* at 15).  But this is precisely what the R&R said in confirming standing here—the R&R limits the Class to those against whom

---

[5]  For fact references herein, Plaintiffs generally rely on the R&R's thorough discussion of the background of this case and the instant motion practice.  (R&R at 6–24).  Where additional fact references are necessary, Plaintiffs cite to the relevant portion of the record and its corresponding entry on the ECF docket.

Defendants obtained default judgment after suing them in state court. (R&R at 63). This negates Defendants' standing challenge.

As the R&R explains, during the underlying motion practice the R&R narrowed the Class definition to <u>only</u> those individuals who have been sued in state court <u>and</u> had a <u>default judgment</u> entered against them. (R&R at 23–24, 63). At the outset of the instant motion practice, Plaintiffs proposed a class definition encompassing <u>any</u> individual who had been sued in one of Defendants' collection suits. At a court hearing held while the motions were pending, Magistrate Judge Moses expressed concern that the originally proposed class definition might encompass individuals who potentially lacked standing per *TransUnion*. The Court reasoned that merely being sued in a collection suit does not inherently harm an individual or place him at risk of harm—unless judgment is entered against him. (*See id.*). By the time the R&R was issued, the Class definition had been narrowed to <u>only</u> individuals who had been sued and had default judgments entered against them. (R&R at 63). Thus, under Defendants' own logic, (Objs. at 15), their objection to standing fails.

### 2.   <u>No Case Supports Defendants' Standing Challenge</u>

Plaintiffs' injuries asserted here are concrete pursuant to *TransUnion*, because they bear a close relationship to harms traditionally recognized as redressable in Anglo-American law. (R&R at 30, 42–43; *see TransUnion*, 141 S. Ct. at 2208–09).[6]

---

[6]  The harms from wrongful use of civil proceedings have been recognized at common law for at least four hundred years. *See, e.g.*, *Waterer v. Freeman*, (1618) 80 Eng. Rep. 412, 413; Hobart 266, 267 ("[I]f a man sue me in a proper Court, yet if his suit be utterly without ground of truth, and that certainly known to himself, I may have an action of the case against him for the undue vexation and damage that he putteth me unto by his ill practice."); *see, e.g.*, *Pangburn v. Bull*, 1 Wend. 345, 351–52 (N.Y. Sup. Ct. 1828) (same); *Bump v. Betts*, 19 Wend. 421, 422 (N.Y. Sup. Ct. 1838) (same).

Following *TransUnion*, courts have consistently confirmed standing for plaintiffs exerting claims for wrongful prosecution of a civil suit.  *Makhnevich v. Bougopoulos*, No. 18-cv-285, 2022 U.S. Dist. LEXIS 57706, at *16 n.7 (E.D.N.Y. Mar. 29, 2022) (Matsumoto, J.) (Because "Plaintiff[s'] claims concern Defendants' alleged misconduct during the [state c]ourt action, Plaintiff[s'] claims share 'a close relationship [with] harms traditionally recognized as providing a basis for lawsuits in American courts.'" (quoting *TransUnion*, 141 S. Ct. at 2204)); *see Panebianco v. Selip & Stylianou, LLP*, No. 21-cv-5466, 2022 U.S. Dist. LEXIS 23308, at *3–4 (E.D.N.Y. Feb. 9, 2022) (Hurley, J.) (citing *TransUnion*) (Article III standing for FDCPA/GBL plaintiff who claimed debt collector sued him without ensuring service of complaint was sufficiently discreet).[7]

Defendants object that the R&R erred in relying on such precedent.  (Objs. at 14–15 & n.8 (discussing R&R at 38–48 and cited cases)).  According to Defendants, "most of the cases cited by the R&R" are distinguishable because these involved federal-court plaintiffs complaining about being sued in state-court actions in which they appeared—while Plaintiffs here did not appear and so had default judgments against them.  (Objs. at 14–15 & n.8 (emphasis added)).  This argument fials: Courts following *TransUnion* have confirmed standing where the harm was connected to default judgment, as the R&R recognized.  (R&R at 41 (citing *McRobie v. Palisades Acquisition XVI, LLC*, No. 15-cv-18, 2022 U.S. Dist. LEXIS 38778, at *40 (W.D.N.Y. Mar. 4, 2022) (Roemer, Mag. J.) (confirming Article III injury where defendants unlawfully collected on state-court default

---

[7]  *See also Viernes v. DNF Assocs., LLC*, No. 19-cv-316, 2022 U.S. Dist. LEXIS 14777, at *17–18 (D. Haw. Jan. 27, 2022) (standing for FDCPA claims alleging violations during collection suit, which bear close relationship to historical tort of "wrongful use of civil proceedings"); *Benjamin v. Rosenberg & Assocs., LLC*, No. 19-cv-3012, 2021 U.S. Dist. LEXIS 161302, at *17–19 (D.D.C. Aug. 26, 2021) (same, discussing history of "common-law unjustifiable-litigation torts").

judgment despite lacking chain of title, and "still maintain they have a right to collect a debt from" him))).

Similarly, Defendants are wrong that the harms here fail *TransUnion*'s historical-relationship test, because (Defendants say) the tort of wrongful civil proceeding requires facts not present here: the claimant had to have appeared in the underlying civil proceeding, and had to be successful therein against the party now being sued.  (Objs. at 14–15 & n.9 (citing R&R at 42 n.25, and Restatement (Second) of Torts § 674 (1977))).

This argument fails for two reasons.  First, *Transunion* does not require that the harm being asserted by a federal-court plaintiff "exact[ly] duplicate" the traditionally recognized cause of action—the two harms merely must have a "close relationship."  *TransUnion*, 141 S. Ct. at 2209 (emphasis added).  In fact, courts in FDCPA cases have interpreted *TransUnion* as confirming the existence of concrete harm even where the collector merely threatens legal action without justification.  *Butela v. Midland Credit Mgmt.*, 341 F.R.D. 581, 588 (W.D. Pa. 2022) (standing where defendant falsely told plaintiff that collection suit had been filed in state court).[8]

Second, Defendants' argument also fails because it is predicated on a misreading of the Restatement.  The language of the Restatement concerning the tort of wrongful civil proceeding makes clear that the tort's requirement of prior success applies "except when the[ proceeding is] ex parte"—which is precisely the situation here, as Defendants obtained default judgments against

---

[8]  *See also Velez-Aguilar v. Sequium Asset Sols.*, No. 21-cv-14046, 2022 U.S. Dist. LEXIS 8842, at *6–12 (D.N.J. Jan. 18, 2022) (defendant threatened to sue over unpaid judgment beyond limitations period); *cf. Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 U.S. App. LEXIS 9161, at *4–9 (3d Cir. Apr. 18, 2023) (confirming standing where FDCPA plaintiff alleged collector left out of collection letter required language that is supposed to inform consumers of legal rights in disputing a debt).

Plaintiffs and Class members in their absence.  Restatement (Second) of Torts § 674(b) (1977) (emphasis added).[9]

### 3.   The R&R Properly Applies The Second Circuit's "*Maddox II*" Decision

Defendants argue that the R&R misapplies *Maddox v. Bank of New York Mellon Trust*, 19 F.4th 58 (2d Cir. 2021) ("*Maddox II*").  (Objs. at 15–16 & n.10).  According to Defendants, the R&R erred in distinguishing *Maddox II* from the instant case "based on matters of degree" in severity between the harms asserted in *Maddox* and those here.  (Objs. at 16 n.10 (citing R&R at 43–44)).

In *Maddox*, the plaintiffs claimed their bank violated state mortgage-recordation requirements by failing to immediately update mortgage records about a mortgage satisfaction, such that there was a short time period during which it appeared that the plaintiffs had not fully satisfied the loan.  The Second Circuit deemed any consequences of the bank's error non-concrete for purposes of Article III standing.  *Maddox II*, 19 F.4th at 64–65.  The R&R correctly distinguished the injuries here from the alleged injuries in *Maddox II*, which the R&R noted were "significantly less damaging and significantly less public."  (R&R at 43–44).

The R&R's degree-of-harm analysis accords with both *Maddox II* and *TransUnion*.  First, *Maddox II* emphasized that the harm there (the bank's <u>delay</u> in recording the mortgage satisfaction) was not concrete because the misinformation was temporary and quickly remediated.  *Maddox II*, 19 F.4th at 64–66.  Here, the Defendants haven't remediated anything.  Moreover, *Maddox II* anticipated that, in future cases, individuals with non-temporary harms would have standing.  *See*

---

[9] *See also* Black's Law Dictionary, at 616 (8th ed. 2004) (defining "ex parte" as "from one party only, usu[ally] without notice to or argument from the adverse party.").  For hundreds of years, Anglo-American courts have upheld torts for wrongful civil proceeding where the underlying proceeding took place in the absence of the party presently pursuing the tort.  *See Bump v. Betts*, 19 Wend. 421, 422 (N.Y. Sup. Ct. 1838).

*id.* The R&R correctly likened Plaintiffs' <u>permanent</u> harms as a result of Defendants' wrongful use of civil proceedings, to the non-temporary, concrete harms that *Maddox II* predicted in future cases. (R&R at 43–44).[10]

### B. <u>No Plaintiff Or Class Member Here Is Barred By The *Rooker-Feldman* Doctrine</u>

#### 1. <u>The R&R Already Addressed Defendants' *Rooker-Feldman* Concerns</u>

Defendants are wrong that the R&R's *Rooker-Feldman* analysis somehow permits claims that violate this doctrine by challenging valid state-court judgments. (Objs. at 16–19). In fact, Magistrate Judge Moses already considered and addressed Defendants' *Rooker-Feldman* concerns before issuing the R&R.

During the court hearing mid-briefing, Judge Moses expressed concern that the proposed definition would encompass the handful of individuals (as indicated by class-sampling data) who appeared in state court to defend the action but lost after trial. (*See* R&R. at 19–20, 23–24; *see also id.* at 4 n. 4). The R&R approved a Class definition that excluded individuals who fought back in state court and lost. (*Id.* at 3–4 & n.4, 63–64).

Further, the R&R squarely addressed the precedent upon which Defendants' objections rely. Defendants' primary *Rooker-Feldman* case is *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014). (Objs. at 11, 16, 24 (citing *Vossbrinck*). But, as the R&R noted, (R&R at 46–47 (listing cases)), since *Vossbrinck* was issued the Second Circuit has re-emphasized that *Rooker-Feldman* "generally does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court

---

[10]   Defendants are wrong that post-*TransUnion* standing analysis should ignore "matters of degree" of harm. (Objs. at 16 n.10). *TransUnion* requires that the asserted harm must be sufficiently severe to be concrete. *See TransUnion*, 141 S. Ct. at 2209. The R&R committed no error. (R&R at 43–44).

proceeding, because the adjudication of such claims would 'not require the federal court to sit in review of the state court judgment.'"  *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (quoting *Vossbrinck*, 773 F.3d at 427).

Defendants' continued pursuit of a *Rooker-Feldman* challenge is baseless.[11]

## 2.   The Law Of This Case Precludes Defendants' *Rooker-Feldman* Challenge

Defendants argue that this Court needs to reconsider the same *Rooker-Feldman* arguments it rejected during the Rule 12 motion practice earlier in the case, (Objs. at 12–13), because this Court's original Rule 12 decision was somehow insufficient because it "made relatively short work" of its *Rooker-Feldman* analysis.  (*Id.* (discussing Ord. of Oct. 11, 2019, 419 F. Supp. 3d 668 (Gardephe, J.))).  This argument is without basis.

This Court's 2019 decision devoted three careful pages to its *Rooker-Feldman* analysis, explaining in detail why Defendants' cited precedent was distinguishable or inapplicable.  *See* Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 686–88 & n.5–6.  Defendants' belated objections offer no new *Rooker-Feldman* authority since the Court's decision.  *Compare* Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 686–87 (distinguishing, inter alia, *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84, 88 (2d Cir. 2005)); *with* Objs. at 10–13, 16–19 (Defendants again cite *Hoblock*, and other pre-2019 cases, in support of renewed *Rooker-Feldman* challenge).

---

[11]   Defendants assert in a footnote that Defendants' success in a handful of state-court trials disproves Plaintiffs' theory that the collection suits were shams.  (Objs. at 2 n.2).  However, the R&R's changes to the Class definition negated any possible *Rooker-Feldman* issues by excluding individuals who actually fought and lost in state court.  In any event, the record refutes Defendants' assertion that their few successful state-court trials were untainted by fraud.  Discovery here showed that Defendants' state-court witnesses were trained to make false statements to state-court judges about chain of title, the key issue in every collection suit.  (Pls.' Counsel's (Hawkins) Decl. in Further Supp. Pls.' Class Cert. Mot. at ¶ 35 & n.19 (Dkt. No. 336 in Case No. 18-cv-1781)).

### 3. *TransUnion* Did Not Change The Law Regarding *Rooker-Feldman*

Because Defendants are precluded from relitigating their *Rooker-Feldman* challenge, they pretend that *TransUnion* was somehow relevant to the *Rooker-Feldman* doctrine (Objs. at 12–13). However, *TransUnion* only involved Article III standing, and said nothing about the conceptually distinct *Rooker-Feldman* doctrine.

Nevertheless, Defendants beg this Court to erode the distinction between the two concepts. Under Defendants' convoluted theory, "Plaintiffs' only alleged injuries that might satisfy the *TransUnion* standard"—e.g., garnishments—"are inextricably intertwined with the state court judgments" and so are barred by *Rooker-Feldman*. (Objs. at 12–13, 16–19). The R&R properly rejected this argument as irrelevant. The issue is whether an injury such as garnishment confers standing. (R&R at 46 n.28).[12]

No court has recognized Defendants' proposed relationship between *TransUnion*'s Article III principles and the *Rooker-Feldman* doctrine. In post-*TransUnion* litigation comparable to this one, courts separately consider *Rooker-Feldman* and standing issues without collapsing the two concepts as Defendants now demand. *See Velez-Aguilar*, 2022 U.S. Dist. LEXIS 8842, at *4–18 (analyzing separately whether the plaintiff's claims of FDCPA violations during state-court action were barred by (1) the *Rooker-Feldman* doctrine; or, (2) Article III's standing requirement); *see also Herskovic v. Verizon Wireless*, No. 19-cv-03372, 2023 U.S. Dist. LEXIS 58342, at *11–13 (E.D.N.Y. Apr. 3, 2023) (Gonzalez, J.) (same approach, for claims under FCRA).

---

[12] As the R&R also observed, Defendants' theory about a link between *TransUnion* and *Rooker-Feldman* fails because Defendants are not actually raising an argument about Article III concreteness—the only issue in *TransUnion*—and are instead arguing about the different constitutional concept of redressability. (R&R at 44–45). Because *TransUnion* "did not alter the 'redressability' analysis, and said nothing at all about *Rooker-Feldman*," the R&R properly found, "there is no reason to reconsider Judge Gardephe's *Rooker-Feldman* analysis, which is the law of the case." (*Id.* at 45).

Finally, just a few days ago the Supreme Court rejected a similar request to erode the distinction between standing and *Rooker-Feldman*.  In *Reed v. Goertz*, the nine-justice majority were asked to erode the distinction between Article III standing and *Rooker-Feldman*, but instead treated them as conceptually distinct.  *Reed*, No. 21-442, 2023 U.S. LEXIS 1665, at *7–8 (Apr. 19, 2023) (Kavanaugh, J.).  The plaintiff in *Reed* was a death-row inmate who filed federal due-process claims against a state official after a state court refused his bid for post-conviction DNA testing.  *Id.* at *4–6.  The defendant in *Reed* challenged federal-court jurisdiction on the bases of both standing and *Rooker-Feldman*—but the justices refused to collapse the analyses of these distinct concepts, performing each analysis separately.  *Id.* at *7–8.

### 4.   The Second Circuit's Leading *Rooker-Feldman* Case Remains Good Law

Defendants wrongly argue that the Second Circuit's leading decision on *Rooker-Feldman*—*Sykes III*—is unreliable because it "made short work of the [*Rooker-Feldman*] argument in the case" and "included virtually no legal analysis" in validating that case's FDCPA, GBL, and § 487 claims, which are analogous to Plaintiffs' here.  (Objs. at 13 (discussing *Sykes III*)).  Defendants' second-guessing of *Sykes III* is unfounded, as the Second Circuit there devoted several pages of analysis to the *Rooker-Feldman* issue, and considered the same precedent that Defendants here repeatedly invoke.  *See Sykes III*, 780 F.3d at 94–96 & n.5 (citing, *inter alia, Hoblock*, 422 F.3d at 85).

Beyond misrepresenting the text of the Second Circuit's decision, Defendants list various other reasons why *Sykes III*'s *Rooker-Feldman* analysis, and precedent following it, should not apply here.  Although Defendants violate the law of this case by even raising these points, Plaintiffs address each below.

a) **The Facts Here And In *Sykes* Are Analogous**

Defendants wrongly argue that the facts here are distinguishable from those in *Sykes III*. Though both cases involve debt collectors filing sham state-court collection suits in pursuit of default judgments, Defendants say *Sykes* is "completely different" because it involved allegations of sewer service.  (Objs. at 13).

This is wrong: Both here and in *Sykes*, some of the named plaintiffs were subjected to sewer service, while some were not.  *Compare Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010) (Chin, J.) ("*Sykes I*") (noting that not all plaintiffs alleged sewer service), *with* R&R at 3, *and* CCAC ¶¶ 150–160 (one Plaintiff (Ms. Tabar) alleged sewer service, had default judgment vacated, and got collection suit discontinued).  Under *Sykes III*, these minor differences in underlying facts lend no support to any *Rooker-Feldman* challenge (and do not preclude class certification).  *See* 780 F.3d at 94–96.

b) **Defendants Cite No Case Limiting *Sykes III*'s *Rooker-Feldman* Holding**

Defendants argue that *Sykes III* was wrong to find no *Rooker-Feldman* bar against claims seeking damages for money extracted as a result of fraudulently obtained judgments, i.e., garnishments.  However, Defendants can find only a single, out-of-Circuit decision in support of this proposition.  (Objs. at 17–18 (citing *Pickett v. Midland Funding, LLC*, No. 22-cv-13071, 2023 U.S. Dist. LEXIS 41420 (E.D. Mich. Jan. 17, 2023)).  Yet *Pickett*, even if considered, only confirms that claims seeking damages for amounts garnished are not barred by *Rooker-Feldman*. The *Pickett* court emphasized that such claims are permitted where the defendant (1) actually collected money through the garnishment, and (2) committed some impropriety in the garnishment procedure.  *See* 2023 U.S. Dist. LEXIS 41420, at \*5–6.  The plaintiff in *Pickett* could find no evidence of either.  *Id.*

Here, in contrast, Plaintiffs have evidence to support both of *Pickett*'s factual requirements. First, there is no genuine dispute that Defendants garnished several Plaintiffs.  (R&R at 18 (analyzing the record)).   Second, the record shows Defendants committed fraud during the garnishment procedure itself.  When signing the subject garnishments, Forster attorneys falsely certified that, after an inquiry, they determined that "the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom."   Rules of the Chief Administrator of New York Courts (22 NYCRR) § 130-1.1a(b)(2)(i); *see also* FDCPA, 15 U.S.C. § 1592e(5) (proscribing acts "that cannot legally be taken").  Yet Forster are the same attorneys who, upon being hired to prosecute Trust actions, were told they would not be provided chain of title, but prosecuted these anyway.  New York courts have sanctioned and criticized debt-assignees and collection counsel for suing without chain of title.[13]

For similar reasons, Defendants are wrong that the R&R erred in relying on recent, in-Circuit precedent upholding FDCPA and GBL claims concerning garnishments extracted though the collector lacked chain of title.  (Objs. at 17 (discussing R&R at 40, and *McRobie v. Palisades Acquisition XVI, LLC*, No. 15-cv-18, 2022 U.S. Dist. LEXIS 38778 (W.D.N.Y. Mar. 3, 2022) (Roemer, Mag. J.))).  Defendants incorrectly argue that *McRobie* is distinguishable, because the collector there claimed to be the third-party assignee of an existing default judgment, rather than (as here) the purported assignee of actual loans.  (Objs. at 17).  According to Defendants, this factual distinction meant that the *McRobie* "plaintiff's claim for improper garnishment was

---

[13]  *Midland Funding LLC v. Austinnam*, No. 2959-13, 2015 N.Y. Misc. LEXIS 9, at *18–21 (N.Y. City Ct., Mt. Vernon; Jan. 6, 2015) (imposing sanctions against debt buyer and collection counsel for suing without chain of title); *Midland Funding LLC v. Roulhac*, No. 4100-12, 2014 N.Y. Misc. LEXIS 5655, at *2–3 (N.Y. City Ct., Buffalo; Jan. 13, 2014) (denying standing for lack of chain of title).

completely untied from the default judgment and did not challenge its validity," while Plaintiffs' claims here are about garnishments tied to default judgments. (*Id.*).

Defendants' attempt to distinguish *McRobie* fails, because the garnishments against Plaintiffs here were "untied" from the default judgments. Again, the record here confirms that Defendants' garnishments involved new frauds against Plaintiffs, distinct from any committed earlier in obtaining the default judgments. Further, under applicable state law (New York's) garnishment is a process separate from taking default judgment in a collection suit in state court.[14] Nothing in New York's garnishment law requires the party that won a collection suit to initiate garnishment. Rather, the garnishment process is separate from the judgment, and entails a series of independent, unilateral actions by the party seeking garnishment (and their counsel).

Under this Circuit's *Rooker-Feldman* precedent, the doctrine does not bar claims against misconduct in state court that the defendant voluntarily chooses to engage in for profit. *See Rodowicz v. Stein*, No. 20-cv-00710, 2023 U.S. Dist. LEXIS 23651, at *13 (D. Conn. Feb. 13, 2023) (Meyer, J.) (rejecting *Rooker-Feldman* challenge to claims concerning defendant's conduct in state court, where state court did not "require[]" the defendant to engage in the conduct at issue) (citing *Sykes III*, 780 F.3d at 94–95). Plaintiffs' claims here are valid because they are "not asking the federal courts to overturn the underlying state-court judgment[, but instead are] alleging that the Defendants' conduct in their attempts to collect on that judgment violated a federal statute and,

---

[14]   For example, the record here concerning Plaintiffs residing in Buffalo shows garnishment occurring when the state-court plaintiff (here, the Trusts) purchases a special index number in a different court and serves an income execution paper signed by the plaintiff's counsel without court order. Defendants' collection suits against Plaintiffs residing in Buffalo were prosecuted in Buffalo City Court, but the income execution was under a separate filing number, from Erie County Supreme Court. (*E.g.*, Pls.' Counsel's (Hawkins) Decl. in Supp. Pls.' Opp. re Defs.' Rule 12(b)(1) Mot, at Ex. 2B, at Bates Nos. FG_00610 & _620 (income execution against Plaintiff Bifulco) (Dkt. No. 390-8 in Case No. 18-cv-1781)).

as a result, [they are] entitled to money damages." *McCrobie v. Palisades Acquisition XVI, LLC*, 664 F. App'x 81, 83 (2d Cir. 2016) (rejecting *Rooker-Feldman* challenge to FDCPA and GBL claims for money damages stemming from unjust garnishments) (citing *Sykes III*, 780 F.3d at 94); *see Lewis v. Legal Servicing, LLC*, No. 19-cv-8085, 2022 U.S. Dist. LEXIS 125278, at *13 (S.D.N.Y. Mar. 15, 2022) (Wang, Mag. J.) (rejecting *Rooker-Feldman* challenge to FDCPA and § 487 claims for money damages suffered in connection with default judgment alleged to have been fraudulently obtained) (citing *Sykes III*).

### c)  <u>Defendants Ignore Other Damage Claims</u>

The crux of Defendants' *Rooker-Feldman* challenge, and criticism of *Sykes III*, is that Plaintiffs should not be able to rely on the fact of garnishments to prove injury.  (Objs. at 17–18). Even if this were true, which it is not, Plaintiffs adduced evidence of injuries that occurred <u>before</u>, and separate from, any garnishments.  Notably, each of Defendants' collection suits mysteriously inflated the balance of each Plaintiff's and Class member's alleged loan above the listed dollar amount in Defendants' own documents.  Specifically, each collection suit asserted that the debt included a loan-origination fee that was inflated beyond the fee percentage listed in Defendants' business records, causing a separate harm.[15]

### d)  <u>Defendants Ignore Statutory Damages</u>

Plaintiffs and the Class are also entitled to statutory damages under the FDCPA and GBL. Such uniform, per-violation dollar penalties often are the best means of redressing harm that might be difficult to quantify precisely, or amount to relatively small sums individually.  *See Anderson*

---

[15]  *See* Pls.' Counsel's (Hawkins) Decl. in Further Supp. Pls.' Class Cert. Mot. at ¶ 36 (Dkt. No. 336 in Case No. 18-cv-1781).  Moreover, because Defendants' employees were prohibited from requesting or reviewing documentation of the terms and conditions for alleged loans, which meant they could not check any document substantiating the inflation.  Indeed, at deposition here, even Defendants' senior personnel could not explain the inflation.  *See id.*

*v. Credit One Bank. (In re Anderson)*, 641 B.R. 1, 53 (Bankr. S.D.N.Y. 2022) (Drain, Bk. J.) (setting per-violation penalty of up to $1,000 for each instance of unlawful collection attempt).

### e) **Plaintiffs Can Assert Injury On The Basis Of State-Court Costs**

Defendants are incorrect when they argue that any Plaintiff or Class member who incurred costs defending against the state-court collection suits are prohibited under *Rooker-Feldman* from relying on the fact of these costs for standing or from seeking these as damages.  (Objs. at 18 n.13 (discussing Plaintiff Tabar)).  Defendants are simply wrong when they assert that "[n]one of the cases cited in the R&R concerned a party seeking litigation costs or fees in seeking to vacate a default judgment."  (*Id.*).  In fact, *Sykes III* expressly approves seeking the very same costs and fees that Plaintiffs seek here, which the Second Circuit referred to as "incidental damages."  *Sykes III*, 780 F.3d at 87–88 (cited by R&R at 46–47).[16]

### C. **Plaintiffs' Class Certification Motion Should Be Granted**

#### 1. **The R&R Correctly Found Common Proof Under Rule 23(a)(2)**

Defendants offer two unavailing arguments in support of their position that the R&R erred in finding common proof pursuant to Rule 23(a)(2).

---

[16]  Defendants' argument on this point relies on an inapposite ruling by an out-of-Circuit court. (Objs. at 18 n.13 (citing *Milisavljevic v. Midland Credit Mgmt.*, 581 F. Supp. 3d 1020, 1028 (N.D. Ill. 2022))).  However, that court's ruling was based on a minority view, rejected by fellow courts in its own Circuit.  *See Husainy v. Gutwein LLP*, No. 18-cv-28, 2022 U.S. Dist. LEXIS 163809, at *27 n.5 (N.D. Ind. Sept. 9, 2022) (confirming plaintiff's right to assert claim for cost of defending against bad-faith suit); *Anthony v. F.S.B*, No. 21-cv-2509, 2022 U.S. Dist. LEXIS 58998, at *11– 12 (N.D. Ill. Mar. 30, 2022) (same) (citing *Deiker v. TrueAccord Corp.*, 2021 U.S. Dist. LEXIS 188820, at *8–9 (N.D. Ill. Sept. 30, 2021)); *Lako v. Portfolio Recovery Assocs.*, No. 20-cv-355, 2021 U.S. Dist. LEXIS 145776, at *8–9 (W.D. Wis. Aug. 4, 2021) (same).  More importantly, the law of the Second Circuit confirms the right to assert cost-of-defense claims.  *Durden v. DNF Assocs.*, No. 22-cv-799S, 2023 U.S. Dist. LEXIS 4592, at *4 (W.D.N.Y. Jan. 10, 2023) (Schroeder, Mag. J.) ("[P]laintiff's allegations that she incurred costs to hire a lawyer to defend against defendant's debt collection lawsuit and suffered a great deal of emotional distress as a result of defendant's conduct are [cognizable].")., *adopted*, 2023 U.S. Dist. LEXIS 41906 (Mar. 13, 2023) (Sinatra, J.).

First, Defendants rely on a single, clearly distinguishable decision from another Circuit. (Objs. at 22–23 (citing *Hoffman v. Transworld Sys.*, No. C18-1132, 2023 U.S. Dist. LEXIS 13790 (W.D. Wash. 2023 Jan. 26, 2023))).  But *Hoffman*, being out-of-Circuit, did not follow *Sykes III*, in which the Second Circuit upheld certification where debt collectors followed a policy of non-review.  *See* 780 F.3d. at 96.  In *Sykes* III, the Second Circuit emphasized that class-wide "[l]iability under the FDCPA can be established irrespective of whether the presumed debtor owes the debt in question."  *Id.* at 83.[17]  Plaintiffs here, following *Sykes III*, seek certification based on Defendants' uniform written policies uniformly forbidding review in every collection action. These policies prohibited their attorneys and affiants from checking chain of title, or terms of loans.[18]

In contrast, *Hoffman* did not discuss any uniform written policies, as the plaintiffs there had a different theory of certification not relevant under *Sykes*, and not asserted here.  Specifically, those plaintiffs sought certification on the grounds that National Collegiate Student Loan Trusts are unable to today validate debt as a matter of Washington state law.  *See* 2023 U.S. Dist. LEXIS 13790, at *17–24.  *Hoffman*'s certification analysis contradicts *Sykes III*, as the Second Circuit obviates the question whether the collector can today validate any specific debt.  *See* 780 F.3d. at 91.  Pursuant to *Sykes III*, Plaintiffs here are entitled to certification based on Defendants' written policies, common to all staff and accounts, causing uniform violations during the years at issue. *Id.* at 96.

---

[17]   Further, under the law of this case, Plaintiffs here are permitted to pursue their GBL claims, "regardless of whether or not [they] owned the loan debt" alleged against them by Defendants in state court. Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 707 n.23 (analyzing GBL's purpose).

[18]   *E.g.*, Pls.' Br. in Supp. Class Cert., at 4–5, 13 (Dkt. No. 314 in Case No. 18-cv-1781).

Defendants wrongly assert that the evidence of their written policies cannot be common proof, because (they posit) it is possible that Defendants' attorneys and affiants ignored the written policies when prosecuting Plaintiffs.  (Objs. at 22–23; *but see Sykes III*, 780 F.3d at 96).  Beyond making no sense, this argument is contradicted by the record.  Among other evidence of non-review, discovery here revealed an internal email authored by TSI's Affiant Team in June 2014 and sent to management, in which the Affiants told management they do not understand chain of assignment and other evidentiary requirements for proving a debt to a Trust.  (*See* Pls.' Counsel's (Hawkins) Decl. in Further Supp. Mot. for Sanctions vs. TSI, at Ex. F (Dkt. No. 384-6 in Case No. 18-cv-1781)).

Next, Defendants incorrectly argue that the R&R should have found lack of common proof due to the nature of the "Pool Supplement" assignment documents, and the spreadsheets listing alleged loans, which Defendants produced here as purported proof of chain of assignment.  (Objs. at 23 (citing R&R at 54–55 & n.32)).  According to Defendants, because each Trust was the ultimate assignee of multiple pools of loans from multiple banks, "subsets of putative class members will need to rely on different documentation to substantiate claims against the same Trust Defendant.  (Objs. at 23).  This argument is irrelevant, and in any event contradicted by the record.  First, this argument is irrelevant because this Class can be certified on the basis of Defendants' non-review policy—regardless of whether Defendants might be able to show chain of assignment establishing specific Trusts' ownership of specific loans.  *Sykes III*, 780 F.3d at 96.

Moreover, the record here contradicts Defendants' depiction of the Pool Supplement and spreadsheet evidence.  Because each pool assignment involved hundreds or thousands of individual alleged loans, there are only a few dozen Pool Supplement and spreadsheet documents at issue for all Trusts here.  During class discovery, the Parties easily transferred these documents

for review.  Further, all of these documents suffer from identical defects: For example, no Pool Supplement has any spreadsheet attached to it, as the document purports; and the metadata for all the spreadsheets (which Defendants separately produced) do not match the dates on which they were supposed to have been created.  (R&R at 54–55 n.32 (analyzing the record)).

### 2.  The R&R Correctly Found Plaintiffs To Be Adequate Class Representatives

Defendants are wrong that the R&R failed to perceive purported conflicts between Class members.  (Objs. at 24–125 (citing R&R at 17–18)).  Any conflict is a figment of Defendants' imagination—and is contradicted by *Sykes III* and subsequent precedent.  *See Sykes v. Mel Harris & Assocs., LLC*, No. 09-cv-8486, 2016 U.S. Dist. LEXIS 74566, at *44–46 (S.D.N.Y. May 24, 2016) (Chin, J.) ("*Sykes V*") (certifying class whose members had mix of FDCPA, GBL, and RICO claims arising from individual debt-collection circumstances).[19]

Defendants inappositely rely on *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011).  (Objs. at 24–25).  There, the plaintiffs sought to certify a class including different types of copyright claims.  The court found that those class members with statutory damages claims would be in conflict with those without statutory damage claims.  Here, just as in *Sykes*, all Class members qualify for statutory damages under the FDCPA and the GBL,

---

[19]  Defendants' argument also relies on a mischaracterization of the Court's Rule 12 decision from 2019.  They incorrectly argue that that decision left some Plaintiffs without FDCPA or GBL claims.  (Objs. at 24).  In fact, this Court held that <u>all</u> Named Plaintiffs have live FDCPA claims.  *See* Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 696–99.  Consistent with the Class definition approved by the R&R, all Named Plaintiffs have FDCPA claims alleging Defendants pursued state-court judgments via fraudulent means.  *See id.* at 697.  Defendants are wrong that the FDCPA claims of some Plaintiffs were dismissed—the Court merely held that two Plaintiffs (Katherine and Mary Re Seaman) do not qualify for equitable tolling to the extent they assert an FDCPA violation for the false statement in the state-court complaint that the Trust is an "original creditor." *Id.* at 697.  That violation is but one aspect of Defendants' overall scheme.

while bringing a mix of claims under the FDCPA, GBL, and § 487.  *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 282–83 (S.D.N.Y. 2012) (Chin, J.) ("*Sykes II*").[20]

Defendants also fail in attempting to demonstrate intra-class conflict by arguing that two Plaintiffs (Bifulco and Re Seaman) "acknowledged the debts in prior bankruptcy filings and therefore a[re] subject to a judicial estoppel defense."  (Objs. at 25).  Defendants' arguments concerning bankruptcy have no basis in the law.  Bankruptcy law requires that a Chapter 7 petitioner submit a list of all entities who might <u>potentially</u> exert claims as creditors, whether their claim is valid or not.  Such lists are not admissions of liability.  *Mitchell v. Bigelow (In re Mitchell)*, 418 B.R. 282, 288–89 (B.A.P. 8th Cir. 2009) ("[I]t is inappropriate for the debtor to make decisions about whether or not there is any merit to the creditor's claim.  It is incumbent upon the debtor to list each and every entity which has or may assert a claim against her.").[21]  These Plaintiffs only learned about Defendants' fraud <u>after</u> the bankruptcy.[22]

---

[20] Even if Defendants' assertion of intra-class conflict had basis, this would not violate Rule 23(a). Courts regularly certify classes where (unlike here) there is palpable conflict between class members' differing claims.  *E.g.*, *Atkinson v. ForceField Energy Inc. (In re ForceField Energy Inc. Sec. Litig.)*, Nos. 15-cv-3020, -3141 & -3729, 2015 U.S. Dist. LEXIS 95614, at *15–19 (S.D.N.Y. July 22, 2015) (Buchwald, J.) (certifying class of investors where named plaintiffs had equity-based claims but also represented note-holders with differing claims on liability and damages) (distinguishing *Literary Works*); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 617–26 (1997) (cautioning against decertification if there is even minimal alignment of interest between class's different groups), *cited with approval in Sykes III*, 780 F.3d at 93.

[21] *See Ho v. Dowell (In re Ho)*, 274 B.R. 867, 874–75 (B.A.P. 9th Cir. 2002) ("Bankruptcy schedules are supposed to be over-inclusive.  Every potential creditor should be listed in order to have notice of the bankruptcy and an opportunity to protect itself. . . .  [C]omplete and candid schedules [by bankruptcy filers] are vital to a bankruptcy system, which relies on self-reporting.").

[22] *See Vincent v. Money Store*, 304 F.R.D. 446, 456 (S.D.N.Y. 2015) (Koeltl, J.) ("An individual filing for bankruptcy is not bound to disclose a claim when he is unaware of its existence." (quotation omitted)).

### 3. __The R&R Correctly Found Plaintiffs' Claims To Be Typical__

Defendants wrongly argue that Plaintiffs' claims cannot be typical of the Class's claims because (Defendants assert) "the evidence shows that each Plaintiff owed the debt" and was lawfully collected against.  (Objs at 25–26 (citing R&R at 57)).  But this atypicality argument would make sense only if Defendants were admitting they lacked proof of debt against unnamed Class members, while possessing it against the Named Plaintiffs, thereby making the Named Plaintiffs atypical.  This is not at all what Defendants have told the Court—they profess to have proof of debt against every individual they have ever sued in state court.

Defendants' universal insistence of proof of debt denies Defendants the option of attempting to show atypicality on the basis of the so-called "unique defenses" doctrine.  This limited doctrine[23] applies only where a defense is raised that is distinct to the named plaintiffs, and not the other class members.  Defendants' argument that Named Plaintiffs owed the alleged debts is not unique to Named Plaintiffs, as Defendants invoke this __same__ defense against all Class members.  *See Laurens v. Volvo Car United States*, No. 2:18-cv-08798, 2020 U.S. Dist. LEXIS 256702, at *22 (D.N.J. Dec. 8, 2020) (Defendant's objection of unique defense fails as "the defense is not unique to Plaintiff—[defendant] intends to invoke it as to every class member, not just Plaintiff.").

Again, such "debt is valid" arguments are irrelevant under this Circuit's Rule 23 law (and anyway specifically refuted by the record).  *See* Part II.C.I, *supra*.

---

[23] *See Vincent*, 304 F.R.D. at 455 (stressing that "the unique defense rule is not rigidly applied in this Circuit." (quotation omitted)).

**4.   The R&R Correctly Found That Common Issues Will Predominate**

Defendants are wrong that individual issues will predominate over common ones, because (they say) equitable tolling cannot be applied Class-wide without "individual mini-trials" into when Class members learned of Defendants' fraud.  (Objs. at 26–27 (citing R&R at 61)).

This argument undermines the law of this case by ignoring the significance of the Consumer Financial Protection Bureau's publication of the agency's investigative findings against Defendants.  (See R&R at 10–12).  Until that publication occurred, in September 2017, no Plaintiff or Class member had any way of independently uncovering the fraud, which was inherently self-concealing given the falsities in Defendants' state-court filings.  Ord of Oct. 11, 2019, 419 F. Supp. 3d at 696–700.[24]

**5.   The R&R Is Correct That Class Action Is The Superior Means Of Resolution**

Defendants incorrectly assert that the R&R should have accepted Defendants' public-policy rationale against certification here.  (Objs. at 27–28 (citing R&R at 61–62)).  According to Defendants, public policy demands that individuals sued in state-court collection suits must pursue any fraud claims in state court.  (Objs. at 28).

*Sykes III* rejected this very argument, holding that New York law does not empower individual litigants in state court to mount comprehensive claims for frauds like Defendants.  *See* 780 F.3d at 93–94 (analyzing CPLR 5015(c)).  Further, Defendants' policy argument makes even less sense in the instant context, in which individuals sued in state court remained unaware they

---

[24]  The R&R's changes to the originally proposed class definition resolve any concerns that the Class here could possibly include individuals who may have been in a position to uncover Defendants' fraud through individual litigation, before the CFPB publication.  By excluding from the Class any individual who fought back in a state-court trial and lost, the R&R already remediates the theoretical concerns that Defendants raise concerning equitable tolling and individualized inquiry.

were defrauded until the scheme was uncovered by a federal investigation costing millions of dollars and thousands of work-hours by experienced investigators.  *See* Ord of Oct. 11, 2019, 419 F. Supp. 3d at 696–700.  Public policy would be undermined if Plaintiffs and the Class here were denied the ability to press claims collectively, following publication of such a landmark government investigation.  *See id.* (allowing equitable tolling).

### D.  **Defendants' Miscellaneous Arguments Fail**

Defendants summarily raise two additional arguments against the R&R.  These fail too.

#### 1.  **The R&R Properly Assessed The Evidence Of Plaintiff Bifulco's Credit Harm**

Defendants assert that the R&R erred in confirming Plaintiff Bifulco's standing to pursue claims for negative credit-reporting, on the basis of her deposition testimony about having difficulty obtaining a decent interest rate for a car loan due to Defendants' negative credit-reporting.  (Objs. at 19–20 (citing R&R at 34; and Bifulco Dep. Tr. (Dkt. No. 390-4 in Case No. 18-cv-1871))).  According to Defendants, Plaintiff Bifulco's testimony in this regard is "self-serving" and must be ignored absent documentary proof.  (Objs. at 19–20 (citing, inter alia, *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009))).  This argument misrepresents the record, and the precedent Defendants cite.

In fact, the record shows that <u>Defendants</u> adduced the instant evidence through defense counsel's questioning of Plaintiff Bifulco about her credit history and how it was affected by Defendants' actions.  (Bifulco Dep. Tr. 135:4–138:23).  After she testified about having a higher rate on the car loan, defense counsel stated Defendants would reserve the right to later seek documents about this, (*Id.* at 138:22–23)—but Defendants never did so.  The reason Defendants never did so, is that any such documents would only confirm what Plaintiff Bifulco said.  It is an undeniable, and obvious, fact of modern life that negative credit-reporting leads to higher rates.

Here, "Defendant[s] waived [their] right to further discovery" into the evidence they adduced, by failing to timely seek documents that might have shed further light on the evidence they adduced. *Loeffler v. Staten Island Univ. Hosp.*, No. 95-cv-4549, 2010 U.S. Dist. LEXIS 24274, at *3 (E.D.N.Y. Mar. 16, 2010) (S. Johnson, J.).

Defendants are also wrong that Plaintiff Bifulco's testimony was "self-serving" and must be ignored absent the documents they waived the right to seek.  (Objs. at 19–20 (citing, inter alia, *Deebs*, 346 F. App'x at 656)).  In reality, Second Circuit precedent holds that a plaintiff's testimony is insufficient in latter-stages of litigation <u>only</u> if it "contradicts uncontroverted documentary evidence."  *Frost v. Lentex Co., LLC*, No. 20-cv-5313, 2022 U.S. Dist. LEXIS 231948, at *17 (S.D.N.Y. Dec. 27, 2022) (Briccetti, J.) (distinguishing *Deebs*).  Here, the R&R properly found Plaintiff Bifulco's testimony sufficient to allow her to go forward with claims concerning negative credit-reporting.  *See Frost*, 2022 U.S. Dist. LEXIS 231948, at *17.

### 2.   The R&R Properly Assessed The § 487 Claims

Defendants are wrong that the R&R failed to analyze the § 487 claims, and should have dismissed these.  (Objs. at 20).  The R&R did properly analyze these claims.  (*E.g.*, R&R at 48 (analyzing standing for § 487 claims); *id.* at 49 n.30 (analyzing certifiability of § 487 claims per Rule 23(b)(3) and *Sykes III*); *id.* at 58 (analyzing certifiability of § 487 claims per Rule 23(a)). This Court should confirm standing for and certification of these claims.

### III.   CONCLUSION

For the reasons set forth above, this Court should overrule Defendants' objections to the R&R.

Dated:      New York, New York
            April 28, 2023

                                    Respectfully submitted,

                                    **FRANK LLP**

                                    By:    _/s/ Gregory A. Frank_
                                    Gregory A. Frank (GF0531)
                                    Marvin L. Frank (MF1436)
                                    Asher Hawkins (AH2333)
                                    305 Broadway, Suite 700
                                    New York, New York 10007
                                    Tel: (212) 682-1853
                                    Fax: (212) 682-1892
                                    gfrank@frankllp.com
                                    mfrank@frankllp.com
                                    ahawkins@frankllp.com

                                    *Counsel for Plaintiffs and the Class*